1   Douglas E. Lumish (CA 183863)
    doug.lumish@lw.com
2   Matthew Rawlinson (CA 231890)
    matt.rawlinson@lw.com
3   Arman Zahoory (CA 306421)
    arman.zahoory@lw.com
4   LATHAM & WATKINS LLP
    140 Scott Drive
5   Menlo Park, California 94025
    Telephone: 650-328-4600
6   Facsimile: 650-463-2600

7   Jennifer Barry (CA 228066)
    jennifer.barry@lw.com
8   LATHAM & WATKINS LLP
    12670 High Bluff Drive
9   San Diego, California 92130
    Telephone: 858-523-5400
10  Facsimile: 858-523-5450

11  *Attorneys for*
    *Zoom Video Communications, Inc.*

12
                    UNITED STATES DISTRICT COURT
13
                    NORTHERN DISTRICT OF CALIFORNIA
14

15

16
    ZOOM VIDEO COMMUNICATIONS, INC.,    CASE NO. 3:21-cv-1727
17
                      Plaintiff,        **COMPLAINT**
18
            vs.                         **REDACTED VERSION OF DOCUMENT
19                                       SOUGHT TO BE SEALED**
    RINGCENTRAL, INC.,
20                                      **DEMAND FOR JURY TRIAL**
                      Defendant.
21

22

23

24

25

26

27

28

Zoom Video Communications, Inc. ("Zoom"), for its Complaint against RingCentral, Inc. ("RingCentral"), demands a jury trial and alleges as follows:

**INTRODUCTION**

1.      For the past seven-plus years, Zoom has partnered with RingCentral, providing Zoom's enormously popular video conferencing services for RingCentral to resell under its own "RingCentral Meetings" brand.  The terms governing this relationship are set forth in a ███████. But the relationship has changed and, at Zoom's election, the agreement ████████████ and this business relationship is ████████████.

2.      Specifically, in July of 2020, Zoom sent the █████████████ to RingCentral, causing the █████████████. Under the agreement, post-██████ the parties moved ████████████, which gives ████████████ *Id.* at 4th Amendment §15(b).  The agreement is clear that, while RingCentral has certain rights to ████████████ and other benefits ████████████ ███████████████████████ ██████████████████████.

3.      ███████████████████████, and despite repeated requests from Zoom that it stop, RingCentral has continued unabated to market and resell Zoom's products to new customers █████████, and to use Zoom's trademarks to aid that effort.  Desperate to continue reselling Zoom's technology, RingCentral has justified this ██████████ and infringement of Zoom's trademarks by arguing that it has full rights ████████████—essentially unilaterally adding ████████████ a full two years to sell Zoom's products against Zoom's will.

4.      In addition, RingCentral has invoked confidentiality and non-competition provisions in the agreement to contend that Zoom cannot discuss publicly (or even with its own employees) the fact that ████████████ and to bar Zoom from competing for

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW

COMPLAINT & DEMAND
FOR JURY TRIAL

1  RingCentral's customers, all the while maintaining that RingCentral somehow has free rein to say

2  whatever it wants about the partnership and to make every effort to steal away Zoom's customers.

3  RingCentral's motive for this overreach has become plain: while hoping to silence Zoom

4  concerning █████████████████████, RingCentral has embarked upon a campaign of

5  misinformation designed to mislead customers, investors, and the public at large.  In particular,

6  RingCentral has concealed the fact that █████████████████████, falsely suggesting

7  instead that RingCentral is transitioning customers to RingCentral Video for illusory quality or

8  feature-based reasons.  These statements are belied by RingCentral's insistence on continuing to

9  sell Zoom's products despite having its own available alternative—if RingCentral truly believed

10 its video product was a quality replacement for Zoom's product, then it would transition all of its

11 customers with no further delay.  Its failure to do so reveals that RingCentral believes the opposite

12 to be true; Zoom's products are the best in the market and provide the features RingCentral's

13 customers desire.

