1  Douglas E. Lumish (CA 183863)
   doug.lumish@lw.com
2  Matthew Rawlinson (CA 231890)
   matt.rawlinson@lw.com
3  Arman Zahoory (CA 306421)
   arman.zahoory@lw.com
4  LATHAM & WATKINS LLP
   140 Scott Drive
5  Menlo Park, California 94025
   Telephone: 650-328-4600
6  Facsimile: 650-463-2600

7  Jennifer Barry (CA 228066)
   jennifer.barry@lw.com
8  LATHAM & WATKINS LLP
   12670 High Bluff Drive
9  San Diego, California 92130
   Telephone: 858-523-5400
10 Facsimile: 858-523-5450

11 *Attorneys for*
   *Zoom Video Communications, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZOOM VIDEO COMMUNICATIONS, INC., | CASE NO. 3:21-cv-1727 |
| Plaintiff, | **COMPLAINT** |
| vs. | **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |
| RINGCENTRAL, INC., | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

Zoom Video Communications, Inc. ("Zoom"), for its Complaint against RingCentral, Inc. ("RingCentral"), demands a jury trial and alleges as follows:

## INTRODUCTION

1. For the past seven-plus years, Zoom has partnered with RingCentral, providing Zoom's enormously popular video conferencing services for RingCentral to resell under its own "RingCentral Meetings" brand. The terms governing this relationship are set forth in a ███████ ███████████████████████████████████████████████████████████████████████. But the relationship has changed and, at Zoom's election, the agreement ███████████ and this business relationship is ███████████.

2. Specifically, in July of 2020, Zoom sent the ███████████████████████ to RingCentral, causing the ███████████████████. Under the agreement, post-███████ the parties moved ███████████████, which gives ███████████████ ███████████████████████████████████ *Id.* at 4th Amendment §15(b). The agreement is clear that, while RingCentral has certain rights to ███████ ███████ and other benefits ███████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████.

3. ███████████████████████████████████████████████████, and despite repeated requests from Zoom that it stop, RingCentral has continued unabated to market and resell Zoom's products to new customers ███████████████, and to use Zoom's trademarks to aid that effort. Desperate to continue reselling Zoom's technology, RingCentral has justified this ███████████████ and infringement of Zoom's trademarks by arguing that it has full rights ███████████████████████████████████—essentially unilaterally adding ███████████████████████████ a full two years to sell Zoom's products against Zoom's will.

4. In addition, RingCentral has invoked confidentiality and non-competition provisions in the agreement to contend that Zoom cannot discuss publicly (or even with its own employees) the fact that ███████████████████ and to bar Zoom from competing for

RingCentral's customers, all the while maintaining that RingCentral somehow has free rein to say whatever it wants about the partnership and to make every effort to steal away Zoom's customers. RingCentral's motive for this overreach has become plain: while hoping to silence Zoom concerning ■■■■■■■■■■, RingCentral has embarked upon a campaign of misinformation designed to mislead customers, investors, and the public at large. In particular, RingCentral has concealed the fact that ■■■■■■■■■■, falsely suggesting instead that RingCentral is transitioning customers to RingCentral Video for illusory quality or feature-based reasons. These statements are belied by RingCentral's insistence on continuing to sell Zoom's products despite having its own available alternative—if RingCentral truly believed its video product was a quality replacement for Zoom's product, then it would transition all of its customers with no further delay. Its failure to do so reveals that RingCentral believes the opposite to be true; Zoom's products are the best in the market and provide the features RingCentral's customers desire.

5. In short, despite telling customers and investors that it is moving apace toward independence from Zoom, RingCentral in fact seeks to cling to Zoom's products, brand, and extraordinary goodwill, for as long as possible and ■■■■■■■■■■. In a classic bait-and-switch, RingCentral is dangling Zoom in front of potential customers to lure them into signing multi-year contracts all the while knowing that RingCentral ■■■■■■■■■■ ■■■■■■■■■■. This lawsuit seeks to stop this improper conduct, to obtain relief for RingCentral's breach of the agreement and infringement of Zoom's trademarks, and to obtain the Court's judgment establishing that the confidentiality and non-compete provisions are void to the extent they restrain fair competition by Zoom.

## NATURE OF THE ACTION

6. This is a civil action for violation of the Lanham Act, for breach of contract, for declaratory judgment that certain provisions of the agreement are void for violating California Business and Professions Code § 16600, and for such other relief as the Court deems just and proper.

