CLEMENT SETH ROBERTS (SBN 209203)
croberts@orrick.com
KAREN G. JOHNSON-MCKEWAN (SBN 121570)
kjohnson-mckewan@orrick.com
NATHAN SHAFFER (SBN 282015)
nshaffer@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

ROBERT L. URIARTE (SBN 258274)
ruriarte@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94021
Telephone:  +1 650 614 7400
Facsimile:  +1 650 614 7401

*Attorneys for Defendant*
*RingCentral, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZOOM VIDEO COMMUNICATIONS, INC., | Case No. 4:21-cv-01727-DMR |
| Plaintiff, | **RINGCENTRAL, INC.'S COUNTERCLAIMS AGAINST ZOOM VIDEO COMMUNICATIONS, INC.** |
| v. | |
| RINGCENTRAL, INC., | |
| Defendant. | |
| | **DEMAND FOR JURY TRIAL** |
| RINGCENTRAL, INC., | |
| Counterclaimant, | |
| v. | |
| ZOOM VIDEO COMMUNICATIONS, INC., | |
| Counterdefendant. | |

Long before "Zoom-bombing" was a thing, Zoom heavily depended on RingCentral to help build its business.  Among other things, RingCentral was among Zoom's first commercial resellers, investing enormous resources in helping Zoom fortify and commercialize its then-fledging solution, integrating the companies' product offerings into what was then a unique combination of leading uCaaS and video meetings services, and seeding Zoom's service with thousands of RingCentral customers.  Simply put, RingCentral had a lot to do with putting Zoom on the map, while being supportive of Zoom's plans to become a viable SaaS provider in its own right.  Why did RingCentral do this?  The answer is simple.  RingCentral is a well-known and respected provider of cloud-based business communications solutions that has always put customers first.  Integration with Zoom provided a differentiated and superior customer experience that benefitted both companies, and more importantly, enabled customers to conduct business more efficiently and cost-effectively

No good deed goes unpunished, however. Zoom achieved market dominance and a $100B+ market cap based on an unprecedented appetite for video meetings during the COVID-19 work-from-home economy. And now that COVID-19 and strict work-from-home restrictions seem to be coming to an end, Zoom is trying to use its market dominance to stifle competition. Zoom is well aware of RingCentral's new RingCentral Video technology ("RCV") and the threat that it presents to Zoom in the post-COVID-19, work-from-anywhere world.

Customers have recognized the appeal of RingCentral's integrated message-video-phone ("MVP") strategy.  As a result, RingCentral is winning the majority of head-to-head sales situations against Zoom and its revenue continues to grow quarter-over-quarter.  Zoom is running scared, and is now playing dirty by violating the companies' agreement in a cynical attempt to disrupt RingCentral's progress and to muddy RingCentral's image in front of customers and prospects.  Put another way, Zoom knows that it has only a brief window to take advantage of a small and shrinking feature gap between Zoom's video offering and RCV.  To make matters worse, Zoom currently does not have a messaging product and is far behind in terms of an overall MVP strategy.  Additionally, Zoom is well aware that RCV standalone will be disruptive to the video meetings market as a whole, as it offers significant cost and other advantages over Zoom's

own product. We should point out, too, that Zoom is intimately familiar with Ring Central's

product plans and time frames – as that time frame is (in part) controlled by the parties'

agreement.  Unfortunately, Zoom has chosen to use that knowledge to try to disrupt

RingCentral's transition; both by declaring that it will no longer honor the parties' agreement and

by bring a meritless lawsuit (filed without prior notice) in an attempt to control the public

narrative and thus interfere with RingCentral's ability to complete the transition of its sales

pipeline to RCV in an orderly way and in the time frame specified in the parties' contract.

