Douglas E. Lumish (CA 183863)
doug.lumish@lw.com
Matthew Rawlinson (CA 231890)
matt.rawlinson@lw.com
Arman Zahoory (CA 306421)
arman.zahoory@lw.com
**LATHAM & WATKINS LLP**
140 Scott Drive
Menlo Park, California 94025
Telephone: 650-328-4600
Facsimile: 650-463-2600

Jennifer Barry (CA 228066)
jennifer.barry@lw.com
**LATHAM & WATKINS LLP**
12670 High Bluff Drive
San Diego, CA 92130
Telephone: 858-523-5400
Facsimile: 858-523-5450

*Attorneys for*
*Zoom Video Communications, Inc.*

Clement Seth Roberts (SBN 209203)
croberts@orrick.com
Karen G. Johnson-McKewan (SBN 121570)
kjohnson-mckewan@orrick.com
Nathan Shaffer (SBN 282015)
nshaffer@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

Robert L. Uriarte (SBN 258274)
ruriarte@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1000 Marsh Road
MENLO PARK, CA 94021
Telephone:  +1 650 614 7400
Facsimile:  +1 650 614 7401

*Attorneys for Defendant*
*RingCentral, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

ZOOM VIDEO COMMUNICATIONS, INC.,

Plaintiff,

v.

RINGCENTRAL, INC.,

Defendant.

RINGCENTRAL, INC.,

Counterclaimant,

v.

ZOOM VIDEO COMMUNICATIONS, INC.

Counterdefendant.

Case No. 5:21-cv-01727-EJD

**JOINT CONSOLIDATED RESPONSE TO ORDER TO SHOW CAUSE RE THE PARTIES' ADMINISTRATIVE MOTIONS TO FILE UNDER SEAL (ECF NO. 25)**

Pursuant to the Northern District of California Civil Local Rules 7-11 and 79-5, Plaintiff Zoom Video Communications, Inc. ("Zoom") and Defendant-Counterclaimant RingCentral, Inc. ("RingCentral") hereby respond to the Court's Order to Show Cause regarding the parties' respective motions to seal.  This OSC response addresses the parties' respective requests to file under seal portions of (1) Zoom's Complaint and Exhibit A to the Complaint, (2) RingCentral's Counterclaims, (3) RingCentral's Motion for a Temporary Restraining Order, (4) the Declaration of Kira Makagon Re: RingCentral's Motion for *Ex Parte* TRO and the attached Exhibit 1; (5) Exhibit 5 to the declaration of John Marlow; and (6) the Court's temporary restraining order against Zoom.  The present response is accompanied and supported by the attached Declaration of Tiffany Wan, the declaration of Robert L. Uriarte, and a Proposed Order.

## I.  INFORMATION THE PARTIES AGREE SHOULD REMAIN UNDER SEAL

The parties request an order authorizing the filing of the following materials under seal. The information the parties agree should remain under seal is identified in yellow in the accompanying documents.

| Document | Portions to be Sealed | Basis for Sealing Document or Portions Thereof |
|---|---|---|
| Exhibit A to Zoom's Complaint ("SAA") (ECF No. 1) | Highlighted portions in yellow on pages 11, 20-22, 31-34, 37-38, 40-46, 54-57. | The text reflects confidential pricing information and other highly sensitive private business information |
| Exhibit 1 to Makagon Declaration ("SAA") (ECF No. 14-6) | Highlighted portions in yellow on pages 11, 21- 23, 32-35, 38-42, 49-50, 61-62, 64-70, 77-80, 82, 86-89, 97-98. | The text reflects confidential pricing information and other highly sensitive private business information |
| RingCentral's Counterclaims (ECF No. 11) | Highlighted portion in yellow at page 6. | The text reflects confidential pricing information and other highly sensitive private business information |

| Document | Portions to be Sealed | Basis for Sealing Document or Portions Thereof |
|---|---|---|
| Ringcentral, Inc.'s Ex Parte Motion For (1) Temporary Restraining Order and (2) Order To Show Cause Re Preliminary Injunction; Memorandum Of Points And Authorities In Support Thereof (ECF No. 14) | Highlighted portion in yellow at page 4. | The text reflects confidential pricing information and other highly sensitive private business information |

