Douglas E. Lumish (CA 183863)
doug.lumish@lw.com
Matthew Rawlinson (CA 231890)
matt.rawlinson@lw.com
Arman Zahoory (CA 306421)
arman.zahoory@lw.com
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, California 94025
Telephone: 650-328-4600
Facsimile: 650-463-2600

Jennifer Barry (CA 228066)
jennifer.barry@lw.com
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, California 92130
Telephone: 858-523-5400
Facsimile: 858-523-5450

*Attorneys for
Zoom Video Communications, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZOOM VIDEO COMMUNICATIONS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RINGCENTRAL, INC., <br><br> Defendant. | CASE NO. 3:21-cv-1727 <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** <br><br> REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED |

Zoom Video Communications, Inc. ("Zoom"), for its Complaint against RingCentral, Inc. ("RingCentral"), demands a jury trial and alleges as follows:

## INTRODUCTION

1. For the past seven-plus years, Zoom has partnered with RingCentral, providing Zoom's enormously popular video conferencing services for RingCentral to resell under its own "RingCentral Meetings" brand. The terms governing this relationship are set forth in a Strategic Alliance Agreement ("SAA" or "agreement") and its nine amendments. Exh. A (SAA). But the relationship has changed and, at Zoom's election, the agreement has been terminated and this business relationship is coming to a quick end.

2. Specifically, in July of 2020, Zoom sent the requisite six-month's written notice to RingCentral, causing the SAA to terminate on January 31, 2021. Under the agreement, post-termination the parties moved into an "end of life" period, which gives RingCentral ▬▬▬ "to transition Customers to an alternative to the Service (the 'EOL Period')." *Id.* at 4th Amendment §15(b). The agreement is clear that, while RingCentral has certain rights to continued support for existing customers and other benefits during the end of life period, the license it previously had to market and resell Zoom's products, and the license it previously had to use Zoom's trademarks to market those products, immediately terminated upon termination of the SAA on January 31, 2021.

3. Despite the termination of the SAA and the lapse of its licenses, and despite repeated requests from Zoom that it stop, RingCentral has continued unabated to market and resell Zoom's products to new customers after January 31, 2021, and to use Zoom's trademarks to aid that effort. Desperate to continue reselling Zoom's technology, RingCentral has justified this breach of the agreement and infringement of Zoom's trademarks by arguing that it has full rights to sell to new customers during the SAA's end of life period—essentially unilaterally adding ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ to sell Zoom's products against Zoom's will.

4. In addition, RingCentral has invoked confidentiality and non-competition provisions in the agreement to contend that Zoom cannot discuss publicly (or even with its own employees) the fact that Zoom terminated the SAA and to bar Zoom from competing for

1  RingCentral's customers, all the while maintaining that RingCentral somehow has free rein to say
2  whatever it wants about the partnership and to make every effort to steal away Zoom's customers.
3  RingCentral's motive for this overreach has become plain: while hoping to silence Zoom
4  concerning the true status of the SAA, RingCentral has embarked upon a campaign of
5  misinformation designed to mislead customers, investors, and the public at large.  In particular,
6  RingCentral has concealed the fact that the SAA was terminated by Zoom, falsely suggesting
7  instead that RingCentral is transitioning customers to RingCentral Video for illusory quality or
8  feature-based reasons.  These statements are belied by RingCentral's insistence on continuing to
9  sell Zoom's products despite having its own available alternative—if RingCentral truly believed
10 its video product was a quality replacement for Zoom's product, then it would transition all of its
11 customers with no further delay.  Its failure to do so reveals that RingCentral believes the opposite
12 to be true; Zoom's products are the best in the market and provide the features RingCentral's
13 customers desire.

