1   CLEMENT SETH ROBERTS (SBN 209203)
    croberts@orrick.com
2   KAREN G. JOHNSON-MCKEWAN (SBN 121570)
    kjohnson-mckewan@orrick.com
3   NATHAN SHAFFER (SBN 282015)
    nshaffer@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
5   405 Howard Street
    San Francisco, CA  94105-2669
6   Telephone:     +1 415 773 5700
    Facsimile:     +1 415 773 5759
7
    ROBERT L. URIARTE (SBN 258274)
8   ruriarte@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
9   1000 Marsh Road
    Menlo Park, CA 94021
10  Telephone:  +1 650 614 7400
    Facsimile:  +1 650 614 7401
11
    *Attorneys for Defendant*
12  *RingCentral, Inc.*

13                  UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15

16  ZOOM VIDEO COMMUNICATIONS, INC.,        Case No. 4:21-cv-01727-DMR

17                  Plaintiff,              **DECLARATION OF KIRA MAKAGON
                                            RE: RINGCENTRAL'S MOTION FOR**
18          v.                              ***EX PARTE* TRO**

19  RINGCENTRAL, INC.,                      **REDACTED VERSION OF
                                            DOCUMENT SOUGHT TO BE**
20                  Defendant.              **SEALED**

21  ─────────────────────────────────
    RINGCENTRAL, INC.,                       Proposed Date: March 17, 2021
22                                           Proposed Time:     10:00 a.m.
                    Counterclaimant,.
23
            v.
24
    ZOOM VIDEO COMMUNICATIONS, INC.
25
                    Counterdefendant.
26

27

28

                                            MAKAGON DECL. RE: RINGCENTRAL'S
                                                         MOTION FOR TRO
                                                        4:21-cv-01727-DMR

I, Kira Makagon, declare as follows:

1.      I am an Executive Vice President and the Chief Innovation Officer at RingCentral, Inc.  I state the following facts based on my personal knowledge, except as to facts stated on information and belief, which I believe to be true.  I could and would testify to the facts in this declaration if called to do so.

2.      I joined RingCentral in the summer of 2012 as the Executive Vice President of Innovation.  Over the course of my career at RingCentral, I have led RingCentral's global product, user experience, engineering, and operations functions.  In my current role as RingCentral's Chief Innovation Officer, I am responsible for helping to define RingCentral's global product strategy and leading RingCentral's Corporate Ventures division.  I hold a bachelor's degree in computer science from the University of California, Berkeley, and an MBA from the Haas School of Business at UC Berkeley.

3.      Founded in 1999, RingCentral is headquartered in Belmont, California, and employs more than 3,000 employees.  RingCentral is a leading provider of enterprise cloud communications, collaboration, and contact center solutions.  RingCentral provides unified voice, video meetings, team messaging, digital customer engagement, and integrated contact center solutions for enterprises of all sizes.

4.      On October 8, 2013, RingCentral entered into a Strategic Alliance Agreement ("SAA") with Zoom Video Communications, Inc. ("Zoom").  I have been a primary point of contact at RingCentral for the Zoom-RingCentral relationship under the SAA since its inception, and I participated in the initial evaluation of Zoom's technology and negotiation of the parties' SAA.  I have worked with Zoom and RingCentral personnel to ensure that products are integrated and function properly, and I have helped manage the parties' relationship by resolving periodic technical issues and disagreements over the parties' respective contractual duties.

5.      At the time Zoom and RingCentral negotiated the SAA, RingCentral was a leader

1  in unified Communications as a Service (uCaaS),[1] but it did not yet have its own video

2  communications solution.  Zoom, on the other hand, had a well-developed video conferencing

3  solution but no real business telephony capabilities.  As such, the SAA provided opportunities to

4  both parties to achieve synergies and reach customers who desired an integrated phone and video

5  conference solution that neither party could provide on their own.  RingCentral has helped drive

6  millions of dollars in revenue to Zoom under the SAA's revenue sharing provisions.

