UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ZOOM VIDEO COMMUNICATIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>RINGCENTRAL, INC.,<br><br>Defendant. | Case No. 5:21-cv-01727-EJD<br><br>**ORDER GRANTING DEFENDANT'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR AN ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 14 |

Plaintiff Zoom Video Communications, Inc. ("Zoom") brings this action asserting breach of contract, violation of the federal Lanham Act, and other claims against Defendant RingCentral, Inc. ("RingCentral") related to the parties' Strategic Alliance Agreement ("SAA" or "Agreement")—specifically, RingCentral's continued marketing and reselling of Zoom's products to new customers after Zoom's decision not to renew the SAA. RingCentral has raised counterclaims based on Zoom taking steps to disrupt RingCentral's ability to sell Zoom's products to new customers. RingCentral asserts breach of contract, violation of California's Unfair Competition Law, and declaratory relief counterclaims against Zoom.

Now before the Court is an Ex Parte Motion for Temporary Restraining Order and for an Order to Show Cause regarding preliminary injunction filed by RingCentral on March 16, 2021. Motion for Temporary Order ("TRO Mot."), Dkt. No. 14. On March 16, 2021, the case was reassigned to the undersigned. Dkt. No. 19. For the reasons discussed below, the Court GRANTS RingCentral's request for a temporary restraining order and GRANTS RingCentral's request for

Case No.: 5:21-cv-01727-EJD
ORDER GRANTING DEFENDANT'S EX PARTE MOTION FOR TEMPORARY
RESTRAINING ORDER
1

an Order to Show Cause.

## I. BACKGROUND

Due to the expedited nature of RingCentral's motion, the Court only summarizes the facts relevant to the disposition of the motion.

RingCentral is an American based provider of enterprise cloud communications, collaborations, and contract center solutions. Counterclaims ("Countercl."), Dkt. No. 11 ¶ 6. RingCentral provides unified voice, video meetings, team messaging, digital customer engagement, and integrated contact center solutions for enterprises of all sizes. *Id.* Zoom is an American corporation known for its video conferencing platform used by families, schools, medical care providers, businesses, governmental entities, and organizations across the world to enable people to connect face-to-face over the internet. Complaint ("Compl."), Dkt. No.1 ¶ 7. In addition to its video conferencing applications, Zoom provides solutions for chat, conference room video, enterprise cloud phone systems, and webinars. *Id*.

In October 2013, RingCentral entered into the SAA with Zoom under which RingCentral was granted a license to "market, promote, and resell, as a bundle" Zoom's video meetings technology with RingCentral's cloud communications services. Countercl. ¶ 7; TRO Mot., Ex. 1 ("SAA") at 1-2 (§ 2). In addition, the SAA grants RingCentral a "non-exclusive, non-transferable, sublicensable . . . royalty-free license to use, reproduce and display" Zoom's trademarks. Countercl. ¶ 7; SAA at 8 (§ 9). Under the SAA, the licenses Zoom grants RingCentral extend for the term of the Agreement. SAA at 2 (§ 2(a)). The SAA also states that upon termination of the agreement between Zoom and RingCentral, all granted licenses will immediately terminate. SAA at 13 (§16(e)).

Over the following six years, Zoom and RingCentral extended the term and expanded the scope of the SAA on multiple occasions. Countercl. ¶ 8. As relevant here, the SAA provides that Zoom is responsible for providing, hosting, and managing the "Service," to reflect Zoom's capabilities and features such as Large Meeting Capacity (up to 500 persons per meeting) and

Case No.: 5:21-cv-01727-EJD
ORDER GRANTING DEFENDANT'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER
2

Webinars. *Id.* ¶ 9. The SAA also requires Zoom to develop software to enable the Service for RingCentral. *Id.* Zoom developed this software and provided RingCentral with periodic updates to fix bugs, patch security vulnerabilities, and add new functionality to the Service. *Id.* ¶ 10. RingCentral also devoted resources to integrating Zoom's software and technology into RingCentral's offerings and has delivered the Service to many thousands of RingCentral "customers," defined in the SAA as "third part[ies] that purchase[] the Service from RingCentral or its Affiliates." *Id.* ¶ 10; SAA at 1 (§ 1(c)).