14        5.      In short, despite telling customers and investors that it is moving apace toward

15 independence from Zoom, RingCentral in fact seeks to cling to Zoom's products, brand, and

16 extraordinary goodwill, for as long as possible and ████████████████████.  In a classic

17 bait-and-switch, RingCentral is dangling Zoom in front of potential customers to lure them into

18 signing multi-year contracts all the while knowing that RingCentral ████████████████████

19 ████████████████.  This lawsuit seeks to stop this improper conduct, to obtain relief for

20 RingCentral's breach of the agreement and infringement of Zoom's trademarks, and to obtain the

21 Court's judgment establishing that the confidentiality and non-compete provisions are void to the

22 extent they restrain fair competition by Zoom.

23

24                                  **NATURE OF THE ACTION**

25        6.      This is a civil action for violation of the Lanham Act, for breach of contract, for

26 declaratory judgment that certain provisions of the agreement are void for violating California

27 Business and Professions Code § 16600, and for such other relief as the Court deems just and

28 proper.

**PARTIES**

7.      Zoom is an American corporation organized under the laws of the State of Delaware with its principal place of business at 55 Almaden Boulevard, 6th Floor, San Jose, California 95113.  Zoom is celebrated world-wide for its industry-leading video conferencing platform used by families, schools, medical care providers, businesses, governmental entities, and organizations of all kinds across the globe to enable people to connect face-to-face over the internet.  In addition to its popular video conferencing applications, Zoom provides solutions for chat, conference room video, enterprise cloud phone systems, and webinars.  On any given day, hundreds of millions of users connect on Zoom's platform with each other, bridging great distances to meet, chat, talk, and share files, as if in the same room together.

8.      RingCentral is a corporation organized under the laws of the State of Delaware with its principal place of business at 20 Davis Drive, Belmont, California 94002.  RingCentral provides various communications products and services for phone, video conferencing, messaging, and other business functions

**JURISDICTION AND VENUE**

9.      This action arises under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. and contains related California statutory and common law claims.  This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, as this is an action arising under the laws of the United States and relating to trademarks.  This Court has supplemental jurisdiction over the state statutory and common law claims pursuant to 28 U.S.C. § 1367, as those claims are part of the same case or controversy as the federal claims alleged herein, and involve RingCentral's ongoing use, disclosure, and distribution of Zoom's software, trade secrets, technology, and information in violation of RingCentral's contractual obligations to Zoom.

10.      This Court has personal jurisdiction over RingCentral by virtue of its headquarters being located in the State of California and this District, transacting and doing business in the State of California and this District, and in committing acts of trademark infringement and contract breach in the State of California and this District.  Accordingly, this Court has specific jurisdiction

1    over RingCentral in connection with this action, and RingCentral's contacts with the State of

2    California are continuous and systematic to such extent that RingCentral is subject to the general

3    jurisdiction of the State of California and this Court.

4         11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a

5    substantial part of the events giving rise to the claims occurred in this District.  RingCentral resides

6    and has its headquarters and principal place of business in this District, conducts business in this

7    District, infringed Zoom's trademarks in this District, and breached the agreement in this District.

8    Moreover, RingCentral has agreed and consented to litigation of claims arising from the agreement

9    being heard in this District.  *See* Exh. A ██████████████████████████████████████████

10   ████████████████████████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████████████████████████

12   ████████████████████████

13

14                              **INTRADISTRICT ASSIGNMENT**

15        12.    This Complaint includes an intellectual property cause of action, an excepted

16   category under Civil Local Rule 3-2(c), and consequently should be assigned on a District-wide

17   basis.

18

19                                    **BACKGROUND**

20        13.    Zoom first released its video conferencing software and service to the public under

21   the ZOOM trademark ("ZOOM Mark") in August of 2012, and its user base has grown steadily

22   since.  In October 2013, while Zoom was still a fledgling company little known in the marketplace,

23   Zoom and RingCentral entered into a partnership under ████████████████████████████

24   ████████████████████████████████████████████████████████████████████████████████

25   ██████████████████████████████████████  *See* Exh. A (████ at §§1(h) and

26   2(a).  In addition, ████████████████████████

27   ████████  Zoom's marks, including the ZOOM Mark and its UNIFIED MEETING EXPERIENCE

28   trademark, but only ████████████████████████████████████████  and ████████

1    ██████████████████████████████████████████ *Id.* at §9(a).

2       14.   ███████████████████████████████ display or reproduce Zoom's

3    trademarks to market to new customers ████████████████ On its face,

4    the ████████████████████ extends only ███████████████████████

5    ██████████████████. *Id.* at §2(a).