## PARTIES

7. Zoom is an American corporation organized under the laws of the State of Delaware with its principal place of business at 55 Almaden Boulevard, 6th Floor, San Jose, California 95113. Zoom is celebrated world-wide for its industry-leading video conferencing platform used by families, schools, medical care providers, businesses, governmental entities, and organizations of all kinds across the globe to enable people to connect face-to-face over the internet. In addition to its popular video conferencing applications, Zoom provides solutions for chat, conference room video, enterprise cloud phone systems, and webinars. On any given day, hundreds of millions of users connect on Zoom's platform with each other, bridging great distances to meet, chat, talk, and share files, as if in the same room together.

8. RingCentral is a corporation organized under the laws of the State of Delaware with its principal place of business at 20 Davis Drive, Belmont, California 94002. RingCentral provides various communications products and services for phone, video conferencing, messaging, and other business functions

## JURISDICTION AND VENUE

9. This action arises under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. and contains related California statutory and common law claims. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, as this is an action arising under the laws of the United States and relating to trademarks. This Court has supplemental jurisdiction over the state statutory and common law claims pursuant to 28 U.S.C. § 1367, as those claims are part of the same case or controversy as the federal claims alleged herein, and involve RingCentral's ongoing use, disclosure, and distribution of Zoom's software, trade secrets, technology, and information in violation of RingCentral's contractual obligations to Zoom.

10. This Court has personal jurisdiction over RingCentral by virtue of its headquarters being located in the State of California and this District, transacting and doing business in the State of California and this District, and in committing acts of trademark infringement and contract breach in the State of California and this District. Accordingly, this Court has specific jurisdiction

over RingCentral in connection with this action, and RingCentral's contacts with the State of California are continuous and systematic to such extent that RingCentral is subject to the general jurisdiction of the State of California and this Court.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District. RingCentral resides and has its headquarters and principal place of business in this District, conducts business in this District, infringed Zoom's trademarks in this District, and breached the agreement in this District. Moreover, RingCentral has agreed and consented to litigation of claims arising from the agreement being heard in this District. *See* Exh. A

## INTRADISTRICT ASSIGNMENT

12. This Complaint includes an intellectual property cause of action, an excepted category under Civil Local Rule 3-2(c), and consequently should be assigned on a District-wide basis.

## BACKGROUND

13. Zoom first released its video conferencing software and service to the public under the ZOOM trademark ("ZOOM Mark") in August of 2012, and its user base has grown steadily since. In October 2013, while Zoom was still a fledgling company little known in the marketplace, Zoom and RingCentral entered into a partnership under

*See* Exh. A ( at §§1(h) and 2(a). In addition,

Zoom's marks, including the ZOOM Mark and its UNIFIED MEETING EXPERIENCE trademark, but only and

1  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* at §9(a).

2  14. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ display or reproduce Zoom's
3  trademarks to market to new customers ▬▬▬▬▬▬▬▬▬▬ On its face,
4  the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬ extends only ▬▬▬▬▬▬▬▬▬▬
5  ▬▬▬▬▬▬▬▬▬▬▬▬. *Id.* at §2(a). ▬▬▬▬▬▬▬▬▬▬▬▬▬
6  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *Id.* at
7  §16(e).

8  15.   Since it was first inked in 2013, ▬▬▬ has been amended nine times to add
9  additional products and services Zoom has developed over time, to extend ▬▬▬▬▬,
10 and to modify myriad other terms of the agreement. None of these amendments extended
11 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ or to ▬▬▬▬▬▬▬ beyond
12 the term of the agreement. For example, on ▬▬▬▬▬, the parties entered into the Fourth
13 Amendment to ▬▬▬ in which Zoom ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
14 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
15 ▬▬▬▬ *Id.* at 4th Amendment §18(b). Notably, nothing in the Fourth Amendment or in
16 any other text ▬▬▬▬ grants a similar ▬▬▬▬▬▬▬▬▬▬▬▬▬▬
17 ▬▬▬▬▬▬▬.

18 16.   From the beginning, RingCentral used its then-much larger size and market power
19 to insist ▬▬▬▬▬ that purported to unilaterally restrict Zoom's ability to compete with
20 RingCentral and to stifle Zoom's ability to communicate with RingCentral's customers.
21 Specifically, RingCentral has sought to compel Zoom to adhere to ▬▬▬▬▬▬, which
22 purports to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ without
23 RingCentral's advance written consent. The clause purports to ▬▬▬▬▬▬▬▬
24 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
25 ▬▬▬▬▬▬▬▬▬ *Id.* at §3(d) (▬▬ Moreover, RingCentral
26 uses ▬▬ to contend that Zoom may not " ▬▬▬▬▬▬▬▬▬▬▬
27 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
28 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

COMPLAINT & DEMAND
FOR JURY TRIAL

1 ███████████████████████████████████. *Id.* at 8th Amendment, Schedule A7-1
2 §7.8.