      RingCentral is proud of its relentless focus on customer needs, its history of innovation,

and its productive partnerships across the communication and collaboration space.  This is the

first time in RingCentral's 20+ year history that any of RingCentral's many technology or go-to-

market partners have felt the need to turn to litigation.  But Zoom apparently does not believe in

playing by the rules, as is amply evidenced by the its numerous well-documented "missteps"  in

handling their customers' data, respecting customers' (and now partners') privacy rights, making

erroneous and eventually re-tracked claims of its technology capabilities, and potentially other,

even more serious lapses of judgement that are well documented in various private party and

government actions.  Zoom is clearly (and rightly) fearful of both RCV and RingCentral's overall

MVP strategy.  While that fear may be justified, Zoom's actions are not, and this lawsuit is

therefore necessary to obtain clarity on the parties' rights. The letter and spirit of the agreement is

clear, and it is unfortunate that Zoom is choosing to rely on novel, one-sided interpretations to

stifle possible competition, rather than investing into its own technology that would enable it to

compete fairly in the emerging work-from-anywhere world.

## **PARTIES**

1.     Plaintiff RingCentral, Inc. is a Delaware corporation with its principal place of

business in Belmont, California.

2.     Defendant Zoom, Inc. is a Delaware corporation with its principal place of

business in San Jose, California.

RINGCENTRAL'S COUNTERCLAIMS AGAINST
ZOOM VIDEO COMMUNICATIONS, INC.
4:21-cv-01727-DMR

1

## JURISDICTION AND VENUE

2      3.      The Court has jurisdiction over RingCentral's declaratory judgment claim for non-

3   infringement of Zoom's alleged trademark rights because the claim presents a federal question

4   under 28 U.S.C. §§ 1331 and 1338. The Court has supplemental jurisdiction over RingCentral's

5   state law claims under 28 U.S.C. § 1367.

6      4.      The Court has personal jurisdiction over Zoom because it is headquartered in San

7   Jose, California and intentionally directed its injurious conduct toward RingCentral, as set forth

8   elsewhere herein, within the Northern District of California.

9      5.      Venue in this judicial district is appropriate because a substantial part of the events

10  giving rise to the dispute and the injuries complained occurred within this judicial district. 28

11  U.S.C. § 1391.

12

## FACTUAL ALLEGATIONS

13  **Overview of the RingCentral-Zoom Business Relationship**

14     6.      Founded in 1999, RingCentral is headquartered in Belmont, California, and

15  employs more than 3,000 employees.  RingCentral is a leading provider of enterprise cloud

16  communications, collaboration, and contact center solutions.  RingCentral provides unified voice,

17  video meetings, team messaging, digital customer engagement, and integrated contact center

18  solutions for enterprises of all sizes.

19     7.      On October 18, 2013, RingCentral entered into a Strategic Alliance Agreement

20  ("SAA") with Zoom, then a two-year-old video communications startup.  The SAA gave

21  RingCentral the right to ███████████████████████ Zoom's video meetings

22  technology with RingCentral's cloud communications services.  RingCentral demonstrated its

23  faith in the parties' partnership from the outset, making substantial revenue commitments to

24  Zoom and undertaking a duty to market Zoom's services.  In connection with these marketing

25  efforts, the SAA grants to RingCentral a ██████████████████████████████

26  ██████████████████████████ Zoom's trademarks.  SAA § 9(a).

27     8.      The SAA marked the beginning of a long and successful relationship between

28  Zoom and RingCentral; the parties extended the term and expanded the scope of the SAA on

RINGCENTRAL'S COUNTERCLAIMS AGAINST
ZOOM VIDEO COMMUNICATIONS, INC.
4:21-cv-01727-DMR

1  multiple occasions over the following six years.  By the time the SAA terminates on ███
2  ███, the parties will have done business together for nearly a decade.

3      9.    The SAA provides that Zoom is responsible for providing, hosting, and managing
4  the "Service," ████████████████████████████████████████
5  ████████████████████.  As Zoom's capabilities expanded over time, the
6  parties amended the definition of the "Service" to reflect Zoom's new capabilities and features,
7  such as Large Meeting Capacity (up to 500 persons per meeting) and Webinars.  These
8  amendments were accompanied by further revenue commitments from RingCentral to Zoom.