**II.    INFORMATION RINGCENTRAL SEEKS TO SEAL**

As reflected in the tables above in Section I and below in this Section, RingCentral seeks to seal three narrow categories of information: (1) pricing and revenue-sharing details under the parties' Strategic Alliance Agreement ("SAA"); (2) service level commitments under the SAA's Service Level Agreement ("SLA terms"); and (3) the length of the SAA's End of Life Period ("EOL Period").  RingCentral treats these commercially sensitive details as "confidential information" in the ordinary course of its business, and the SAA defines the information as such. *See* SAA § 11; Declaration of Tiffany Wan ¶¶4-6.  RingCentral's request to seal is narrowly tailored to be consistent with Local Rule 79-5, the "compelling reasons" standard, and RingCentral's respect for the First Amendment.  *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1181 (9th Cir. 2006) (setting standard).  Courts routinely recognize that commercial details that could impact a company's competitive advantage if filed publicly satisfy the "compelling reasons" standard for filing information under seal.  *Pace Anti-Piracy, Inc. v. Inside Secure*, 2018 WL 10517182, at *2 (N.D. Cal. Jan. 8, 2018) (confidential licensing terms met the "compelling reasons" standard); *Fed. Trade Comm'n v. Qualcomm Inc.*, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019) (granting request to seal "information that, if published, may harm … competitive standing"); *Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, 2016 WL 4091388, at *1 (N.D. Cal. Aug. 2, 2016) (sealing information that gives an "unfair advantage" to competitors); *see also In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (sealing "pricing terms, royalty rates, and guaranteed minimum payment terms").

Zoom agrees that the first two categories of information meet the "compelling interests"

sealing standard, and it asserts its *own independent confidentiality interest* in obtaining a sealing order.  Declaration of Robert L. Uriarte ("Uriarte Decl."), Ex. 2.  Zoom raises a dispute about the EOL Period information, however.  This dispute boils down to four words RingCentral seeks to seal: two in the original SAA § 16(d) and two in SAA Amendment 4 that establish the length of the original and extended EOL Periods, respectively.  More fundamentally, Zoom's dispute is an attempt to do through an administrative sealing procedure what it cannot lawfully do under the SAA: publish the SAA's confidential termination date and use it as a selling point in competing with RingCentral.  Zoom's conduct is improper.

      Zoom argues that the length of the EOL Period does not meet the "compelling interests" sealing standard, but it points to nothing in the record to distinguish this commercial detail from the pricing and SLA details that Zoom itself seeks to seal.[1]  On the contrary, Zoom is relying on *RingCentral's witness declaration to support Zoom's sealing request*, Uriarte Decl. Ex. 2, and RingCentral's declarant states that the length of an EOL Period is a sensitive, confidential commercial term just like the price and SLA information that Zoom wants to seal. Wan Decl. ¶¶ 4-6.  RingCentral's declaration—upon which Zoom relies—states that, if made public, the EOL period information could be used against RingCentral by competitors or counterparties in future negotiations.  Wan Decl. ¶ 6; *e.g.*, *Johnstech,* 2016 WL 4091388, at *1.

      Zoom argues that RingCentral seeks to seal the length of the EOL Period for an improper purpose, i.e., "to conceal the end-date of the SAA, so that RingCentral can continue to sign up additional customers who desire the Zoom Service for long-term RingCentral contracts, *without their knowledge of the date that service will terminate*."  Page 6, *infra* (emphasis added).  Nonsense.  As the Court observed in its temporary restraining order, "§ 16(e) of the SAA provides that the termination of the SAA will not terminate or affect any Customer Agreements."  Dkt. 24 at 7.  In other words, the EOL Period has nothing to do with "the date that service will

---

[1] Zoom cites no apposite law in support of its position either.  The cases cited by Zoom do not address sealing motions at all—let alone the compelling reasons standard.  *See*, *Sumotext Corp. v. Zoove, Inc.,* 2020 WL 127671, at *4 (N.D. Cal. Jan. 10, 2020) *4 (addressing summary judgment motion); *see also Hexagon Sec. LLC v. Golden Pac. Bancorp, Inc.*, 2015 WL 167024, at *2 (N.D. Cal. Jan. 13, 2015) (addressing motion to dismiss).  Neither case mentions a request to seal or a confidentiality interest.

terminate" for any customer.  Instead, the EOL Period defines the date through which RingCentral can sell Zoom's services.  RingCentral has no intent to sell Zoom's services after the EOL Period expires, and Zoom has never suggested otherwise.