14  5.  In short, despite telling customers and investors that it is moving apace toward
15 independence from Zoom, RingCentral in fact seeks to cling to Zoom's products, brand, and
16 extraordinary goodwill, for as long as possible and in flagrant violation of the SAA.  In a classic
17 bait-and-switch, RingCentral is dangling Zoom in front of potential customers to lure them into
18 signing multi-year contracts all the while knowing that RingCentral is no longer licensed to market
19 Zoom or use its trademarks.  This lawsuit seeks to stop this improper conduct, to obtain relief for
20 RingCentral's breach of the agreement and infringement of Zoom's trademarks, and to obtain the
21 Court's judgment establishing that the confidentiality and non-compete provisions are void to the
22 extent they restrain fair competition by Zoom.

## NATURE OF THE ACTION

25  6.  This is a civil action for violation of the Lanham Act, for breach of contract, for
26 declaratory judgment that certain provisions of the agreement are void for violating California
27 Business and Professions Code § 16600, and for such other relief as the Court deems just and
28 proper.

## PARTIES

7. Zoom is an American corporation organized under the laws of the State of Delaware with its principal place of business at 55 Almaden Boulevard, 6th Floor, San Jose, California 95113. Zoom is celebrated world-wide for its industry-leading video conferencing platform used by families, schools, medical care providers, businesses, governmental entities, and organizations of all kinds across the globe to enable people to connect face-to-face over the internet. In addition to its popular video conferencing applications, Zoom provides solutions for chat, conference room video, enterprise cloud phone systems, and webinars. On any given day, hundreds of millions of users connect on Zoom's platform with each other, bridging great distances to meet, chat, talk, and share files, as if in the same room together.

8. RingCentral is a corporation organized under the laws of the State of Delaware with its principal place of business at 20 Davis Drive, Belmont, California 94002. RingCentral provides various communications products and services for phone, video conferencing, messaging, and other business functions

## JURISDICTION AND VENUE

9. This action arises under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. and contains related California statutory and common law claims. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, as this is an action arising under the laws of the United States and relating to trademarks. This Court has supplemental jurisdiction over the state statutory and common law claims pursuant to 28 U.S.C. § 1367, as those claims are part of the same case or controversy as the federal claims alleged herein, and involve RingCentral's ongoing use, disclosure, and distribution of Zoom's software, trade secrets, technology, and information in violation of RingCentral's contractual obligations to Zoom.

10. This Court has personal jurisdiction over RingCentral by virtue of its headquarters being located in the State of California and this District, transacting and doing business in the State of California and this District, and in committing acts of trademark infringement and contract breach in the State of California and this District. Accordingly, this Court has specific jurisdiction

over RingCentral in connection with this action, and RingCentral's contacts with the State of California are continuous and systematic to such extent that RingCentral is subject to the general jurisdiction of the State of California and this Court.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.  RingCentral resides and has its headquarters and principal place of business in this District, conducts business in this District, infringed Zoom's trademarks in this District, and breached the agreement in this District. Moreover, RingCentral has agreed and consented to litigation of claims arising from the agreement being heard in this District. *See* Exh. A (SAA) at Section 18(g) ("**Governing Law and Venue** …. The Parties hereby submit to the exclusive jurisdiction of, and waive any venue objections against, the state and federal courts in Santa Clara County, California in any litigation arising out of or relating to the Agreement.").

## INTRADISTRICT ASSIGNMENT

12.     This Complaint includes an intellectual property cause of action, an excepted category under Civil Local Rule 3-2(c), and consequently should be assigned on a District-wide basis.

## BACKGROUND

13.     Zoom first released its video conferencing software and service to the public under the ZOOM trademark ("ZOOM Mark") in August of 2012, and its user base has grown steadily since.  In October 2013, while Zoom was still a fledgling company little known in the marketplace, Zoom and RingCentral entered into a partnership under the SAA under which RingCentral was granted a license to "market and resell" Zoom's Unified Meeting Experience Service, the name at the time for Zoom's web meeting and video conference service.  *See* Exh. A (SAA) at §§1(h) and 2(a). In addition, the agreement included a license permitting RingCentral to use, reproduce, and display Zoom's marks, including the ZOOM Mark and its UNIFIED MEETING EXPERIENCE trademark, but only "[s]ubject to the terms and conditions of this Agreement," and "solely in

connection with marketing the Service as contemplated by this Agreement[.]" *Id.* at §9(a).