7  RingCentral continues to drive revenue to Zoom as it signs up new customers.  RingCentral has

8  been singing up these new customers in reliance on the SAA, which requires Zoom to support all

9  such new customer accounts through the end of their contracts.  Although many new customers

10  are choosing RingCentral's new, proprietary video communications solution ("RCV") over

11  Zoom, there are still a minority of customers who need features not yet available in RCV, such as

12  Webinars and breakout rooms.

13        6.     RingCentral devotes substantial resources to integrating Zoom's technology with

14  RingCentral's.  RingCentral has spent millions of dollars on integration every year of the SAA's

15  existence, including in 2020.  RingCentral has also devoted substantial resources to marketing

16  Zoom's technology alongside RingCentral's.

17        7.     As Zoom's technology has continued to develop over the past several years, the

18  parties have entered into various amendments to the SAA in order to expand the scope of Zoom

19  services ("Service") RingCentral offers to customers.  For example, as Zoom developed

20  technology to facilitate large meeting capacity and Webinars, the parties entered into amendments

21  to facilitate the parties' mutual desire for RingCentral to be able to offer these new aspects of the

22  Service to RingCentral customers.

23        8.     When a customer purchases a plan from RingCentral that includes the Service, the

24  customer enters into a contract with RingCentral.  Some customers, such as individual users and

25  some small businesses who do not require a significant number of users, enter into month-to-

26

27  [1] uCaaS refers to a cloud-delivered unified communications model that supports six
communications functions: (1) Enterprise telephony; (2) Meetings; (3) Unified messaging; (4)

28  Instant messaging; (5) Mobility; and (6) Communications-enabled business processes.

MAKAGON DECL. RE: RINGCENTRAL'S
MOTION FOR TRO
4:21-cv-01727-DMR

month contracts ("E-Commerce Contracts").  Customers who desire up to 250 users and beneficial contract terms and pricing enter into a three-year Master Services Agreement ("Commercial MSA") that is renewable at the expiration of the term.  The largest customers who require more than 250 users enter into RingCentral's Enterprise Master Services Agreement ("Enterprise MSA"), which also entails a three-year initial term with renewal options thereafter.  Zoom earns revenue from these customer agreements pursuant to the SAA.

9.      In 2019, tensions began to arise between the parties as Zoom started trying to compete with RingCentral in the uCaaS telephony space.  Zoom employed a strategy of sowing fear, uncertainty, and doubt about the nature of the Zoom-RingCentral relationship, including by leaking confidential and often misleading information about the SAA.  At some point in 2019, Zoom began telling customers that the parties' strategic relationship had ended.  In addition, Zoom began slowing down delivery of work product required under the SAA, and delaying providing feature parity to RingCentral as required by the SAA.  Zoom then used feature gaps created by its delays to try and win business away from RingCentral.  Later, in or about early 2020, Zoom removed required RingCentral branding from the Zoom SDK embedded in RingCentral applications.  This conduct led to RingCentral providing Zoom with a formal notice of breach of the SAA.  Eventually, Zoom restored RingCentral's branding into RingCentral's version of the Zoom SDK, and for a time, Zoom represented to RingCentral that it would honor its contractual commitments in good faith.  But Zoom's actions were not always consistent with its statements.

10.      Tensions continued to escalate after RingCentral's announced RCV in April 2020.  When multiple Zoom security and privacy flaws came to light around that same time, Zoom was slow to provide RingCentral with information related to those issues and was even slower to provide RingCentral with code updates to remedy certain Zoom security flaws.