The initial terms of the SAA ran from October 2013 to October 2016, with successive automatic renewal terms. Countercl. ¶ 11. Each party maintained the ability to avoid automatic renewal by providing notice to the other six months before termination of the then current term. *Id.*; SAA at 12-13 (§ 16). The parties mutually agreed to extend the term in writing on multiple occasions, most recently through the Eighth Amendment to the SAA, which extended the term to January 31, 2021, subject to another automatic-renewal provision and an optional "End of Life" provision deferring termination of the SAA for ▓▓▓▓▓▓▓▓▓▓ in the event of non-renewal. Countercl. ¶ 12; SAA at 68, 83. Pursuant to the SAA's End of Life provision:

> RingCentral may, in its sole discretion, defer the effective date of termination by up to ▓▓▓▓▓▓ from the end of the Term in order to transition customers to an alternative to the Service (the "EOL Period"). Zoom shall continue to provide the Service in accordance with this Agreement during this time and shall be entitled to any amounts due for use of the Service. During the EOL Period, Zoom shall continue to comply with the [Service Level Agreements]. This Agreement shall be deemed to continue to remain in effect through the EOL Period.

SAA at 68.

Section 16(e) of the SAA also identified Zoom's obligations that would survive termination of the Agreement and sets forth the time licenses granted under the SAA will terminate:

> The termination or expiration of this Agreement will not operate to discharge any liability that had been incurred by either Party prior to any such termination or expiration. The termination of this Agreement will not terminate or affect any Customer Agreements entered into prior to termination of this Agreement for the term of each such Customer Agreement in effect at the time of Termination. Upon termination of this Agreement, all licenses granted hereunder

Case No.: 5:21-cv-01727-EJD
ORDER GRANTING DEFENDANT'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

3

> will immediately terminate. The following provisions shall survive expiration or termination of this Agreement: Sections 1, 3(c), 3(d), 3(j), 6 (for fees incurred prior to termination), 11, 12(a), 13, 15, 16(c), and 18 of this Agreement.

SAA at 13.

On July 27, 2020, Zoom notified RingCentral that it was electing to decline the SAA's automatic renewal period after expiration of the term on January 31, 2021. Countercl. ¶ 15. RingCentral responded to Zoom's notice on July 29, 2020 informing Zoom that it was exercising its End of Life period rights and therefore deferring termination of the SAA to ▇▇▇▇▇▇▇. *Id.* ¶16. RingCentral alleges that beginning in February 2021 however, multiple Zoom personnel began telling RingCentral customers that Zoom would soon no longer provide them service. *Id.* ¶ 24. RingCentral adds that, in some instances, Zoom sales personnel suggested to customers that they had approximately six months to switch from RingCentral to Zoom in order to avoid losing access to the Service. *Id*. In other cases, Zoom sales personnel suggested that customers would lose access to the Service through RingCentral in just thirty days. *Id*.

After contacting Zoom about the conduct of its sales organization, Zoom informed RingCentral by letter on February 24, 2021, that its efforts to sell Zoom's Service during the End of Life period breached the SAA and violated "intellectual property" rights. *Id.* ¶ 27. RingCentral responded to Zoom's letter on February 26, 2021. *Id.* ¶ 28. RingCentral contested Zoom's position and argued that it was irreconcilable with the provisions of the SAA. *Id*.

While RingCentral continued to engage Zoom in discussions about the dispute, Zoom filed its complaint on March 12, 2021. *Id*. ¶ 29. In its complaint, Zoom revealed that it has taken "technological steps to shut off RingCentral's ability to sell Zoom's products to new customers." Compl. ¶ 26. Zoom took those steps contemporaneously with filing its complaint. *Id.*

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 65(b), a court may grant a temporary restraining order without notice to the adverse party if:

(1) specific facts in an affidavit or a verified complaint clearly show that immediate and

Case No.: 5:21-cv-01727-EJD
ORDER GRANTING DEFENDANT'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

4

1
2
3
4

  irreparable injury, loss, or damage will result to the movant before the adversary party can be heard in opposition; and

  (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

5 Fed. R. Civ. P. 65(b).

  The substantive standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the [moving party] is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