6    ███████████████████████████████████████████████ *Id.* at

7    §16(e).

8       15.   Since it was first inked in 2013, ████████ has been amended nine times to add

9    additional products and services Zoom has developed over time, to extend ████████████,

10   and to modify myriad other terms of the agreement.   None of these amendments extended

11   ███████████████████ or to ████████████████ beyond

12   the term of the agreement.   For example, on ████████████, the parties entered into the Fourth

13   Amendment to ████████ in which Zoom ████████████████████████

14   ██████████████████████████████████████████████████

15   ████████████████ *Id.* at 4th Amendment §18(b).   Notably, nothing in the Fourth Amendment or in

16   any other text ██████████ grants a similar ██████████████████████

17   ██████████████

18       16.   From the beginning, RingCentral used its then-much larger size and market power

19   to insist ████████████ that purported to unilaterally restrict Zoom's ability to compete with

20   RingCentral and to stifle Zoom's ability to communicate with RingCentral's customers.

21   Specifically, RingCentral has sought to compel Zoom to adhere to ██████████████, which

22   purports to ████████████████████████████████ without

23   RingCentral's advance written consent.   The clause purports to ██████████████

24   ██████████████████████████████████████████████████

25   ████████████████████ *Id.* at §3(d) (████   Moreover, RingCentral

26   uses ████████ to contend that Zoom may not "████████████████████

27   ██████████████████████████████████████████████████

28   ██████████████████████████████████████████████████

1     ███████████████████████████████. *Id.* at 8th Amendment, Schedule A7-1

2 §7.8.

3     17.    █████████ among other products and services, RingCentral has for years now

4 been reselling Zoom's video conference service, relabeling it as "RingCentral Meetings," and

5 presenting it to the public using Zoom's trademarks as a RingCentral technology that is "powered

6 by Zoom." But, by mid-2020, █████████████████████████████

7 Specifically, Zoom sent a letter to RingCentral on July 27, 2020 █████████████████

8 ████████████████████████████████████████████████

9 ████████████████████████████████████████████████

10 ████████████████████████████████████████████████

11 ████████████████████████████████ *Id.* §16(e) (████

12     18.    After ████████ RingCentral invoked provisions of █████████

13 ████████████████████████████████████████████████

14 ████████████████████████████████████████████████

15 ████████████████████████████████████████████████

16 *Id.* at 4th Amendment §15(b).

17     19.    Despite ██████████████, RingCentral has continued to market and resell

18 Zoom's products and services to new customers ██████████████, and to use Zoom's

19 trademarks in that effort. For example, RingCentral includes a "Powered by Zoom" watermark on

20 the display of its RingCentral Meetings product, and has insisted that it is free ████████ to

21 continue to use Zoom's mark on RingCentral's website.

22     20.    On February 24, 2021, Zoom alerted RingCentral to its breach of the ████ and

23 insisted that RingCentral's breach of the agreement and infringement of Zoom's intellectual

24 property rights stop immediately.

25     21.    On February 26, 2021, RingCentral responded that, despite ████████████

26 ████████████████████████████████████████████████

27 ████████████████████████████████████████████████

28 ████████████████

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

6

COMPLAINT & DEMAND
FOR JURY TRIAL

22.     In parallel, RingCentral has invoked the confidentiality provisions in the agreement to stifle Zoom's ability to fairly compete with RingCentral, in violation of California law.   In particular, RingCentral has contended that Zoom cannot "share, discuss or disclose the fact that Zoom ███████████████████ … with anyone who was not already directly involved in this decision," and to argue that Zoom and its salespeople are barred from "stating or implying that the ██████████████████████████████."  Indeed, despite having referenced the parties' license agreement in its own press releases, RingCentral goes so far as to suggest that Zoom is somehow barred even from mentioning the existence of the agreement and its terms, referring to the existence of the agreement and its terms as "████████████████████████████████ ██████  And RingCentral leans on provisions of the agreement that purport to ████████ ████████████████████████ under any circumstances in order to prevent fair competition between the two companies.