3      17.    ██████████ among other products and services, RingCentral has for years now
4 been reselling Zoom's video conference service, relabeling it as "RingCentral Meetings," and
5 presenting it to the public using Zoom's trademarks as a RingCentral technology that is "powered
6 by Zoom." But, by mid-2020, ████████████████████████████████████████
7 Specifically, Zoom sent a letter to RingCentral on July 27, 2020 ██████████████
8 ███████████████████████████████████████████████████████████████
9 ███████████████████████████████████████████████████████████████
10 ███████████████████████████████████████████████████████████████
11 ███████████████████████████████████████ *Id.* §16(e) (██████
12      18.    After ████████ RingCentral invoked provisions of ████████████████
13 ███████████████████████████████████████████████████████████████
14 ███████████████████████████████████████████████████████████████
15 ███████████████████████████████████████████████████████████████
16 *Id.* at 4th Amendment §15(b).

17      19.    Despite ████████████████, RingCentral has continued to market and resell
18 Zoom's products and services to new customers ████████████████, and to use Zoom's
19 trademarks in that effort. For example, RingCentral includes a "Powered by Zoom" watermark on
20 the display of its RingCentral Meetings product, and has insisted that it is free ████████ to
21 continue to use Zoom's mark on RingCentral's website.

22      20.    On February 24, 2021, Zoom alerted RingCentral to its breach of the ████ and
23 insisted that RingCentral's breach of the agreement and infringement of Zoom's intellectual
24 property rights stop immediately.

25      21.    On February 26, 2021, RingCentral responded that, despite ████████████
26 ███████████████████████████████████████████████████████████████
27 ███████████████████████████████████████████████████████████████
28 ███████████████████

22. In parallel, RingCentral has invoked the confidentiality provisions in the agreement to stifle Zoom's ability to fairly compete with RingCentral, in violation of California law. In particular, RingCentral has contended that Zoom cannot "share, discuss or disclose the fact that Zoom ███████████████ … with anyone who was not already directly involved in this decision," and to argue that Zoom and its salespeople are barred from "stating or implying that the ███████████████████████████████████." Indeed, despite having referenced the parties' license agreement in its own press releases, RingCentral goes so far as to suggest that Zoom is somehow barred even from mentioning the existence of the agreement and its terms, referring to the existence of the agreement and its terms as "████████████████████████ ██████ And RingCentral leans on provisions of the agreement that purport to ███████ ████████████████████████████████ under any circumstances in order to prevent fair competition between the two companies.

23. At the same time, RingCentral has misled its customers, investors, and the public concerning the ███████████ and the reason it needs to transition customers to non-Zoom products. For example, RingCentral sent its partners the following "Important Announcement," on January 19, 2021:

> **Important Announcement:**
> **Customer Transition to RingCentral Video**
>
> We wanted to inform you that we will soon be transitioning customers currently on RingCentral Meetings over to RingCentral Video. Here's everything that partners need to know:
>
> **What is the transition?**
> To give our customers the best possible video meeting experience, we are beginning to transition all existing customer accounts from RingCentral Meetings to RingCentral Video.
> **Why are we transitioning our customers to RingCentral Video?**
> Transitioning to RingCentral Video will give your customers a number of features not available with RingCentral Meetings.
> **When is the transition?**
> This transition will be executed throughout 2021, starting with customers on the Essentials plan. Those customers will be transitioned to RingCentral Video on February 16, 2021. Customers on the Standard, Premium, and Ultimate plans will be transitioned to RingCentral Video later in the year.

24. As shown, RingCentral announced that it "will soon be transitioning customers currently on RingCentral Meetings [*i.e.*, its repackaging of Zoom's product] over to RingCentral Video [the name for its non-Zoom replacement product]." RingCentral then went on to suggest that the reason for this transition was to improve the quality of its video conferencing offering, not because ████████████████████████████████████: "What is this transition? To give our customers the best possible video meeting experience, we are beginning to transition all

COMPLAINT & DEMAND
FOR JURY TRIAL

existing customer accounts from RingCentral Meetings to RingCentral Video." Similarly, RingCentral answered the question "[w]hy are we transitioning our customers from RingCentral Video," not by acknowledging that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, but by contending that "[t]ransitioning to RingCentral Video will give your customers a number of features not available with RingCentral Meetings."