9      10.    The SAA required Zoom to develop ████████████████████
10  ████.  Zoom developed this software and provided RingCentral with periodic updates to
11  fix bugs, patch security vulnerabilities, and add new functionality to the Service.  RingCentral
12  devoted substantial resources to integrating Zoom's software and technology into RingCentral's
13  offerings and has delivered the Service to many thousands of RingCentral "Customers," defined
14  in the SAA as "████████████████████████████████████",
15  SAA § 1(c).  RingCentral has also driven millions of dollars in revenue to Zoom under the SAA's
16  revenue sharing provisions, provided input to Zoom about its product roadmap, and stived to be a
17  good partner throughout their relationship, including by attempting to resolve Zoom's numerous
18  contractual breaches over the years privately and in the spirit of a good-faith business partner.
19  Zoom has repaid RingCentral for its faithful partnership with a lawsuit and smear campaign
20  designed to disrupt RingCentral's efforts to transition its sales pipeline as part of the wind-down
21  of the companyies' relationship.

22  **The SAA's Term, End of Life, and Post-Termination Provisions**

23      11.    The initial term of the SAA ran from ████████████████████
24  ████████████████████████████████████████
25  ████████████████████████████████████████
26  ████.  SAA § 16.

27      12.    The parties mutually agreed to extend the term in writing on multiple occasions,
28  most recently via SAA Amendment 8, executed in 2019, which extended ████████████

1

2

3 ████ Section 16(d) of the SAA, ██████████████████████, provides in pertinent part

4 as follows:

5

6

7

8

9 Emphasis added.

10     13.    Relatedly, the applicable Service Level Agreement (or "SLA") provides that ██

11

12

13

14

15 ██████████ (emphasis added).

16     14.    Section 16(e) of the SAA identifies Zoom's obligations that survive termination of

17 the agreement ████████████████████████████████████████

18 ██████████

19

20

21

22

23

24 Emphasis added.

25     15.    On July 27, 2020, Zoom sent a letter to RingCentral notifying it of Zoom's

26 election to decline the SAA's automatic renewal period after expiration of the term ████████

27 ████████ The July 27 letter is entitled "Notice of Non-Renewal of Strategic Alliance

28

RINGCENTRAL'S COUNTERCLAIMS AGAINST
ZOOM VIDEO COMMUNICATIONS, INC.
4:21-CV-01727-DMR

1   Agreement"—contrary to Zoom's allegations (Dkt. 1 ¶17), the July 27 letter *was not* a

2   termination notice.

3        16.     Two days later, on July 29, 2020, RingCentral responded to that notice with its

4   own notice that it was exercising, on July 29, 2020, RingCentral responded to that notice with its

5   own notice that it was exercising its ████████ rights, thereby ████████████

6   ████████████. Zoom never responded to this letter.

7        17.     By Virtue of RingCentral's ████████ rights, the SAA ████████████████

8   ████████████████████████████████████████████████

9   ████████████████████████████████.

**Zoom Begins Misbehaving After Competition Commences**

11       18.     Zoom launched its own VOIP telephone offering in 2019, introducing a new

12   competitive dynamic into the parties' relationship.  Shortly thereafter, Zoom began exhibiting in

13   its dealings with RingCentral the same disregard for Zoom's legal obligations that has made

14   Zoom the target of an FTC action, multiple law enforcement investigations, and scores of

15   lawsuits alleging misconduct ranging from securities fraud to HIPAA violations.

16       19.     For example, Zoom began removing RingCentral's branding from the Service ██

17   ████████████. RingCentral immediately raised this issue with Zoom, but it was

18   dismissive and refused to commit to restoring RingCentral branding.  Only after RingCentral

19   escalated the branding issue to legal counsel did Zoom reluctantly (and slowly) restore

20   RingCentral branding to the Service by updating the Zoom SDK to include a hard-coded branding

21   message.

22       20.     Also in 2019, Zoom began dragging its feet on assuring feature parity to

23   RingCentral and its Customers ████████████████████████████

24   ████████████████████████████████████████

25   ████████████████████████████████████████

26   ████████ Zoom thus created feature gaps between its own services and RingCentral's

27   offerings by assuring that RingCentral's services were not fully up to date.  Zoom's sales

28   personnel then exploited those feature gaps to convince potential customers to choose Zoom over

RingCentral.  Starting in about 2020, Zoom sales personnel also began making misstatements to customers about the timing and nature of the SAA's future termination in an attempt to create fear, uncertainty, and doubt about whether Zoom would continue to support RingCentral customers.  RingCentral objected to this conduct, which violates, *inter alia*, ████████ ████████████████ SAA § 11.  After communications from RingCentral's counsel, RingCentral stopped hearing reports about misconduct in Zoom's sales organization, but only for a short while.