Moreover, the Court should reject Zoom's efforts to unseal the length of the EOL Period in light of the fact that Zoom has been attempting to (mis)use information about the SAA's termination date to compete against RingCentral.  For example, as shown in Exhibit 1 to the declaration of Robert L. Uriarte, Zoom has been leaking information about the purported termination of the SAA as a sales tactic.  Given this demonstrated misuse of confidential information about the SAA's termination provisions (in violation of SAA § 11), the Court should not allow Zoom to make the EOL Period length public through this proceeding.

Zoom's conduct brings this case squarely within the class of cases where compelling reasons to seal exist to "prevent documents from being used as sources of business information that might harm a litigant's competitive standing." *DiscoverOrg Data, LLC v. Bitnine Global, Inc.*, 2020 WL 8669859, at *3 (N.D. Cal. Nov. 6, 2020); *Philips v. Ford Motor Co.*, 2016 WL 7374214, at *6 (N.D. Cal. Dec. 20, 2016) (the "need to avoid competitive disadvantage in contract negotiations and undercutting by competitors is a compelling reason that justifies sealing").  As shown by Zoom's past conduct and present desire to use the confidential EOL period end date in competition with RingCentral, the EOL end date would harm RingCentral's competitive standing if publicly disclosed and thus meets the compelling reasons standard.  Zoom's argument to the contrary is devoid of evidentiary support.  Rather than submit any competent evidence, Zoom casually uses attorney argument to accuse RingCentral of trying to mislead customers, and to make broad, unsupported assertions, such as the supposition that the SAA is not the "kind of contract" that "counterparties might be able to use as negotiating leverage." Page 8, *infra*.  This unsupported, incompetent attorney argument cannot overcome RingCentral's supporting declaration.

Zoom's conduct has placed RingCentral in a position in which it has no choice but to litigate publicly and expose nearly all of the SAA's terms on the public docket in order to defend

itself. But that does not mean that RingCentral should lose *all* of its confidentiality rights, or that Zoom should be rewarded for its tactics. Zoom agreed that the SAA's terms, including the length of the EOL Period, are confidential. SAA § 11. Zoom's effort to publicize the date on which the SAA will ultimately terminate is precisely what the parties agreed *not to do* in SAA § 11. The date on which the SAA terminates is not relevant to the merits of the parties' dispute, and Zoom's transparent attempt to use this Court's sealing procedures as a means for enhancing its fear campaign and escaping its confidentiality obligations should be rejected.

Based on the foregoing, RingCentral respectfully requests that the Court permit RingCentral to maintain the following limited information under seal:

| Document | Portions to be Sealed | Basis for Sealing Document or Portions Thereof |
| --- | --- | --- |
| Zoom's Complaint (ECF No. 1) | Highlighted portions in blue at pages 1, 6, 7 | The text reflects a confidential deal term |
| Ex. A to the Complaint ("SAA") (ECF No. 1) | Highlighted portions in blue at pages 13, 45. | The text reflects a confidential deal term |
| Ring Central's Counterclaims (ECF No. 11) | Highlighted portions in blue at pages 5, 6, 7, 10, 11, 12. | The text reflects a confidential deal term |
| Makagon Declaration (ECF No. 14-2) | Highlighted portions in blue at pages 4-5. | The text reflects a confidential deal term |
| Exhibit 1 to Makagon Declaration ("SAA") (ECF No. 14-6) | Highlighted portions in blue at pages 13, 69. | The text reflects a confidential deal term |
| Exhibit 5 to Marlow Declaration (ECF No. 14-10) | The highlighted date in blue on page 1 | The text reflects a confidential deal term |
| Ringcentral, Inc.'s Ex Parte Motion For (1) Temporary Restraining Order and (2) Order To Show Cause Re Preliminary Injunction; Memorandum Of Points And Authorities In Support Thereof (ECF No. 14) | Highlighted portions in blue at pages 1, 2, 3, 4, 5, 6, 9, 10, 11. | The text reflects a confidential deal term |
| Temporary Restraining Order (ECF No. 24) | The time period at page 3, line 14 and in the block quote beginning on line 16; the date at page 4, line 7; the date at page 6, line 24; the time period at page 7 line 6, and the date at line 8. All designations highlighted in blue. | The text reflects confidential deal terms derived from the portions of the SAA RingCentral seeks to seal as reflected above. |

### III. DOCUMENTS THE PARTIES NO LONGER SEEK TO FILE UNDER SEAL

The parties agree that the following documents, filed initially under seal, may be publicly filed in their entirety: Exhibits 3, 4, and 6-8 of the Marlow Declaration (ECF Nos. 13-14, 13-16, 13-20, 13-22, 13-24).