14. Under the SAA, any license RingCentral had to use, display or reproduce Zoom's trademarks to market to new customers expired when the term of the SAA expired. On its face, the license Zoom granted RingCentral extends only "for the term of this Agreement," and so expired when the term of the SAA expired. *Id.* at §2(a). And the SAA expressly states that "[u]pon termination of this Agreement, all licenses granted hereunder will immediately terminate." *Id.* at §16(e).

15. Since it was first inked in 2013, the SAA has been amended nine times to add additional products and services Zoom has developed over time, to extend the term of the SAA, and to modify myriad other terms of the agreement. None of these amendments extended RingCentral's license to market or resell Zoom's products or to use Zoom's trademarks beyond the term of the agreement. For example, on February 24, 2017, the parties entered into the Fourth Amendment to the SAA in which Zoom granted a license to RingCentral "during the Term and EOL Period" to install and use "Zoom APIs and SDKs in connection with Integrated Applications." *Id.* at 4th Amendment §18(b). Notably, nothing in the Fourth Amendment or in any other text of the SAA grants a similar license "during … the EOL Period" for any other Zoom software or for its trademarks.

16. From the beginning, RingCentral used its then-much larger size and market power to insist on terms in the SAA that purported to unilaterally restrict Zoom's ability to compete with RingCentral and to stifle Zoom's ability to communicate with RingCentral's customers. Specifically, RingCentral has sought to compel Zoom to adhere to Section 3(d) of the SAA, which purports to prohibit any interaction between Zoom and any RingCentral customer without RingCentral's advance written consent. The clause purports to bar any effort "to convert Customers from RingCentral to Zoom[,]" even when "Zoom has acquired contact information for such persons independently of this Agreement[.]" *Id.* at §3(d) (SAA). Moreover, RingCentral uses the SAA to contend that Zoom may not "solicit or communicate with any . . . customer of RingCentral for the purpose of attempting to cause such . . . customer to cease subscribing the RingCentral Services or migrating to a platform that competes with the RingCentral Services" for

1  twelve months after the duration of the end of life period. *Id.* at 8th Amendment, Schedule A7-1
2  §7.8.

3      17.    Under the SAA, among other products and services, RingCentral has for years now
4  been reselling Zoom's video conference service, relabeling it as "RingCentral Meetings," and
5  presenting it to the public using Zoom's trademarks as a RingCentral technology that is "powered
6  by Zoom." But, by mid-2020, the relationship had run its course and Zoom terminated the SAA.
7  Specifically, Zoom sent a letter to RingCentral on July 27, 2020 invoking the termination
8  provisions of the Eighth Amendment to the SAA and starting a six-month period after which the
9  SAA terminated on January 31, 2021. *Id.* at 8th Amendment §1. The termination of the SAA on
10 January 31, 2021 also terminated the licenses permitting RingCentral to market or resell Zoom's
11 products to new customers, or to use Zoom's trademarks for those purposes. *Id.* §16(e) (SAA).

12     18.    After termination, RingCentral invoked provisions of the SAA to begin an "end of
13 life" period. This period permits Ring Central to "defer the effective date of termination by up to
14 [REDACTED] from the end of the Term," but by its express terms this deferral is solely to
15 permit RingCentral "to transition Customers to an alternative to the Service (the 'EOL Period')."
16 *Id.* at 4th Amendment §15(b).

17     19.    Despite the termination of the SAA, RingCentral has continued to market and resell
18 Zoom's products and services to new customers after January 31, 2021, and to use Zoom's
19 trademarks in that effort. For example, RingCentral includes a "Powered by Zoom" watermark on
20 the display of its RingCentral Meetings product, and has insisted that it is free under the SAA to
21 continue to use Zoom's mark on RingCentral's website.