11.      On July 27, 2020, Zoom notified RingCentral of its election to decline the SAA's automatic renewal period after January 31, 2021, the expiration date of the term then in effect.  On July 29, 2020, RingCentral provided notice to Zoom of RingCentral's election to exercise its rights under the SAA's End of Life ("EOL") provision, deferring termination of the SAA to ▮

12.     RingCentral began offering RCV to select customers in April 2020, and in early 2021, RingCentral began to transition some customers' video communications service from Zoom to RCV.  Because RCV currently lacks certain features of the Service, not all customers are suitable for transition to RCV at this time.  Some Commercial MSA and Enterprise MSA customers, for example, require features like Webinars and breakout rooms that are not yet available in RCV, although these features are currently under development.  Some prospective Commercial MSA and Enterprise MSA customers that RingCentral is actively pursuing desire these features as well.  RingCentral has been exercising its rights under the SAA's EOL provision to sell to these customers feature bundles including the Service for now, with the expectation that those customers can elect to transfer to RCV later once development of the required feature sets is complete.

13.     In planning its RCV development timeline and sales strategy, RingCentral relied on the SAA's EOL Period and other terms that ensure RingCentral's ability to continue to sell and provide to customer's Zoom Services during the EOL Period.  RingCentral knows that building carrier-grade telecommunications software and rolling out to customers takes time, so RingCentral bargained for a substantial EOL Period in the SAA to give RingCentral's engineers the runway needed to transition away from one of its most important technology partners.  RingCentral engineers are working diligently to complete RCV's feature set, and RingCentral expects RCV to be substantially complete sometime in 2021.

14.     In or about mid-February 2021, RingCentral learned that a customer relayed to a RingCentral sales specialist statements by Zoom sales personnel indicating that Zoom would soon cut that customer off from the Service.  The customer indicated that, according to Zoom, the customer would be cut off from Zoom's Service in thirty days.  This statement from Zoom prompted a panicked call from the customer to their RingCentral Customer Service Manager, during which the customer expressed its fears about disruption of video conferencing services that are critical to the customer's business.  Further investigation revealed that other RingCentral sales specialists were hearing similar reports from other customers.  At least one other customer

MAKAGON DECL. RE: RINGCENTRAL'S
MOTION FOR TRO
4:21-cv-01727-DMR

relayed to RingCentral that Zoom sales personnel told them that they only had approximately six months before their Zoom Service would be discontinued.  In every instance, Zoom's statements were contrary to RingCentral's understanding of the SAA, which provides for the Service through expiration of the customers' contracts with RingCentral.  RingCentral's customers have been upset by Zoom's statements and threatened actions, and RingCentral's relationships with these customers have been harmed.

19.     It is my belief that Zoom's conduct threatens to cause RingCentral loss of goodwill and business.  Customer deals and contract extensions that RingCentral is currently working to close have been in process for months, and RingCentral will face great reputational harm and loss of trust if it is unable to make good on the commitments contemplated for such deals. RingCentral relied on the SAA and EOL Period in making these commitments.

20.     In addition, it is my belief that Zoom's conduct will prevent RingCentral from winning business from new customers who require features that are presently unavailable in RCV, such as Webinar capacity, which is uniquely important to some prospective Commercial MSA and Enterprise MSA customers given working conditions during the COVID-19 pandemic. I believe that RingCentral will lose market share if Zoom is permitted to renege on its commitments under the SAA.  I am informed and believe that Zoom understands these facts because of the nature of the parties' competitive efforts over the last few years.

21.     I understand that a lawsuit filed by Zoom against RingCentral suggests that RingCentral retains the right to sell the Zoom APIs and SDKs during the EOL Period, but not other aspects of the Service.  Zoom's position makes no sense to me.  The Zoom APIs and SDKs are software that RingCentral integrates into its own applications code to enable the Service, and they have no utility to RingCentral outside of that context.  RingCentral has never sold the Zoom APIs or SDKs as stand-alone software.

22.     A true and correct copy of the SAA is attached to the Index of Evidence as **Exhibit 1**.

1         I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct to the best of my knowledge.  Executed this 15th day of March, 2021

3    at Hillsborough, California.

4

5                                                             *Kira Makagon*

6                                         _____

                                                             Kira Makagon

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MAKAGON DECL. RE: RINGCENTRAL'S
MOTION FOR TRO
4:21-cv-01727-DMR