  A party seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Alternatively, an injunction can issue where "the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in [the moving party's] favor," provided that the moving party can also demonstrate the other Winter factors. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation and internal quotation marks omitted). Showing "serious questions going to the merits" requires more than establishing that "success is more likely than not;" rather, it requires the moving party to demonstrate a "substantial case for relief on the merits." *Leiva–Perez v. Holder*, 640 F.3d 962, 967 (9th Cir. 2011). Under either standard, the moving party bears the burden of making a clear showing on these elements and on entitlement to this extraordinary remedy. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

### III. DISCUSSION

  RingCentral seeks a temporary restraining order to enjoin Zoom from "blocking activation

Case No.: 5:21-cv-01727-EJD
ORDER GRANTING DEFENDANT'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

5

of RingCentral customers, including (i) technological steps blocking the provisioning of API calls from RingCentral or its customers to Zoom; (ii) technological steps blocking API calls to Zoom's servers for provisioning test accounts from RingCentral or from its customers; and (iii) any other technological steps designed to block, impair, or impede RingCentral or its customers from accessing the service under the SAA." *See* TRO Mot. Notice at 1.  RingCentral argues that by prematurely cutting off RingCentral customers from the Service, Zoom will cause irreparable harm to RingCentral and its customer relationships. *Id*.  Absent the relief sought, "RingCentral will be unable to make good on commitments it has made to customers and resellers—commitments that Zoom is contractually obligated to help RingCentral fulfill." *Id*.  In support, RingCentral submits its Memorandum of Points and Authorities (TRO Mot.), the Declaration of Kira Makagon (Dkt. No. 14-2), the Declaration of John Marlow (Dkt. No. 14-3), the Declaration of Clement Roberts (Dkt. No. 14-4), and a Certificate of Service regarding the "Administrative Motion to File Under Seal Portions to RingCentral's Counterclaims and Ex Parte Motion for TRO" (Dkt. No.15).  As discussed below, the Court GRANTS RingCentral's Ex Parte Motion for Temporary Restraining Order.

### A. Likelihood of Success on the Merits

RingCentral has demonstrated a likelihood of success on the merits of its counterclaims for breach of contract and declaratory relief.  As RingCentral highlights in its motion, the crux of the parties' dispute is whether the SAA has been terminated as Zoom alleges, or whether the SAA continues to remain in effect through the End of Life period described in § 16(d).  *See* SAA at 68. The provisions of the SAA suggest the latter.  After Zoom informed RingCentral that it would be declining the SAA's automatic renewal period after January 31, 2021, RingCentral notified Zoom of its own decision to exercise its rights afforded to it pursuant to the SAA's End of Life provision and deferred termination of the SAA to ▬▬▬▬ Declaration of Kira Makagon ¶ 11. Further, there is no provision in the SAA suggesting that the parties intended to limit RingCentral's rights or Zoom's obligations under the SAA during the End of Life period.  Rather,

the parties dictated that the SAA "shall be deemed to continue to remain in effect through the EOL Period."  SAA at 68 (§ 16(d)).  Moreover, § 16(e) of the SAA provides that the termination of the SAA will not terminate or affect any Customer Agreements "entered into prior to termination of this Agreement for the term of each Customer Agreement in effect at the time of Termination."  SAA at 13 (§ 16(e)).  Because RingCentral exercised its rights under the End of Life provision, RingCentral deferred the SAA's termination date by ▮▮▮▮▮.  Thus pursuant to § 16(d), RingCentral retained its rights including its right to sell the Service to existing, prospective, and new customers until ▮▮▮▮▮.  SAA at 2 (§ 2(a)).

Furthermore, Zoom's "technological steps" to disrupt RingCentral's efforts to activate new customers appear to breach these same SAA provisions.  Accordingly, RingCentral has shown a strong likelihood of success on the merits of its breach of contract counterclaim as well as its counterclaims for declaratory relief.  *See Powell v. McCormack*, 395 U.S. 486, 499 (1969) ("A declaratory judgment can . . . be used as a predicate to further relief, including an injunction.") (citing 28 U.S.C. § 2202)); *Doe v. Gallinot*, 657 F.2d 1017, 1025 (9th Cir. 1981) (affirming district court's issuance of an injunction to effectuate declaratory judgment under the Act).