23.     At the same time, RingCentral has misled its customers, investors, and the public concerning the █████████  and the reason it needs to transition customers to non-Zoom products.  For example, RingCentral sent its partners the following "Important Announcement," on January 19, 2021:



24.     As shown, RingCentral announced that it "will soon be transitioning customers currently on RingCentral Meetings [*i.e.*, its repackaging of Zoom's product] over to RingCentral Video [the name for its non-Zoom replacement product]."  RingCentral then went on to suggest that the reason for this transition was to improve the quality of its video conferencing offering, not because ██████████████████████████████: "What is this transition?  To give our customers the best possible video meeting experience, we are beginning to transition all

1    existing customer accounts from RingCentral Meetings to RingCentral Video."   Similarly,

2    RingCentral answered the question "[w]hy are we transitioning our customers from RingCentral

3    Video," not by acknowledging that ███████████████████████████████████, but

4    by contending that "[t]ransitioning to RingCentral Video will give your customers a number of

5    features not available with RingCentral Meetings."

6         25.    Similarly, in its August 3, 2020 earnings call, RingCentral told the public that "most

7    new customers are now getting RCV [RingCentral Video]," and that "we expect [the] overall

8    customer base to migrate from RingCentral Meetings, which is powered by another provider, to

9    migrate to RCV over time."  That was over seven months ago, and despite recently claiming on a

10   February 16, 2021 earnings call that "right now every customer who we acquire new defaults to

11   RingCentral Video," RingCentral still looks to sell Zoom's product to new customers instead of

12   providing them with its replacement product, RingCentral Video, ███████████. The only

13   explanation for this is that, despite its public assertions to the contrary, RingCentral has recognized

14   that its own service is inferior to Zoom's product and so it looks to hold onto Zoom's product for

15   as long as it possibly can, despite ███████████████████.

16        26.    In light of the position RingCentral has taken with Zoom and its comments to the

17   public in breach of the parties' agreement, Zoom had no choice but to take technological steps █

18   ██████████████████████████████████. Those steps were taken

19   contemporaneously with filing this Complaint.

20

21   **COUNT 1 – FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF
     ORIGIN – 15 U.S.C. § 1125 (a)**

22

23        27.    Zoom repeats and realleges paragraphs 1 through 26 above as if fully set forth

24   herein.

25        28.    The ZOOM Mark is strong and inherently distinctive for Zoom's goods and

26   services, and designates Zoom as the source of all goods and services advertised, marketed, sold,

27   or used in connection with the ZOOM Mark.  By virtue of Zoom's extensive and continued use of

28   the ZOOM Mark in connection with its products and services, and its extensive marketing,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

COMPLAINT & DEMAND
FOR JURY TRIAL

advertising, promotion, and sale of its products and services under the ZOOM Mark, that mark has acquired worldwide fame and renown, such that the consuming public of this District, the State of California, and the United States associate the ZOOM Mark with a single source of products and services. Zoom is the senior user of the ZOOM Mark, as it began use of its mark in interstate commerce prior to RingCentral's first use of the ZOOM Mark ████████████████.

29.     RingCentral is using the mark improperly ████████████████████████████ ████████████████████.   This continued unauthorized use of the ZOOM Mark was and is knowing, intentional, and willful.

30.     Through its ████████████ unauthorized use of the ZOOM Mark, RingCentral intended to, and did in fact, cause and mislead consumers into believing, and misrepresented and created the false impression, that Zoom authorized, approved, and licensed RingCentral's continued use of the mark ████████████████ to solicit new customers.

31.     RingCentral's ████████████ unauthorized use of the ZOOM Mark has robbed Zoom of the ability to control the quality of the services offered under the ZOOM Mark, to the detriment of Zoom's reputation and goodwill.  Such ████████████ unauthorized use will likely cause, and has caused, confusion as to the origin and authenticity of RingCentral's services, and will likely create a misleading impression of ██████████████████████ ████.

32.     As a direct and proximate result of RingCentral's wrongful conduct, Zoom has been and will continue to be damaged.

33.     RingCentral's actions thus constitute trademark infringement, false designation of origin, and unfair competition.