25. Similarly, in its August 3, 2020 earnings call, RingCentral told the public that "most new customers are now getting RCV [RingCentral Video]," and that "we expect [the] overall customer base to migrate from RingCentral Meetings, which is powered by another provider, to migrate to RCV over time." That was over seven months ago, and despite recently claiming on a February 16, 2021 earnings call that "right now every customer who we acquire new defaults to RingCentral Video," RingCentral still looks to sell Zoom's product to new customers instead of providing them with its replacement product, RingCentral Video, ▓▓▓▓▓▓▓▓▓▓▓▓. The only explanation for this is that, despite its public assertions to the contrary, RingCentral has recognized that its own service is inferior to Zoom's product and so it looks to hold onto Zoom's product for as long as it possibly can, despite ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

26. In light of the position RingCentral has taken with Zoom and its comments to the public in breach of the parties' agreement, Zoom had no choice but to take technological steps ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Those steps were taken contemporaneously with filing this Complaint.

**COUNT 1 – FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN – 15 U.S.C. § 1125 (a)**

27. Zoom repeats and realleges paragraphs 1 through 26 above as if fully set forth herein.

28. The ZOOM Mark is strong and inherently distinctive for Zoom's goods and services, and designates Zoom as the source of all goods and services advertised, marketed, sold, or used in connection with the ZOOM Mark. By virtue of Zoom's extensive and continued use of the ZOOM Mark in connection with its products and services, and its extensive marketing,

advertising, promotion, and sale of its products and services under the ZOOM Mark, that mark has acquired worldwide fame and renown, such that the consuming public of this District, the State of California, and the United States associate the ZOOM Mark with a single source of products and services. Zoom is the senior user of the ZOOM Mark, as it began use of its mark in interstate commerce prior to RingCentral's first use of the ZOOM Mark ███████████████.

29. RingCentral is using the mark improperly ████████████████████████████████. This continued unauthorized use of the ZOOM Mark was and is knowing, intentional, and willful.

30. Through its ██████████ unauthorized use of the ZOOM Mark, RingCentral intended to, and did in fact, cause and mislead consumers into believing, and misrepresented and created the false impression, that Zoom authorized, approved, and licensed RingCentral's continued use of the mark ██████████████████ to solicit new customers.

31. RingCentral's ██████████ unauthorized use of the ZOOM Mark has robbed Zoom of the ability to control the quality of the services offered under the ZOOM Mark, to the detriment of Zoom's reputation and goodwill. Such ██████████ unauthorized use will likely cause, and has caused, confusion as to the origin and authenticity of RingCentral's services, and will likely create a misleading impression of ████████████████████████████████.

32. As a direct and proximate result of RingCentral's wrongful conduct, Zoom has been and will continue to be damaged.

33. RingCentral's actions thus constitute trademark infringement, false designation of origin, and unfair competition.

34. RingCentral's activities have caused and will continue to cause irreparable harm to Zoom, for which it has no adequate remedy at law, because: (i) the ZOOM Mark constitutes a unique and valuable property right that has no readily determinable market value; (ii) RingCentral's infringement constitutes interference with Zoom's goodwill and customer relationships and is harming and will continue to substantially harm Zoom's reputation as a source of high-quality goods and services; and (iii) RingCentral's wrongful conduct, and the damages

resulting to Zoom, are continuing. Accordingly, Zoom is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

35. Pursuant to 15 U.S.C. §1117(a), Zoom is entitled to an order: (i) requiring RingCentral to account to Zoom for any and all profits derived from its infringing actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by Zoom that were caused by RingCentral's conduct.

36. RingCentral's conduct was and is intentional and without foundation in law, and, pursuant to 15 U.S.C. § 1117(a), Zoom is therefore entitled to an award of treble damages against RingCentral.

37. RingCentral's acts make this an exceptional case under 15 U.S.C. § 1117(a); thus Zoom is entitled to an award of attorneys' fees and costs.

## COUNT 2 – BREACH OF CONTRACT

38. Zoom repeats and realleges paragraphs 1 through 37 above as if fully set forth herein.

39. Zoom and RingCentral entered into the agreement, which is a valid contract.

40. Zoom has performed its obligations under the agreement, including ███████ ███████ as required under the terms of the agreement. See Exh. A §2(b) (█████

41. RingCentral has breached the agreement by ███████ ███████ despite the fact that RingCentral's ███████ ███████. See id. at §2(a) (█████ see also 8th Am. §1.