21.     RingCentral was also compelled to involve legal counsel with Zoom in 2020 after a deluge of Zoom security and privacy scandals shocked the world.[1]  In violation of ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ RingCentral learned about Zoom's myriad privacy and security problems at the same time and in the same way most of the general public did: from press reports.  Zoom refused to provide timely information about these problems to RingCentral, even as RingCentral was fielding calls from concerned Customers.  Ultimately, Zoom shared ████████████ information only after RingCentral again involved outside litigation counsel and served Zoom with a formal notice ██ ████████████████████.

22.     In each of the foregoing instances in which Zoom breached the SAA, rather than rush to court, RingCentral worked in good faith to resolve contractual disputes privately.

23.     In April 2020, on the heels of Zoom's first wave of security scandals, RingCentral launched its own home-grown video conferencing solution, RCV.  RingCentral's fully integrated Messaging-Video-Phone offering is winning the majority of head-to-head sales situations against Zoom.  Zoom has not responded well.

---

[1] *See, e.g.*, https://www.washingtonpost.com/technology/2020/12/18/zoom-helped-china-surveillance/; https://www.consumerreports.org/privacy/at-zoom-new-privacy-and-security-problems-keep-emerging/; https://www.techrepublic.com/article/who-has-banned-zoom-google-nasa-and-more/; https://fortune.com/2020/04/06/zoom-zm-stock-price-today-security-issues-school-districts-spacex-ban/

**Zoom Breaches the SAA in Response to Competitive Pressure from RingCentral**

24.      RingCentral alleges under FRCP 11(b)(3) that discovery will likely show that, in about early February 2021, multiple Zoom sales personnel began telling RingCentral Customers that Zoom would soon cut them off from the Service.  Ring Central alleges under FRCP 11(b)(3) that discovery will likely show that, in some instances, Zoom sales personnel suggested to Customers they had approximately six months to switch from RingCentral to Zoom in order to avoid losing access to the Service, and/or suggested that Customers would lose access to the Service via RingCentral in just thirty days.  Ring Central also alleges under FRCP 11(b)(3) that discovery will likely show that Zoom understood that its statements about ending support for RingCentral Customers would cause Customers to be concerned and would harm RingCentral's business and relationships.

25.      RingCentral alleges under FRCP 11(b)(3) that discovery will likely show that Zoom understands both that RCV currently lacks Webinar capacity and breakout rooms, and that RingCentral is currently actively developing those features.  Thus, while RingCentral has already begun signing up new customers for RCV, and transitioning some preexisting customers to RCV, that solution is not yet suitable for all customers.  RingCentral alleges under FRCP 11(b)(3) that discovery will likely show that Zoom knows all of this.  RingCentral alleges under FRCP 11(b)(3) that discovery will likely show that Zoom also understands that its contractual obligations continue ███████████████, that Zoom knows that RingCentral relied on ████████ in planning its development lifecycle, and that by blocking RingCentral from breakout rooms and webinars as part of RingCentral Service bundles, Zoom would gain a competitive advantage over RingCentral.

26.      During the week of February 22, 2021, RingCentral's General Counsel reached out to Zoom's General Counsel to once again request that Zoom get its sales organization under control and prevent further violations of the SAA.

27.      On February 24, 2021, Zoom sent a letter to RingCentral asserting that RingCentral's efforts to sell the Service during ████████ breached the SAA and violate unidentified "intellectual property" rights.  Zoom's letter took the position that the "purpose" of

RINGCENTRAL'S COUNTERCLAIMS AGAINST
ZOOM VIDEO COMMUNICATIONS, INC.
4:21-cv-01727-DMR

1   ▓▓▓▓▓▓▓▓▓ does not permit RingCentral to continue to sell the Service.  Whatever Zoom's

2   view may be about "the purpose" ▓▓▓▓▓▓▓▓▓, it is irrelevant: ▓▓▓▓▓▓▓▓▓▓▓▓▓

3   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

4   For example, as noted above, SAA § 16(e) states expressly that "▓▓▓▓▓▓▓▓▓▓▓▓▓▓

5   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

6   ▓▓▓▓▓▓", and RingCentral ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

7   by invoking ▓▓▓▓▓▓▓▓▓▓▓.