### IV. ZOOM'S ARGUMENT

Zoom joins in the majority of RingCentral's motion to seal to the extent it involves commercially sensitive information, as Zoom agrees that compelling reasons exist to redact confidential pricing and financial information contained in the SAA—the release of which would permit competitors to undercut rates, and would provide an unfair advantage to any company seeking to contract with either Zoom or RingCentral in the future. However, Zoom opposes RingCentral's request to seal information related to the termination of the SAA, including the termination date.[2] Termination dates of contracts are regularly disclosed in public filings and are simply not the type of private and confidential business information that requires sealing. *See, e.g. Sumotext Corp. v. Zoove, Inc.,* No. 16-CV-01370-BLF, 2020 WL 127671, at *4 (N.D. Cal. Jan. 10, 2020) (disclosing termination date in a dispute related to extension of lease terms); *Hexagon Sec. LLC v. Golden Pac. Bancorp, Inc*., No. C 14-04141 LB, 2015 WL 167024, at *2 (N.D. Cal. Jan. 13, 2015) (discussing contractual termination date).

Here, we believe the reason RingCentral wants to prevent the public from seeing the termination date is clear: RingCentral seeks to conceal from the public the end-date of the SAA, so that it can continue to sign up additional customers who desire the Zoom Service for long-term RingCentral contracts, without their knowledge of the date that service will terminate.

---

[2] At 10:00 PM the night this submission was due, despite apparently having had it in their possession for three weeks, RingCentral's counsel sent Zoom's counsel a purported email from a Zoom employee communicating with an unidentified alleged RingCentral customer. Given the last minute surprise counsel orchestrated, Zoom has not had the opportunity to investigate the email. However, it does not affect the underlying issues involved in this motion, i.e., whether RingCentral has met the compelling reason standard to seal the termination date of the SAA. RingCentral offered no explanation for waiting until the eleventh hour to spring this document on Zoom or to alert Zoom that it was intending to raise the email with the Court. Nor did counsel offer any explanation for its failure to raise the issue with Zoom informally first to try to resolve any issues related to it. This tactic should be seen for what it is: a distraction from the relevant question of what to conceal from the public via this sealing motion.

RingCentral does not want this information public so that it can continue to mislead customers, which is certainly ***not*** an appropriate basis to justify sealing. *See Kamakana v. City & Cnty. of Honolulu,* 447 F.3d 1172, 1179 (9th Cir. 2006); *Polaris Innovations Ltd. v. Kingston Tech. Co., Inc.,* No. SACV1600300CJCRAOX, 2017 WL 2806897, at *8 (C.D. Cal. Mar. 30, 2017) (noting that "release of absolutely any bit of information might hurt a company" and noting that protection for secrets should be used to "prevent[] corporate espionage" not to "propogat[e] informational asymmetries").

Instead, this Court "start[s] with a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1135 (9th Cir. 2003). As the moving party, RingCentral bears the burden of meeting the heightened "compelling reasons" standard. *See* Dkt. 25; *see also Ctr. for Auto Safety v. Chrysler Grp., LLC,* 809 F.3d 1092, 1103 (9th Cir. 2016) (compelling reasons standard applies to motions for a preliminary injunction); *Williams & Cochrane, LLP v. Quechan Tribe of Fort Yuma Indian Rsrv.*, No. 3:17-CV-1436-GPC-MDD, 2017 WL 3600417, at *2 (S.D. Cal. Aug. 17, 2017) (district courts find that there must be compelling reasons to seal complaint). "Under this stringent standard, a court may seal records only when it finds 'a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture.'" *Ctr. For Auto Safety,* 809 F.3d at 1096-97; *Jacques v. Bank of Am. Corp.,* No. 1:12 Civ. 821 (SAB), 2016 WL 10933144, at *1 (E.D. Cal. Aug. 19, 2016). Preventing consumers from knowing the real status of RingCentral's termination date with Zoom is not a compelling reason and serves no purpose other than to deprive consumers of accurate information relevant to their purchasing decisions.