22     20.    On February 24, 2021, Zoom alerted RingCentral to its breach of the SAA, and
23 insisted that RingCentral's breach of the agreement and infringement of Zoom's intellectual
24 property rights stop immediately.

25     21.    On February 26, 2021, RingCentral responded that, despite the passage of the six-
26 month notice period, "the SAA has not been terminated yet, and it remains in full force. When
27 and how RingCentral choses [sic] to transition customers from Zoom's product to another product
28 is RingCentral's prerogative."

22. In parallel, RingCentral has invoked the confidentiality provisions in the agreement to stifle Zoom's ability to fairly compete with RingCentral, in violation of California law. In particular, RingCentral has contended that Zoom cannot "share, discuss or disclose the fact that Zoom elected not to renew the SAA … with anyone who was not already directly involved in this decision," and to argue that Zoom and its salespeople are barred from "stating or implying that the SAA was going to terminate in the ▬▬▬▬▬." Indeed, despite having referenced the parties' license agreement in its own press releases, RingCentral goes so far as to suggest that Zoom is somehow barred even from mentioning the existence of the agreement and its terms, referring to the existence of the agreement and its terms as "Confidential Information (per Section 11 of the SAA)." And RingCentral leans on provisions of the agreement that purport to block Zoom from "convert[ing] Customers from RingCentral to Zoom" under any circumstances in order to prevent fair competition between the two companies.

23. At the same time, RingCentral has misled its customers, investors, and the public concerning the status of the SAA and the reason it needs to transition customers to non-Zoom products. For example, RingCentral sent its partners the following "Important Announcement," on January 19, 2021:

> **Important Announcement:**
> **Customer Transition to RingCentral Video**
>
> We wanted to inform you that we will soon be transitioning customers currently on RingCentral Meetings over to RingCentral Video. Here's everything that partners need to know:
>
> **What is the transition?**
> To give our customers the best possible video meeting experience, we are beginning to transition all existing customer accounts from RingCentral Meetings to RingCentral Video.
>
> **Why are we transitioning our customers to RingCentral Video?**
> Transitioning to RingCentral Video will give your customers a number of features not available with RingCentral Meetings.
>
> **When is the transition?**
> This transition will be executed throughout 2021, starting with customers on the Essentials plan. Those customers will be transitioned to RingCentral Video on February 16, 2021. Customers on the Standard, Premium, and Ultimate plans will be transitioned to RingCentral Video later in the year.

24. As shown, RingCentral announced that it "will soon be transitioning customers currently on RingCentral Meetings [*i.e.*, its repackaging of Zoom's product] over to RingCentral Video [the name for its non-Zoom replacement product]." RingCentral then went on to suggest that the reason for this transition was to improve the quality of its video conferencing offering, not because it had no choice in light of the termination of the SAA: "What is this transition? To give our customers the best possible video meeting experience, we are beginning to transition all

existing customer accounts from RingCentral Meetings to RingCentral Video." Similarly, RingCentral answered the question "[w]hy are we transitioning our customers from RingCentral Video," not by acknowledging that its license to resell Zoom's products was about to expire, but by contending that "[t]ransitioning to RingCentral Video will give your customers a number of features not available with RingCentral Meetings."

25. Similarly, in its August 3, 2020 earnings call, RingCentral told the public that "most new customers are now getting RCV [RingCentral Video]," and that "we expect [the] overall customer base to migrate from RingCentral Meetings, which is powered by another provider, to migrate to RCV over time." That was over seven months ago, and despite recently claiming on a February 16, 2021 earnings call that "right now every customer who we acquire new defaults to RingCentral Video," RingCentral still looks to sell Zoom's product to new customers instead of providing them with its replacement product, RingCentral Video, in breach of the SAA. The only explanation for this is that, despite its public assertions to the contrary, RingCentral has recognized that its own service is inferior to Zoom's product and so it looks to hold onto Zoom's product for as long as it possibly can, despite the termination of the needed licenses.