### B.    Irreparable Harm

Looking now to the possibility of irreparable injury, the Court agrees with RingCentral that it will be injured absent a temporary restraining order.  RingCentral alleges that Zoom's conduct is having a negative impact on RingCentral's reputation and standing with customers and prospective customers.  TRO Mot. at 14.  According to RingCentral, it will stand to lose business if Zoom is permitted to block new RingCentral customer activations that it acquires during the End of Life period.  *Id.*  The Ninth Circuit has recognized, separately from cases dealing with the potential negative impact on a business, that "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."  *Stuhlbarg Int'l Sales Co.*, 240 F.3d at 841.  Some district court decisions have nevertheless found such harms insufficient where a value could be placed on the lost relationships.  *See Int'l Medcom,*

Case No.:  5:21-cv-01727-EJD
ORDER GRANTING DEFENDANT'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

*Inc. v. S.E. Int'l, Inc.*, No. 15-cv-03839-HSG, 2015 WL 7753267, at *5 (N.D. Cal. Dec. 2, 2015) (citing *Telephia Inc. v. Cuppy*, No. C 04-03508 SI, 2005 WL 588441, at *4 (N.D. Cal. Mar. 11, 2005)).

Under the circumstances of this case, where new customers would not be provided services which RingCentral markets and is contractually allowed to include in customers packages, the Court concludes that the potential harms from "loss of prospective customers or goodwill," *Stuhlbarg Int'l Sales Co.*, 240 F.3d at 841, are sufficiently "difficult to valuate," *Rent-A-Ctr.*, *Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991), to establish irreparable harm.

### C.  Remaining *Winter* Factors

The Court finds that the balance of equities tips in RingCentral's favor, and courts have found that the public "has a strong interest in holding private parties to their agreements."  *See Epic Games v. Apple Inc.*, No. 4:20-CV-05640-YGR, 2020 WL 5073937, at *4 (N.D. Cal. Aug. 24, 2020) (citing *S. Glazer's Distrib. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 853 (6th Cir. 2017); *see also Alton & S. Ry. v. Bhd. of Maint. of Way Employes.*, 883 F. Supp. 755, 765 (D.D.C 1995) ("any attempt by the BMWE to alter the status quo by exercising self help would be quite premature . . . and would be contrary to the public interest.").  Thus, the remaining *Winter* factors are in RingCentral's favor.

Since RingCentral has made a sufficient showing, the Court finds RingCentral is entitled to a temporary restraining order.  Accordingly, the Court issues the following order.

## IV.  ORDER

Based on the foregoing, RingCentral's Ex Parte Motion for a Temporary Restraining Order is **GRANTED** such that, pending the hearing on the Order to Show Cause:

1. Zoom, its representatives, officers, agents, directors, affiliates, servants, employees, and all persons acting in concert or participation with it, including employees and independent contractors, are enjoined from blocking activation of RingCentral

Case No.: 5:21-cv-01727-EJD
ORDER GRANTING DEFENDANT'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

8

customers, including (i) technological steps blocking the provisioning of API calls from RingCentral or customers to Zoom; (ii) technological steps blocking API calls to Zoom's servers for provisioning test accounts from RingCentral or from customers; and (iii) any other technological steps designed to block, impair, or impede RingCentral or any customer from accessing the service under the SAA.

2. Due to the nature of the issues presented by this action, the Court dispenses with the bond requirement contained in Federal Rule of Civil Procedure 65(c) but may revisit this issue should circumstances so require.

3. This Temporary Restraining Order is effective upon the date and time of filing and shall remain in effect until the date of hearing on preliminary injunction specified below

Zoom is further **ORDERED** to show cause why it should not be preliminarily enjoined as set out in RingCentral's motion. Zoom shall file a written response, if any, to this Order to Show Cause and RingCentral's motion on or before **March 23, 2021.**

RingCentral's motion for preliminary injunction will be heard on **March 25, 2021, at 9:00 a.m.**

**IT IS SO ORDERED.**

Dated: March 17, 2021

_____
EDWARD J. DAVILA
United States District Judge

Case No.: 5:21-cv-01727-EJD
ORDER GRANTING DEFENDANT'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

9