34.     RingCentral's activities have caused and will continue to cause irreparable harm to Zoom, for which it has no adequate remedy at law, because: (i) the ZOOM Mark constitutes a unique and valuable property right that has no readily determinable market value; (ii) RingCentral's infringement constitutes interference with Zoom's goodwill and customer relationships and is harming and will continue to substantially harm Zoom's reputation as a source of high-quality goods and services; and (iii) RingCentral's wrongful conduct, and the damages

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

1  resulting to Zoom, are continuing. Accordingly, Zoom is entitled to injunctive relief pursuant to
2  15 U.S.C. § 1116(a).

3       35. Pursuant to 15 U.S.C. §1117(a), Zoom is entitled to an order: (i) requiring
4  RingCentral to account to Zoom for any and all profits derived from its infringing actions, to be
5  increased in accordance with the applicable provisions of law; and (ii) awarding all damages
6  sustained by Zoom that were caused by RingCentral's conduct.

7       36. RingCentral's conduct was and is intentional and without foundation in law, and,
8  pursuant to 15 U.S.C. § 1117(a), Zoom is therefore entitled to an award of treble damages against
9  RingCentral.

10       37. RingCentral's acts make this an exceptional case under 15 U.S.C. § 1117(a); thus
11  Zoom is entitled to an award of attorneys' fees and costs.

## COUNT 2 – BREACH OF CONTRACT

14       38. Zoom repeats and realleges paragraphs 1 through 37 above as if fully set forth
15  herein.

16       39. Zoom and RingCentral entered into the agreement, which is a valid contract.

17       40. Zoom has performed its obligations under the agreement, including ▮▮▮▮
18  ▮▮▮▮▮▮▮▮ as required under the terms of the agreement. *See* Exh. A §2(b) (▮▮

19       41. RingCentral has breached the agreement by ▮▮▮▮▮▮▮▮
20  ▮▮▮▮▮▮ despite the fact that RingCentral's ▮▮▮▮▮▮
21  ▮▮▮. *See id*. at §2(a) (▮▮▮ *see also* 8th Am. §1.

22       42. RingCentral has further breached ▮▮▮▮▮▮▮
23  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24  ▮▮▮▮▮▮. *See id*. §§ 9(a), (c) (▮▮▮

25       43. RingCentral has also ▮▮▮▮▮▮▮ by engaging in conduct
26  that has harmed the business or reputation of Zoom (*id*. at §12(b)), including by making false
27  public statements as to the reasons RingCentral is transitioning its Customers from RingCentral

1    Meetings to RingCentral Video, and suggesting that transition is due to quality or feature-based

2    reasons as opposed to ████████████████████████.

3          44.     As a direct and foreseeable result of these breaches of the agreement, Zoom has

4    suffered serious financial, legal, and reputational harm.  For example, ████████████████

5    ████████████████████████████████████ has damaged Zoom by causing confusion

6    as to the origin and authenticity of RingCentral's services, and will likely cause others to believe

7    that there ████████████████████████████████████████████████████

8    ████, which  has  interfered  with  Zoom's  goodwill  and  customer  relationships  and  Zoom's

9    reputation  as  a  source  of  high-quality  goods  and  services.    In  addition,  Zoom  has  also  been

10   damaged by losing prospective customers to RingCentral, which is unfairly competing against

11   Zoom by continuing to ████████████████ in breach of its contractual obligations.  Zoom has

12   further  been  damaged  by  RingCentral's  false  public  statements  regarding  the  reason  it  is

13   transitioning  customers  to  RingCentral  Video,  ████████████████████████████

14   ████████████████████████████████████████████.

15

16   **COUNT 3 – DECLARATORY JUDGMENT FOR VIOLATION OF CAL. BUS. PROF. CODE § 16600**

17

18         45.     Zoom repeats and realleges paragraphs 1 through 44 above as if fully set forth

19   herein.

20         46.     California places special value on competition.  Famously hostile to non-competes,

21   the State is equally opposed to business contracts that unreasonably limit a party's ability to solicit

22   another  party's  customers.    This  public  policy  finds  expression  in  California  Business  &

23   Professions Code Section 16600, which provides,  "Except as provided in this chapter, every

24   contract by which anyone is restrained from engaging in a lawful profession, trade, or business of

25   any kind is to that extent void."  Cal. Bus. Prof. Code § 16600.

26         47.     RingCentral has imposed non-compete provisions that violate this law in the most

27   straightforward and obvious way.