42. RingCentral has further breached ███████ ███████ ███████. See id. §§ 9(a), (c) (█████

43. RingCentral has also ███████ by engaging in conduct that has harmed the business or reputation of Zoom (id. at §12(b)), including by making false public statements as to the reasons RingCentral is transitioning its Customers from RingCentral

Meetings to RingCentral Video, and suggesting that transition is due to quality or feature-based reasons as opposed to ███████████████████.

44. As a direct and foreseeable result of these breaches of the agreement, Zoom has suffered serious financial, legal, and reputational harm. For example, ████████████████████████████████████████████ has damaged Zoom by causing confusion as to the origin and authenticity of RingCentral's services, and will likely cause others to believe that there ██████████████████████████████████████████████████████, which has interfered with Zoom's goodwill and customer relationships and Zoom's reputation as a source of high-quality goods and services. In addition, Zoom has also been damaged by losing prospective customers to RingCentral, which is unfairly competing against Zoom by continuing to ████████████████ in breach of its contractual obligations. Zoom has further been damaged by RingCentral's false public statements regarding the reason it is transitioning customers to RingCentral Video, ████████████████████████████████████████████████████████████████████████.

## COUNT 3 – DECLARATORY JUDGMENT FOR VIOLATION OF CAL. BUS. PROF. CODE § 16600

45. Zoom repeats and realleges paragraphs 1 through 44 above as if fully set forth herein.

46. California places special value on competition. Famously hostile to non-competes, the State is equally opposed to business contracts that unreasonably limit a party's ability to solicit another party's customers. This public policy finds expression in California Business & Professions Code Section 16600, which provides, "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. Prof. Code § 16600.

47. RingCentral has imposed non-compete provisions that violate this law in the most straightforward and obvious way.

48. Since 2013, RingCentral has been in a partnership with Zoom—one that allows

1  ███████████████████████████████████████████. Whatever rights parties have to agree to limit free-riding in a legitimate joint venture, the law offers no shelter to non-compete covenants that are unnecessary to a collaboration. As the Federal Trade Commission recently observed, "A mere general desire to be free from competition following a transaction is not a legitimate business interest."[1]

49. In its dealings with Zoom, RingCentral has gone far beyond limiting competition within the scope of their alliance. It has sought to bar any effort by Zoom to compete for RingCentral's customers, even if Zoom ███████████████████████████████████████ ███████████████████████████████████.

50. ███████████████████████████████████, RingCentral has sought to hold Zoom to an overbroad non-compete obligation, ████████████████████████████████ ████████████████████████████████████████████████████████████. The clause's scope is so excessive that it bars any effort ███████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████ Exh. A § 3(d).

51. Since then, RingCentral has endeavored to restrict any competition between the parties even further.

52. In a ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████ *Id.* at 8th Amendment, Schedule A7-1 §7.8 (together, with ████████████████████████████████████, the "Non-Compete Clauses"). Notably, this non-compete obligation seeks to apply not merely for the █████████ █████████████████████████████████████████████████████ *Id.*

53. Both as written and enforced, each of those non-compete covenants unreasonably denies RingCentral customers the benefits of competition. Were it not for those clauses and

---

[1] *In re DTE Energy/NEXUS*, Analysis of Agreement Containing Consent Orders to Aid Public Comment, Sept. 13, 2019, https://www.ftc.gov/system/files/documents/cases/07_dte-enbridge_aapc_redacted.pdf/.

1  RingCentral's ongoing insistence that Zoom adhere to them, Zoom would actively compete for
2  many of those customers, bringing them additional price and quality competition. These overbroad
3  non-compete provisions are not necessary to achieving the benefits of the parties' partnership.

4      54.    As RingCentral would have it, Zoom today would not ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮ without facing the threat of a possible claim by RingCentral that Zoom has breached the
7  non-compete covenants referenced above. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11 ▮▮▮▮▮▮▮▮▮▮ *Id*.

12     55.    The Non-Compete Clauses are void under California Business & Professions Code
13 Section 16600.

14     56.    RingCentral insists that the Non-Compete Clauses referenced above remain
15 binding on Zoom, such that any effort by Zoom ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ An actual, present, and justiciable controversy
17 therefore presently exists between Zoom and RingCentral regarding the enforceability of the Non-
18 Compete Clauses.