8       28.    RingCentral responded to Zoom's letter on February 26, 2021.  RingCentral's

9   letter pointed out that Zoom's position is irreconcilable with the plain text of the SAA and

10  fundamental cannons of contract construction.  RingCentral's letter invited a constructive

11  dialogue on an amicable path forward, but made clear RingCentral's intent to protect itself and its

12  Customers from Zoom's misconduct.

13      29.    RingCentral continued to attempt to engage Zoom in discussions about an

14  amicable resolution to the parties' dispute up until March 11, 2021.  But without warning, Zoom

15  rushed to court with a meritless lawsuit on March 12.  Zoom's March 12 lawsuit reveals that

16  Zoom has implemented "technological steps" to block RingCentral from activating new

17  Customers, in violation of the SAA.

18      30.    Zoom's heavily and selectively redacted complaint[2] predictably generated

19  inaccurate press reports spreading Zoom's false narrative to the market, including at least one

20  article discussing "previously unreported news" that Zoom "terminated its seven-year partnership

21  with RingCentral" in July 2020.  In fact, the SAA will not terminate until ▓▓▓ and it remains in

22  full force and effect.

## **FIRST CLAIM FOR RELIEF**

### **(Breach of Contract)**

25      31.    RingCentral hereby restates and re-alleges the allegations set forth above and

26  incorporates them by reference.

27

28  ---
[2] This document is filed with redactions because of the position taken by Zoom when RingCentral sought agreement to file certain information publicly.

1    32.    The SAA is a valid, binding, and enforceable contract.

2    33.    RingCentral performed all of its obligations under the SAA.

3    34.    Zoom has breached SAA § 16(d).

4    35.    Zoom's breach is wrongful and willful within the meaning of Cal. Civ. Code §

5    1668.

6    36.    RingCentral has suffered damages as a result of Zoom's breach.  Among other

7    things, RingCentral has had to devote resources to maintaining and repairing customer

8    relationships damaged by Zoom's breaches.  RingCentral alleges under FRCP 11(b)(3) that

9    discovery will likely show that RingCentral has lost at least one customer due to Zoom's breach

10   of contract.

11   37.    The economic harm caused by Zoom and harm to RingCentral's reputation,

12   goodwill, and customer relationships is difficult to quantify.  Unless Zoom's conduct is enjoined,

13   RingCentral will suffer further irreparable harm for which it has no adequate remedy at law.

14   38.    RingCentral is entitled to an injunction, damages, and attorney's fees.

15                    **<u>SECOND CLAIM FOR RELIEF</u>**

16              **<u>(Declaratory Judgment of Non-Infringement)</u>**

17   39.    RingCentral hereby restates and re-alleges the allegations set forth above and

18   incorporates them by reference.

19   40.    The SAA continues to remain in full effect during ███████████.  During

20   this period, RingCentral is authorized to sell the Service and to use Zoom's trademarks.

21   41.     RingCentral has a license under the SAA to use Zoom's trademarks and denies

22   that it has infringed, mislead any consumer, or engaged in any unfair competition.  Under the

23   SAA, RingCentral's license to use Zoom's marks and to sell the genuine Zoom Service extends

24   ████████████████████████████.  In addition, no consumer is

25   confused about the source of Zoom's Services or Zoom's affiliation with RingCentral under the

26   SAA.

27   42.    Zoom alleges that RingCentral has infringed Zoom's trademarks, mislead

28   consumers, and engaged in unfair competition in violation of the Lanham Act, 15 U.S.C. §

RINGCENTRAL'S COUNTERCLAIMS AGAINST
ZOOM VIDEO COMMUNICATIONS, INC.
4:21-cv-01727-DMR

1125(a).  Zoom's false allegations have placed RingCentral in the position of either pursuing

allegedly illegal behavior or abandoning that which RingCentral claims a right to do under the

SAA.  Thus, a substantial, immediate, and concrete controversy exists between Zoom and

RingCentral regarding whether the RingCentral's conduct violates 15 U.S.C. § 1125(a).  A

judicial declaration will resolve this controversy and fix the parties rights amongst each other

with respect to these issues.