Even putting aside its improper purpose, RingCentral also does not come close to meeting the necessary standard. To overcome the strong presumption in favor of access to judicial records, RingCentral "must articulate compelling reasons ***supported by specific factual findings.***" *Kamakana v. City & Cnty. of Honolulu,* 447 F.3d 1172, 1178 (9th Cir. 2006) (emphasis added). RingCentral has utterly failed to do so. Instead, RingCentral has vaguely claimed only that the termination date is a "sensitive deal term" that competitors could use "to

their unfair advantage" and "leverage…against RingCentral in negotiations." Mot. at 8. Yet, RingCentral does not offer *any* facts supporting these conclusory assertions. The kind of general and conclusory claims RingCentral makes here are insufficient to justify sealing even under the less stringent "good cause" standard—***let alone the "compelling reasons" standard***. *See U.S. Ethernet Innovations, LLC v. Acer, Inc.,* No. C 10-3724 CW, 2013 WL 4426507, at *2 (N.D. Cal. Aug. 14, 2013) (general claims of "harm" and "competitive disadvantage," without any "specific facts or explanation" are merely "broad and generic statements [that] do not meet the standard for sealing"); *Dunbar v. Google, Inc.,* No. 5:12-CV-003305-LHK, 2012 WL 6202719, at *3 (N.D. Cal. Dec. 12, 2012) (denying to seal under the less stringent "good cause" standard as movant failed to explain precisely how any information would be used to give competitors an unfair advantage); *Copart, Inc. v. Sparta Consulting, Inc.*, No. 214CV00046KJMCKD, 2016 WL 3126108, at *2 (E.D. Cal. June 2, 2016) (denying to seal under the "good cause" standard when movant only provided a "boilerplate explanation" that the documents "risks causing [movant] annoyance, embarrassment, oppression, undue burden, and competitive harm.")[3] For this reason alone, RingCentral's request to seal the termination information should be denied.

RingCentral also ***cannot*** articulate any reason this term is "sensitive" or how it could be "leverage[d] against" RingCentral in deal negotiations. RingCentral publicly admits that it is *already in the process* of *internally* developing a replacement for Zoom's product (which it claims is superior) and it will "soon be transitioning customers" to this new service. There is no reason to believe that the date the SAA terminates could have any material role in other negotiations—especially considering that RingCentral is replacing Zoom's product with its own internal software. Nor is this the kind of contract (like a typical supply contract or a series of identical contracts) that counterparties might be able to use as negotiating leverage by pointing out that RingCentral has agreed to such terms in the past. To the contrary, as the dispute in this

---

[3] Even RingCentral's own cited legal authority explains that "an unsupported assertion of unfair advantage to competitors without explaining how a competitor would use the information to obtain an unfair advantage is insufficient." *Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, No. 14-cv-02864-JD, 2016 WL 4091388, at *1 (N.D. Cal. Aug. 2, 2016).

case makes clear, this was a highly bespoke contract for an unusual cutting edge technology service, whose terms were very specific to the needs and circumstances of these parties. It is not colorable that disclosure of this particular (highly negotiated) end date process will give hypothetical future counterparties negotiating leverage over RingCentral in future negotiations.

RingCentral has failed to establish compelling reasons to seal information related to the termination of the SAA, and thus "the public is entitled to access by default." *Kamakana,* 447 F.3d at 1181. The Court should reject RingCentral's attempt to hide highly relevant information from the public.

Dated: March 23, 2021                                     LATHAM & WATKINS LLP

                                                          By */s/ Douglas E. Lumish*
                                                             Douglas E. Lumish

                                                          *Attorneys for Plaintiff*
                                                          *Zoom Video Communications, Inc.*


Dated: March 23, 2021                                     ORRICK, HERRINGTON & SUTCLIFFE LLP

                                                          By */s/ Clement Seth Roberts*
                                                             Clement Seth Roberts

                                                          *Attorneys for Defendant*
                                                          *RingCentral, Inc.*


**SIGNATURE ATTESTATION**

Pursuant to Local Rule 5-1(i)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from Douglas E. Lumish and Clement Seth Roberts.

                                                          By: /s/ *Clement Seth Roberts*