26. In light of the position RingCentral has taken with Zoom and its comments to the public in breach of the parties' agreement, Zoom had no choice but to take technological steps to shut off RingCentral's ability to sell Zoom's products to new customers. Those steps were taken contemporaneously with filing this Complaint.

**COUNT 1 – FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN – 15 U.S.C. § 1125 (a)**

27. Zoom repeats and realleges paragraphs 1 through 26 above as if fully set forth herein.

28. The ZOOM Mark is strong and inherently distinctive for Zoom's goods and services, and designates Zoom as the source of all goods and services advertised, marketed, sold, or used in connection with the ZOOM Mark. By virtue of Zoom's extensive and continued use of the ZOOM Mark in connection with its products and services, and its extensive marketing,

advertising, promotion, and sale of its products and services under the ZOOM Mark, that mark has acquired worldwide fame and renown, such that the consuming public of this District, the State of California, and the United States associate the ZOOM Mark with a single source of products and services. Zoom is the senior user of the ZOOM Mark, as it began use of its mark in interstate commerce prior to RingCentral's first use of the ZOOM Mark under license from Zoom.

29. RingCentral is using the mark improperly and in excess of its authorization after the termination of the SAA.  This continued unauthorized use of the ZOOM Mark was and is knowing, intentional, and willful.

30. Through its unlicensed and unauthorized use of the ZOOM Mark, RingCentral intended to, and did in fact, cause and mislead consumers into believing, and misrepresented and created the false impression, that Zoom authorized, approved, and licensed RingCentral's continued use of the mark after the termination of the SAA to solicit new customers.

31. RingCentral's unlicensed and unauthorized use of the ZOOM Mark has robbed Zoom of the ability to control the quality of the services offered under the ZOOM Mark, to the detriment of Zoom's reputation and goodwill.  Such unlicensed and unauthorized use will likely cause, and has caused, confusion as to the origin and authenticity of RingCentral's services, and will likely create a misleading impression of the continuing relationship between RingCentral and Zoom.

32. As a direct and proximate result of RingCentral's wrongful conduct, Zoom has been and will continue to be damaged.

33. RingCentral's actions thus constitute trademark infringement, false designation of origin, and unfair competition.

34. RingCentral's activities have caused and will continue to cause irreparable harm to Zoom, for which it has no adequate remedy at law, because: (i) the ZOOM Mark constitutes a unique and valuable property right that has no readily determinable market value; (ii) RingCentral's infringement constitutes interference with Zoom's goodwill and customer relationships and is harming and will continue to substantially harm Zoom's reputation as a source of high-quality goods and services; and (iii) RingCentral's wrongful conduct, and the damages

resulting to Zoom, are continuing. Accordingly, Zoom is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

35. Pursuant to 15 U.S.C. §1117(a), Zoom is entitled to an order: (i) requiring RingCentral to account to Zoom for any and all profits derived from its infringing actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by Zoom that were caused by RingCentral's conduct.

36. RingCentral's conduct was and is intentional and without foundation in law, and, pursuant to 15 U.S.C. § 1117(a), Zoom is therefore entitled to an award of treble damages against RingCentral.

37. RingCentral's acts make this an exceptional case under 15 U.S.C. § 1117(a); thus Zoom is entitled to an award of attorneys' fees and costs.

## COUNT 2 – BREACH OF CONTRACT

38. Zoom repeats and realleges paragraphs 1 through 37 above as if fully set forth herein.

39. Zoom and RingCentral entered into the agreement, which is a valid contract.

40. Zoom has performed its obligations under the agreement, including by providing the Service to RingCentral as required under the terms of the agreement. *See* Exh. A §2(b) (SAA).