28         48.     Since 2013, RingCentral has been in a partnership with Zoom—one that allows

1 ███████████████████████████. Whatever rights parties have to agree to limit free-

2 riding in a legitimate joint venture, the law offers no shelter to non-compete covenants that are

3 unnecessary to a collaboration.  As the Federal Trade Commission recently observed, "A mere

4 general desire to be free from competition following a transaction is not a legitimate business

5 interest."[1]

6    49.    In its dealings with Zoom, RingCentral has gone far beyond limiting competition

7 within the scope of their alliance.  It has sought to bar any effort by Zoom to compete for

8 RingCentral's customers, even if Zoom ███████████████████████████████

9 ███████████████████████.

10    50.    ███████████████████████████, RingCentral has sought to hold

11 Zoom to an overbroad non-compete obligation, ████████████████████████████

12 ████████████████████████████████████████████. The clause's

13 scope is so excessive that it bars any effort ██████████████████████████████

14 ████████████████████████████████████████████████████

15 ████████████   Exh. A § 3(d).

16    51.    Since then, RingCentral has endeavored to restrict any competition between the

17 parties even further.

18    52.    In a ████████████████████████████████████████

19 ████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████

21 ████████████████████████   *Id.* at 8th Amendment, Schedule A7-1 §7.8

22 (together,  with ████████████████████████, the "Non-Compete

23 Clauses").  Notably, this non-compete obligation seeks to apply not merely for the ███████

24 ████████████████████████████████████   *Id.*

25    53.    Both as written and enforced, each of those non-compete covenants unreasonably

26 denies RingCentral customers the benefits of competition.  Were it not for those clauses and

27

28 [1] *In re DTE Energy/NEXUS*, Analysis of Agreement Containing Consent Orders to Aid Public Comment, Sept. 13, 2019, https://www.ftc.gov/system/files/documents/cases/07_dte-enbridge_aapc_redacted.pdf/.

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW

COMPLAINT & DEMAND
FOR JURY TRIAL

1    RingCentral's ongoing insistence that Zoom adhere to them, Zoom would actively compete for

2    many of those customers, bringing them additional price and quality competition.  These overbroad

3    non-compete provisions are not necessary to achieving the benefits of the parties' partnership.

4         54.     As RingCentral would have it, Zoom today would not ████████████████

5    ████████████████████████████████████████████████████████████████████████████

6    ████████ without facing the threat of a possible claim by RingCentral that Zoom has breached the

7    non-compete covenants referenced above. ████████████████████████████████████

8    ████████████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████████████████████

11   ████████████ *Id.*

12        55.     The Non-Compete Clauses are void under California Business & Professions Code

13   Section 16600.

14        56.     RingCentral insists that the Non-Compete Clauses referenced above remain

15   binding on Zoom, such that any effort by Zoom ███████████████████████████████

16   ██████████████████████████████ An actual, present, and justiciable controversy

17   therefore presently exists between Zoom and RingCentral regarding the enforceability of the Non-

18   Compete Clauses.

19        57.     Further, RingCentral's continued insistence on enforcing the confidentiality

20   provisions in the agreement to stifle Zoom's ability to compete with RingCentral violates Section

21   16600.  Specifically, RingCentral has leaned on the confidentiality provisions in the agreement to

22   suggest that Zoom is barred from ████████████████████████████████████████

23   ████████████████ including because the ██████████████████████████████████

24   ████████████████████████████████████████████ According to

25   RingCentral, Zoom is not permitted to "share, discuss or disclose the fact that Zoom ████████

26   ████████████████████████████████████████████████████████████████████████████

27   ████████████ with anyone who was not already directly involved in this decision ████████

28   ████████████████████████████████████████████████ This leaves

1    Zoom with no ability to challenge RingCentral's false statements to customers that it is

2    discontinuing Zoom's services due to development of a superior product.

3         58.    Zoom seeks a judicial determination and declaration that the Non-Compete Clauses

4    and confidentiality provisions, as interpreted by RingCentral, are void and thus unenforceable

5    under California Business & Professions Code Section 16600.