19     57.    Further, RingCentral's continued insistence on enforcing the confidentiality
20 provisions in the agreement to stifle Zoom's ability to compete with RingCentral violates Section
21 16600. Specifically, RingCentral has leaned on the confidentiality provisions in the agreement to
22 suggest that Zoom is barred from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮▮▮▮▮▮ including because the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ According to
25 RingCentral, Zoom is not permitted to "share, discuss or disclose the fact that Zoom ▮▮▮▮▮
26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
27 ▮▮▮▮▮▮ with anyone who was not already directly involved in this decision ▮▮▮▮▮
28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This leaves

Zoom with no ability to challenge RingCentral's false statements to customers that it is discontinuing Zoom's services due to development of a superior product.

58. Zoom seeks a judicial determination and declaration that the Non-Compete Clauses and confidentiality provisions, as interpreted by RingCentral, are void and thus unenforceable under California Business & Professions Code Section 16600.

**PRAYER FOR RELIEF**

**WHEREFORE**, Zoom respectfully requests that the Court enter judgment in favor of Zoom and against RingCentral, and grant the following relief:

A. An injunction ordering RingCentral, and its officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them (collectively, the "Enjoined Parties"), who receive actual notice of the injunction order by personal or other service, to:

    a. cease all use and never use the ZOOM Mark, in, on or with any products or services, in connection with the advertising, marketing or other promotion, offering for sale, or sale, of any products or services, including via social media platforms in relation to any entities or individuals ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

    b. never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that any sale of new products or services by the Enjoined Parties, is permitted or sponsored by Zoom;

    c. never unfairly compete with Zoom in any manner whatsoever, or engage in any unfair, fraudulent, or deceptive business practices that relate in any way to the production, distribution, marketing, and/or sale of products and services bearing the ZOOM Mark.

B. An order directing the Enjoined Parties to file with the Court and serve upon Zoom's counsel, within thirty (30) days after service of the order of injunction, a

       report in writing under oath setting forth in detail the manner and form in which the Enjoined Parties have complied with the injunction.

C. An order, pursuant to 15 U.S.C. § 1118, directing the Enjoined Parties to deliver up and destroy any infringing products, labels, signs, prints, packages, wrappers, receptacles, advertisements, plates, molds, matrices, and/or other means of making the same.

D. An order finding that, by the acts complained of above, RingCentral has created a false designation of origin and false representation of association in violation of 15 U.S.C. § 1125(a).

E. Pursuant to 15 U.S.C. § 1117(a), an order awarding Zoom damages as follows:
    a. Zoom's actual damages;
    b. All of RingCentral's profits or gains of any kind resulting from its acts of trademark infringement false designation of origin and unfair competition, including a trebling of those damages and profits.

F. An order pursuant to 15 U.S.C. § 1117(a) finding that this is an exceptional case and awarding Zoom its reasonable attorneys' fees.

G. An order pursuant to 15 U.S.C. § 1117(a) awarding Zoom all of its costs, disbursements, and other expenses incurred due to RingCentral's unlawful conduct.

H. An order and declaration that RingCentral has breached ▓▓▓▓▓▓▓▓▓▓▓▓. RingCentral has ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Exh. 1 §2(a) (▓▓▓▓ *see also* 8th Am. §1.

I. An order that RingCentral has further ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See id.* at §§ 9(a), (c) (▓▓▓▓

J.     An order that RingCentral has ███████████████████████████

███████████████████████████████████████████████████████████

including by making false public statements as to the reason RingCentral is transitioning its Customers from RingCentral Meetings to RingCentral Video, and suggesting that transition is due to quality or feature-based reasons as opposed to ████████████████████████.

K.     An order and declaration pursuant to California Business & Professions Code Section 16600 that the anti-competitive terms in the agreement, including the Non-Compete Clauses ███████████████████████████████████████████████████████████████████████████████████████████████████████████████ are void and thus, unenforceable.

L.     Award Zoom monetary judgment in an amount to be determined at the conclusion of trial, plus pre-judgment and post-judgment interest at the maximum rate allowed by law.

M.     Zoom's reasonable attorneys', accountants' and experts' fees, and costs, ██████████████████████████.

N.     An order awarding Zoom pre-judgment interest.

O.     An order awarding Zoom such other relief as the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Zoom hereby demands a trial by jury on all issues so triable.

Dated: March 11, 2021

LATHAM & WATKINS LLP

By */s/ Douglas E. Lumish*
   Douglas E. Lumish
   Matthew Rawlinson
   Jennifer Barry
   Arman Zahoory
   of Latham & Watkins LLP

*Attorneys for Plaintiff*
*Zoom Video Communications, Inc.*