43.     RingCentral seeks a judicial confirmation of its license and rights to use Zoom's

trademarks and a declaration of non-infringement.

44.     RingCentral is entitled to declaratory judgment and injunctive relief to effectuate

the declaratory judgment.

### THIRD CLAIM FOR RELIEF

### (Declaratory Judgment of Contractual Rights)

45.     RingCentral hereby restates and re-alleges the allegations set forth above and

incorporates them by reference.

46.     The entirety of the SAA remains in full force and effect



49.     A substantial, immediate, and concrete controversy exists between Zoom and

RingCentral regarding their rights and duties under the SAA.  A judicial declaration will resolve

this controversy and fix the parties' rights and obligations in relation to each other with respect to

these issues

50.     RingCentral seeks a judicial confirmation that its contractual rights under the SAA

continue                            and a declaration that Zoom breached the SAA by

blocking RingCentral from activating Customers.

51.     RingCentral is entitled to declaratory judgment and injunctive relief to effectuate the declaratory judgment.

### FOURTH CLAIM FOR RELIEF

### (Unfair Competition (Cal. Civ. Code § 17200 *et seq*))

52.     RingCentral hereby restates and re-alleges the allegations set forth above and incorporates them by reference.

53.     Zoom has engaged in unfair competition in violation of Cal. Civ. Code § 17200 *et seq*., including through the dissemination of deceptive, untrue, and misleading advertising in violation of Cal. Bus. & Prof. Code § 17500 while communicating with RingCentral Customers and prospective customers.  Ring Central alleges under FRCP 11(b)(3) that discovery will likely show that Zoom made false statements including: (i) in February 2021, a Zoom sales representative falsely telling at least one RingCentral Customer that it would be cut off from Zoom Service in thirty days and (ii) in February 2021, a Zoom sales representative falsely telling at least one RingCentral Customer that it would be cut off from Zoom Service in six months. Customers were likely to be deceived by such statements, and Ring Central alleges under FRCP 11(b)(3) that discovery will likely show that at least some Customers were in fact deceived.

54.     Under FRCP 11(b)(3) RingCentral alleges that discovery will likely show that it has suffered the loss of money and property and an economic injury in fact as a result of Zoom's conduct, although this economic injury will likely be difficult to quantify.  In addition, RingCentral has been damaged in its goodwill, customer relationships, and reputation as a result of Zoom's conduct.  Unless Zoom's conduct is enjoined, RingCentral will suffer further irreparable harm for which it has no adequate remedy at law.

55.     RingCentral is entitled to an injunction, restitution, and attorney's fees.

### PRAYER FOR RELIEF

WHEREFORE, Defendant-Counterclaimant prays for judgment against Plaintiff-Counterdefendant as follows:

    A.     Entry of judgment in favor of RingCentral against Zoom;

    B.     A preliminary and permanent injunction;

C.    A declaration of RingCentral's rights;

D.    An order awarding RingCentral damages according to proof;

E.    Prejudgment and post-judgment interest;

F.    An order awarding RingCentral its costs and attorneys' fees;

G.    All such further and additional relief, in law or equity, to which Defendant-Counterclaimant may be entitled or which the Court deems just and proper.

## DEMAND FOR JURY TRIAL

RingCentral demands a jury trial on all issues so triable as of right.

Dated: March 15, 2021                           CLEMENT SETH ROBERTS
                                                KAREN G. JOHNSON-MCKEWAN
                                                ROBERT L. URIARTE
                                                NATHAN SHAFFER
                                                Orrick, Herrington & Sutcliffe LLP


                                        By:    _/s/ Clement Seth Roberts_
                                                CLEMENT SETH ROBERTS
                                                Attorneys for Defendant
                                                RingCentral, Inc.