41. RingCentral has breached the agreement by continuing to sell Zoom products and services to new customers despite the fact that RingCentral's license to sell the Service expired at the end of the Term on January 31, 2021. *See id*. at §2(a) (SAA); *see also* 8th Am. §1.

42. RingCentral has further breached Section 9 of the SAA by exceeding the scope of its license to "use, reproduce and display the [Zoom] Marks solely in connection with the marketing the Service as contemplated by" the SAA. *See id.* §§ 9(a), (c) (SAA).

43. RingCentral has also breached Section 12(b) of the SAA by engaging in conduct that has harmed the business or reputation of Zoom (*id*. at §12(b)), including by making false public statements as to the reasons RingCentral is transitioning its Customers from RingCentral

Meetings to RingCentral Video, and suggesting that transition is due to quality or feature-based reasons as opposed to Zoom's election to terminate the SAA.

44. As a direct and foreseeable result of these breaches of the agreement, Zoom has suffered serious financial, legal, and reputational harm. For example, RingCentral's continued sale of the Zoom Service and use of Zoom's trademarks has damaged Zoom by causing confusion as to the origin and authenticity of RingCentral's services, and will likely cause others to believe that there is an ongoing relationship for new customers between RingCentral and Zoom when there is not, which has interfered with Zoom's goodwill and customer relationships and Zoom's reputation as a source of high-quality goods and services. In addition, Zoom has also been damaged by losing prospective customers to RingCentral, which is unfairly competing against Zoom by continuing to sell the Zoom service in breach of its contractual obligations. Zoom has further been damaged by RingCentral's false public statements regarding the reason it is transitioning customers to RingCentral Video, which is a breach of RingCentral's contractual obligation to not engage in conduct that harms the business or reputation of Zoom.

## COUNT 3 – DECLARATORY JUDGMENT FOR VIOLATION OF CAL. BUS. PROF. CODE § 16600

45. Zoom repeats and realleges paragraphs 1 through 44 above as if fully set forth herein.

46. California places special value on competition. Famously hostile to non-competes, the State is equally opposed to business contracts that unreasonably limit a party's ability to solicit another party's customers. This public policy finds expression in California Business & Professions Code Section 16600, which provides, "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. Prof. Code § 16600.

47. RingCentral has imposed non-compete provisions that violate this law in the most straightforward and obvious way.

48. Since 2013, RingCentral has been in a partnership with Zoom—one that allows

RingCentral to resell certain Zoom's services. Whatever rights parties have to agree to limit free-riding in a legitimate joint venture, the law offers no shelter to non-compete covenants that are unnecessary to a collaboration. As the Federal Trade Commission recently observed, "A mere general desire to be free from competition following a transaction is not a legitimate business interest."[1]

49. In its dealings with Zoom, RingCentral has gone far beyond limiting competition within the scope of their alliance. It has sought to bar any effort by Zoom to compete for RingCentral's customers, even if Zoom meets them independently and even after any collaboration between Zoom and RingCentral has expired.

50. Specifically, pursuant to Section 3(d) of the SAA, RingCentral has sought to hold Zoom to an overbroad non-compete obligation, which purports to prohibit any interaction between Zoom and any RingCentral customer without RingCentral's advance written consent. The clause's scope is so excessive that it bars any effort "to convert Customers from RingCentral to Zoom[,]" even when "Zoom has acquired contact information for such persons independently of this Agreement[.]" Exh. A § 3(d).

51. Since then, RingCentral has endeavored to restrict any competition between the parties even further.

52. In a 2019 amendment to the SAA, RingCentral purported to deny Zoom any right to "solicit or communicate with any . . . customer of RingCentral for the purpose of attempting to cause such . . . customer to cease subscribing the RingCentral Services or migrating to a platform that competes with the RingCentral Services." *Id.* at 8th Amendment, Schedule A7-1 §7.8 (together, with Section 3(d) of its 2013 Strategic Alliance Agreement, the "Non-Compete Clauses"). Notably, this non-compete obligation seeks to apply not merely for the duration of the term and end of life period, but "for twelve (12) months thereafter[.]" *Id*.