6

7                              **PRAYER FOR RELIEF**

8         **WHEREFORE**, Zoom respectfully requests that the Court enter judgment in favor of

9    Zoom and against RingCentral, and grant the following relief:

10        A.    An injunction ordering RingCentral, and its officers, directors, members, agents,

11              servants, employees, and attorneys, and all other persons acting in concert or

12              participating with them (collectively, the "Enjoined Parties"), who receive actual

13              notice of the injunction order by personal or other service, to:

14              a.    cease all use and never use the ZOOM Mark, in, on or with any products or

15                    services, in connection with the advertising, marketing or other promotion,

16                    offering for sale, or sale, of any products or services, including via social

17                    media platforms in relation to any entities or individuals ████████

18                    ██████████████████████████████████████████

19              b.    never represent, suggest in any fashion to any third party, or perform any

20                    act that may give rise to the belief, that any sale of new products or services

21                    by the Enjoined Parties, is permitted or sponsored by Zoom;

22              c.    never unfairly compete with Zoom in any manner whatsoever, or engage in

23                    any unfair, fraudulent, or deceptive business practices that relate in any way

24                    to the production, distribution, marketing, and/or sale of products and

25                    services bearing the ZOOM Mark.

26        B.    An order directing the Enjoined Parties to file with the Court and serve upon

27              Zoom's counsel, within thirty (30) days after service of the order of injunction, a

28

1    report in writing under oath setting forth in detail the manner and form in which the

2    Enjoined Parties have complied with the injunction.

3    C.    An order, pursuant to 15 U.S.C. § 1118, directing the Enjoined Parties to deliver up

4          and destroy any infringing products, labels, signs, prints, packages, wrappers,

5          receptacles, advertisements, plates, molds, matrices, and/or other means of making

6          the same.

7    D.    An order finding that, by the acts complained of above, RingCentral has created a

8          false designation of origin and false representation of association in violation of

9          15 U.S.C. § 1125(a).

10   E.    Pursuant to 15 U.S.C. § 1117(a), an order awarding Zoom damages as follows:

11         a.    Zoom's actual damages;

12         b.    All of RingCentral's profits or gains of any kind resulting from its acts of

13               trademark infringement false designation of origin and unfair competition,

14               including a trebling of those damages and profits.

15   F.    An order pursuant to 15 U.S.C. § 1117(a) finding that this is an exceptional case

16         and awarding Zoom its reasonable attorneys' fees.

17   G.    An order pursuant to 15 U.S.C. § 1117(a) awarding Zoom all of its costs,

18         disbursements, and other expenses incurred due to RingCentral's unlawful conduct.

19   H.    An order and declaration that RingCentral has breached ████████████████

20         ███████. RingCentral has ████████████████

21         ████████████████████████████████████████

22         ████████████████████████████████. *See* Exh. 1

23         §2(a) (████ *see also* 8th Am. §1.

24   I.    An order that RingCentral has further ████████████████

25         ████████████████████████████████████████

26         ████████████████████████████. *See id.*

27         at §§ 9(a), (c) (████

28

J.  An order that RingCentral has ███████████████████████████████

███████████████████████████████████████████████████

including by making false public statements as to the reason RingCentral is

transitioning its Customers from RingCentral Meetings to RingCentral Video, and

suggesting that transition is due to quality or feature-based reasons as opposed to

████████████████████████

K.  An order and declaration pursuant to California Business & Professions Code

Section 16600 that the anti-competitive terms in the agreement, including the Non-

Compete Clauses ███████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████  are void and thus,

unenforceable.

L.  Award Zoom monetary judgment in an amount to be determined at the conclusion

of trial, plus pre-judgment and post-judgment interest at the maximum rate allowed

by law.

M.  Zoom's reasonable attorneys', accountants' and experts' fees, and costs, ████████

████████████████████████

N.  An order awarding Zoom pre-judgment interest.

O.  An order awarding Zoom such other relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Zoom hereby demands a trial by jury

on all issues so triable.

1    Dated:  March 11, 2021                    LATHAM & WATKINS LLP

2

3                                              By */s/ Douglas E. Lumish*
                                                  Douglas E. Lumish
4                                                 Matthew Rawlinson
                                                  Jennifer Barry
5                                                 Arman Zahoory
                                                  of Latham & Watkins LLP
6
                                                  *Attorneys for Plaintiff*
7                                                 *Zoom Video Communications, Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT & DEMAND
FOR JURY TRIAL

LATHAM&WATKINS LLP
ATTORNEYS AT LAW