53. Both as written and enforced, each of those non-compete covenants unreasonably denies RingCentral customers the benefits of competition. Were it not for those clauses and

---

[1] *In re DTE Energy/NEXUS*, Analysis of Agreement Containing Consent Orders to Aid Public Comment, Sept. 13, 2019, https://www.ftc.gov/system/files/documents/cases/07_dte-enbridge_aapc_redacted.pdf/.

RingCentral's ongoing insistence that Zoom adhere to them, Zoom would actively compete for many of those customers, bringing them additional price and quality competition. These overbroad non-compete provisions are not necessary to achieving the benefits of the parties' partnership.

54. As RingCentral would have it, Zoom today would not even be able to entertain a call from a RingCentral customer that independently reaches out to express interest in switching providers without facing the threat of a possible claim by RingCentral that Zoom has breached the non-compete covenants referenced above. Indeed, even two and a half years after terminating the SAA, Zoom could not then speak with—much less solicit—any existing RingCentral customer with the "purpose of attempting to cause" them to "cease subscribing to the RingCentral Services or migrating to a platform that competes with the RingCentral Service" without the threat of a suit by RingCentral. *Id*.

55. The Non-Compete Clauses are void under California Business & Professions Code Section 16600.

56. RingCentral insists that the Non-Compete Clauses referenced above remain binding on Zoom, such that any effort by Zoom to solicit (or even passively to offer to service) RingCentral customers would result in a breach. An actual, present, and justiciable controversy therefore presently exists between Zoom and RingCentral regarding the enforceability of the Non-Compete Clauses.

57. Further, RingCentral's continued insistence on enforcing the confidentiality provisions in the agreement to stifle Zoom's ability to compete with RingCentral violates Section 16600. Specifically, RingCentral has leaned on the confidentiality provisions in the agreement to suggest that Zoom is barred from "stating or implying that the SAA was going to terminate in the next two years" including because the "Agreement and its terms, including the term of the SAA and the EOL Period, are Confidential Information (per Section 11 of the SAA)." According to RingCentral, Zoom is not permitted to "share, discuss or disclose the fact that Zoom elected not to renew the SAA and RingCentral's election to defer the effective date of termination through the EOL Period with anyone who was not already directly involved in this decision (and, in all circumstances, that this information will not be disseminated to any salespeople)." This leaves

Zoom with no ability to challenge RingCentral's false statements to customers that it is discontinuing Zoom's services due to development of a superior product.

58. Zoom seeks a judicial determination and declaration that the Non-Compete Clauses and confidentiality provisions, as interpreted by RingCentral, are void and thus unenforceable under California Business & Professions Code Section 16600.

## PRAYER FOR RELIEF

**WHEREFORE**, Zoom respectfully requests that the Court enter judgment in favor of Zoom and against RingCentral, and grant the following relief:

A. An injunction ordering RingCentral, and its officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them (collectively, the "Enjoined Parties"), who receive actual notice of the injunction order by personal or other service, to:

    a. cease all use and never use the ZOOM Mark, in, on or with any products or services, in connection with the advertising, marketing or other promotion, offering for sale, or sale, of any products or services, including via social media platforms in relation to any entities or individuals who were not RingCentral Customers using the Service prior to February 1, 2021;

    b. never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that any sale of new products or services by the Enjoined Parties, is permitted or sponsored by Zoom;

    c. never unfairly compete with Zoom in any manner whatsoever, or engage in any unfair, fraudulent, or deceptive business practices that relate in any way to the production, distribution, marketing, and/or sale of products and services bearing the ZOOM Mark.

B. An order directing the Enjoined Parties to file with the Court and serve upon Zoom's counsel, within thirty (30) days after service of the order of injunction, a

|   |   |   |
|---|---|---|
| 1 | | report in writing under oath setting forth in detail the manner and form in which the |
| 2 | | Enjoined Parties have complied with the injunction. |
| 3 | C. | An order, pursuant to 15 U.S.C. § 1118, directing the Enjoined Parties to deliver up |
| 4 | | and destroy any infringing products, labels, signs, prints, packages, wrappers, |
| 5 | | receptacles, advertisements, plates, molds, matrices, and/or other means of making |
| 6 | | the same. |
| 7 | D. | An order finding that, by the acts complained of above, RingCentral has created a |
| 8 | | false designation of origin and false representation of association in violation of |
| 9 | | 15 U.S.C. § 1125(a). |
| 10 | E. | Pursuant to 15 U.S.C. § 1117(a), an order awarding Zoom damages as follows: |
| 11 | | a. Zoom's actual damages; |
| 12 | | b. All of RingCentral's profits or gains of any kind resulting from its acts of |
| 13 | | trademark infringement false designation of origin and unfair competition, |
| 14 | | including a trebling of those damages and profits. |
| 15 | F. | An order pursuant to 15 U.S.C. § 1117(a) finding that this is an exceptional case |
| 16 | | and awarding Zoom its reasonable attorneys' fees. |
| 17 | G. | An order pursuant to 15 U.S.C. § 1117(a) awarding Zoom all of its costs, |
| 18 | | disbursements, and other expenses incurred due to RingCentral's unlawful conduct. |
| 19 | H. | An order and declaration that RingCentral has breached the Strategic Alliance |
| 20 | | Agreement. RingCentral has breached the SAA by continuing to sell Zoom |
| 21 | | products and services to new customers despite the fact that RingCentral's license |
| 22 | | to sell the Service expired at the end of the Term on January 31, 2021. *See* Exh. 1 |
| 23 | | §2(a) (SAA); *see also* 8th Am. §1. |
| 24 | I. | An order that RingCentral has further breached Section 9 of the SAA by exceeding |
| 25 | | the scope of its license to "use, reproduce and display the [Zoom] Marks solely in |
| 26 | | connection with the marketing the Service as contemplated by" the SAA. *See id.* |
| 27 | | at §§ 9(a), (c) (SAA). |
| 28 | | |

1  J.  An order that RingCentral has breached Section 12(b) of the SAA by engaging in conduct that has harmed the business or reputation of Zoom" (*id*. at § 12(b)), including by making false public statements as to the reason RingCentral is transitioning its Customers from RingCentral Meetings to RingCentral Video, and suggesting that transition is due to quality or feature-based reasons as opposed to Zoom's election to terminate the SAA.

K.  An order and declaration pursuant to California Business & Professions Code Section 16600 that the anti-competitive terms in the agreement, including the Non-Compete Clauses (the Eighth Amendment to Zoom-RingCentral Strategic Alliance Agreement, Schedule A7-1 § 7.8, Sections 3(d), 18(f), and certain portions of Section 11 of its 2013 Strategic Alliance Agreement) are void and thus, unenforceable.

L.  Award Zoom monetary judgment in an amount to be determined at the conclusion of trial, plus pre-judgment and post-judgment interest at the maximum rate allowed by law.

M.  Zoom's reasonable attorneys', accountants' and experts' fees, and costs, as required under Section 18(d) of the SAA.

N.  An order awarding Zoom pre-judgment interest.

O.  An order awarding Zoom such other relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Zoom hereby demands a trial by jury on all issues so triable.

| | |
|---|---|
| Dated: March 11, 2021 | LATHAM & WATKINS LLP |
| | By */s/ Douglas E. Lumish* |
| | Douglas E. Lumish |
| | Matthew Rawlinson |
| | Jennifer Barry |
| | Arman Zahoory |
| | of Latham & Watkins LLP |
| | *Attorneys for Plaintiff* |
| | *Zoom Video Communications, Inc.* |