UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ZOOM VIDEO COMMUNICATIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> RINGCENTRAL, INC., <br><br> Defendant. | Case No. 5:21-cv-01727-EJD <br><br> **ORDER DENYING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION; DISSOLVING TEMPORARY RESTRAINING ORDER; AND REFERRING ACTION FOR A MANDATORY SETTLEMENT CONFERENCE** <br><br> Re: Dkt. No. 14 |

On March 16, 2021, Defendant RingCentral, Inc. ("RingCentral") filed an ex parte motion for temporary restraining order ("TRO") and order to show cause regarding a preliminary injunction, seeking to enjoin Plaintiff Zoom Video Communications, Inc. ("Zoom") from taking technological steps to affect RingCentral's ability to sell Zoom's products to new customers. The Court issued an Order granting the TRO and enjoining Zoom from blocking activation of RingCentral's new customers pending a hearing on the motion for preliminary injunction, which was scheduled for March 25, 2021. The Court has considered the briefing, the oral argument presented at the hearing, and the applicable law. For the reasons discussed below, the preliminary injunction is DENIED and the TRO issued on March 17, 2021 is DISSOLVED.

## I. BACKGROUND

### A. Factual Background

Plaintiff Zoom initially brought this action asserting breach of contract, federal trademark, and other state law claims against RingCentral related to the parties' Strategic Alliance Agreement ("SAA" or "Agreement")—specifically, RingCentral's continued marketing and reselling of

Case No.: 5:21-cv-01727-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION
1

Zoom's products to new customers after Zoom's decision not to renew the SAA. Zoom is an American corporation known for its video conferencing platform used by families, schools, medical care providers, businesses, governmental entities, and organizations across the world to enable people to connect face-to-face over the internet. Complaint ("Compl."), Dkt. No. 1 ¶ 7. In addition to its video conferencing applications, Zoom provides solutions for chat, conference room video, enterprise cloud phone systems, and webinars. *Id*. Defendant RingCentral is an American based provider of enterprise cloud communications, collaborations, and contract center solutions. Counterclaims ("Countercl."), Dkt. No. 11 ¶ 6. RingCentral provides unified voice, video meetings, team messaging, digital customer engagement, and integrated contact center solutions for enterprises of all sizes. *Id*.

In October 2013, RingCentral entered into the SAA with Zoom under which RingCentral was granted a license to "market, promote, and resell, as a bundle" Zoom's video meetings technology (the "Service") with RingCentral's cloud communications services. Countercl. ¶ 7; RingCentral's Ex Parte Motion ("TRO Mot."), Dkt. No. 13, Ex. 1 ("SAA") at 1-2 (§ 2(a)). In addition, the SAA granted RingCentral a "non-exclusive, non-transferable, sublicensable . . . royalty-free license to use, reproduce and display" Zoom's trademarks. Countercl. ¶ 7; SAA at 8 (§ 9). Under the SAA, RingCentral's license to market and resell Zoom's Service as part of its own product packages extended "for the term of the Agreement". SAA at 2 (§ 2(a)). Additionally, Zoom was to provide the Service to RingCentral and its affiliates "[t]hroughout the term of [the] Agreement." *Id*. at 2 (§ 2(b)).

The initial term of the SAA ran from October 2013 to October 2016, with successive automatic one-year renewal terms. Countercl. ¶ 11. Each party maintained the ability to avoid automatic renewal by providing notice to the other six months before termination of the then current term. *Id*.; SAA at 12-13 (§ 16). The parties mutually agreed to extend the term in writing on multiple occasions, most recently through the Eighth Amendment to the SAA, which extended the term to January 31, 2021, subject to another automatic-renewal provision and an optional End of Life ("EOL") provision deferring termination of the SAA for ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ in

Case No.: 5:21-cv-01727-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION
2

the event of non-renewal. Countercl. ¶ 12; SAA at 68 (4th Am. § 15(b)), 83. Pursuant to the SAA's EOL provision (§ 16(d)):

> RingCentral may, in its sole discretion, defer the effective date of termination by up to ▮▮▮▮▮▮▮▮ from the end of the Term in order to transition customers to an alternative to the Service (the "EOL Period"). Zoom shall continue to provide the Service in accordance with this Agreement during this time and shall be entitled to any amounts due for use of the Service. During the EOL Period, Zoom shall continue to comply with the [Service Level Agreements]. This Agreement shall be deemed to continue to remain in effect through the EOL Period.

SAA at 68 (4th Am. § 15(b)).

Section 16(e) of the SAA also identified Zoom's obligations that would survive termination of the Agreement and sets forth the time when licenses granted under the SAA will terminate:

> The termination or expiration of this Agreement will not operate to discharge any liability that had been incurred by either Party prior to any such termination or expiration. The termination of this Agreement will not terminate or affect any Customer Agreements entered into prior to termination of this Agreement for the term of each such Customer Agreement in effect at the time of Termination. Upon termination of this Agreement, all licenses granted hereunder will immediately terminate. The following provisions shall survive expiration or termination of this Agreement: Sections 1, 3(c), 3(d), 3(j), 6 (for fees incurred prior to termination), 11, 12(a), 13, 15, 16(c), and 18 of this Agreement.

SAA at 13.

On July 27, 2020, Zoom notified RingCentral that it was electing to decline the SAA's automatic renewal period after expiration of the term on January 31, 2021. Countercl. ¶ 15. RingCentral responded to Zoom's notice on July 29, 2020 informing Zoom that it was exercising its End of Life Period rights and therefore deferring termination of the SAA to ▮▮▮▮▮▮▮▮. *Id.* ¶ 16. RingCentral alleges that beginning in February 2021 however, multiple Zoom personnel began telling RingCentral customers that Zoom would soon no longer provide them the Service. *Id.* ¶ 24. RingCentral adds that, in some instances, Zoom sales personnel suggested to customers that they had approximately six months to switch from RingCentral to Zoom in order to avoid losing access to the Service. *Id.* In other cases, Zoom sales personnel suggested that customers

Case No.: 5:21-cv-01727-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION
3

would lose access to the Service through RingCentral in just thirty days.  *Id.*

After contacting Zoom about the conduct of its sales organization, Zoom informed RingCentral by letter on February 24, 2021, that its efforts to sell the Service during the EOL Period were in breach of the SAA and violated "intellectual property" rights.  *Id.* ¶ 27.  On February 26, 2021, RingCentral responded to Zoom's letter contesting Zoom's position and interpretation of the SAA.  It informed Zoom of its belief that "the SAA ha[d] not been terminated yet" and that "it remain[ed] in full force" during the EOL Period.  *Id.*; *see also* Declaration of Kira Makagon (Makagon Decl.), Dkt. No. 14-2, Ex. 8.

### B. Procedural History

Zoom, in response to RingCentral's February 26, 2021 letter, initiated this action by filing its complaint on March 12, 2021.  Zoom also took technological steps to prevent RingCentral from activating and providing Zoom's Service to new customers acquired during the EOL Period. Compl. ¶ 26.  On March 15, 2021, RingCentral filed counterclaims against Zoom in response to the action and Zoom's preventative technological steps.  RingCentral asserts breach of contract, violation of California's Unfair Competition Law, and declaratory relief counterclaims against Zoom.

In conjunction with filing the counterclaims, RingCentral filed an ex parte motion seeking a TRO enjoining Zoom, its representatives, officers, agents, directors, affiliates, servants, employees, and all persons acting in concert or participation with it, including employees and independent contractors from blocking activation of RingCentral's new customers.  *See* TRO Mot. at 1.  RingCentral sought to prevent Zoom from taking: (i) technological steps blocking the provisioning of API calls from RingCentral or customers to Zoom; (ii) technological steps blocking API calls to Zoom's servers for provisioning test accounts from RingCentral or from customers; and (iii) any other technological steps designed to block, impair, or impede RingCentral or any customer from accessing the Service under the SAA, as well as an order to show cause ("OSC") why a preliminary injunction should not issue extending any TRO throughout the pendency of this lawsuit.  *Id.*

Case No.: 5:21-cv-01727-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION
4

On March 17, 2021, the Court granted the relief requested by RingCentral. Order Granting Ex Parte Motion for Temporary Restraining Order, Dkt. No. 24. In its Order granting the TRO, the Court further issued the OSC to Zoom to demonstrate why a preliminary injunction should not issue continuing the TRO. Any opposition papers were due to be filed by March 23, 2021. The Court scheduled an OSC hearing for March 25, 2021 to determine whether a preliminary injunction should issue. Zoom filed a response to the Court's OSC ("Response") (Dkt. No. 28), to which RingCentral filed a reply ("Reply") (Dkt. No. 33).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65 empowers a court to grant preliminary injunctive relief. Yet, "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council Inc.*, 555 U.S. 7, 24 (2008). A court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 17 (quoting *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987)). Indeed, before a court may grant a preliminary injunction, the moving party must establish that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm if no preliminary injunction is granted, (3) the balance of the equities tips in its favor, and (4) an injunction is in the public interest. *Id.* at 20. The Ninth Circuit, however, has indicated that this test may also be applied on a sliding scale: if there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the [moving party]," a court may grant a preliminary injunction, but only if the moving party also demonstrates a likelihood of irreparable injury and the injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In other words, where a party is unable to show a likelihood of success on the merits but can at least demonstrate that there are serious questions going to the merits, and the balance of hardships strongly favors the party, a court may grant preliminary injunctive relief so long as there is still a showing on the last two elements. *See id.* at 1131, 1134–35 ("[A] stronger showing of one element may offset a weaker showing of another. For example, a stronger showing of irreparable harm to the moving party might offset a lesser showing of likelihood of

Case No.: 5:21-cv-01727-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION
5

success on the merits.").

Additionally, a party that seeks a mandatory injunction must demonstrate that the law and the facts clearly favor the moving party. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). A mandatory injunction goes beyond an order to maintain the status quo, and is an order for a responsible party to take action. *Id*. The Court will not issue a mandatory injunction in a doubtful case. *Id*. However, "[d]ue to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings." *Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013) (citing *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988)).

## III.     DISCUSSION

### A.     Likelihood of Success on the Merits

As the Court noted in its Order issuing the TRO, the crux of the parties' dispute revolves around the rights and obligations afforded to each party under the SAA. Specifically, RingCentral's claims depend on whether its right to market and resell Zoom's Service to new customers extends into the EOL Period. After considering the arguments on both sides, the Court finds that neither RingCentral nor Zoom has shown a likelihood of success on the merits at this juncture. However, the dueling allegations and interpretations of the SAA demonstrate that this case presents serious factual questions.

As a preliminary matter, the parties do not dispute that on July 27, 2020, Zoom elected to decline the SAA's automatic renewal period after the expiration of the SAA's term on January 31, 2021. *See* TRO Mot., Ex. 4. The parties also agree that on July 29, 2020, RingCentral invoked the SAA's EOL Period pursuant to § 16(d) which would begin after the term expired on January 31, 2021. The EOL Period permits RingCentral to "defer the effective date of termination by up to ▮▮▮▮▮▮ from the end of the Term in order to transition customers to an alternative to the Service." SAA at 68. Additionally, § 16(d) dictates that the SAA shall be deemed to continue to remain in effect through the EOL Period. *Id*.

Case No.: 5:21-cv-01727-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION

6

1  The parties clearly disagree however over the rights and obligations that each company
2 possesses during the EOL Period. RingCentral argues there is no provision in the SAA suggesting
3 that the parties intended to limit its rights or Zoom's obligations under the SAA during the EOL
4 Period. Rather, because the entire SAA continues to remain in effect throughout the EOL Period,
5 RingCentral retained its license to market and resell Zoom's Service under § 2(a) during this
6 period. Thus, RingCentral alleges that Zoom breached the SAA by taking technological steps
7 meant to prevent any new customer RingCentral contracted with after January 31, 2021 from
8 accessing Zoom's Service. In contrast, Zoom alleges that RingCentral has breached the SAA
9 because the SAA creates and distinguishes between two separate, distinct, and non-overlapping
10 periods: (1) the "Term" during which RingCentral is permitted to sell Zoom's Service to new
11 customers, and (2) the EOL Period, which begins when the Term expires and during which Zoom
12 is only obliged to continue to support existing RingCentral customers while RingCentral
13 transitions those existing customers to an alternative service. Response at 8. (citing SAA at 83
14 (8th Am. § 1)). In short, Zoom argues that the language relied upon by RingCentral establishes
15 the point that the SAA remains in effect during EOL Period. But that means all of the Agreement
16 remains in effect, including language in the SAA that limits RingCentral's license to the Term of
17 the SAA.
18  Like RingCentral, Zoom relies on specific provisions of the SAA to support its argument.
19 First, Zoom argues § 2(a) and 2(b)'s references to the "term of this Agreement" and "throughout
20 the Agreement" dictate that once the SAA Term expired on January 31, 2021, the license to sell
21 Zoom's Service also expired, as did Zoom's obligation to provide the Service to RingCentral and
22 its new customers. Response at 9 (citing SAA at 2 § 2(a)). Zoom also relies on § 16(f) which
23 references customers who obtained a version of the Service available "prior to the end of the
24 Term" to claim that it was the parties' intent that there be no new customers after the conclusion of
25 the SAA's pertinent Term. *Id.* Additionally, Zoom notes instances in the SAA where provisions
26 expressly reference both the Term and the EOL Period to further its claim that the SAA created
27 two distinct periods. *Id.* at 14-15.
28 Case No.: 5:21-cv-01727-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION
7

1    Previously, the Court found that RingCentral had presented an argument to support its
2    claim that its license to market and resell Zoom's Service extended until the conclusion of the
3    EOL Period and thus, Zoom's technological steps to disrupt RingCentral's efforts to activate new
4    customers appeared to breach the SAA.  *See* Order Granting Ex Parte Motion for Temporary
5    Restraining Order at 7.  However, Zoom now has had the opportunity to present an argument in
6    support of its claims that RingCentral has violated federal trademark law and breaches the SAA as
7    it continues to market and resell Zoom's Service during the EOL Period. The parties' disputes,
8    highlighted by the competing and conflicting interpretations of the SAA, demonstrate that
9    RingCentral has not established a likelihood of success on the merits.

10    Because, neither party has shown a likelihood of success on the merits but only serious
11    questions on the merits, in order to obtain a preliminary injunction, RingCentral must have shown
12    that it is likely to suffer irreparable injury in the absence of preliminary injunctive relief, that the
13    balance of hardships tips sharpy in its favor, and that an injunction is in the public interest.
14    *Alliance for the Wild Rockies*, 632 F.3d at 1134-35.  With limited exceptions set forth below,
15    RingCentral has not met that standard here.

### B. Irreparable Harm

To obtain a preliminary injunction, RingCentral must "demonstrate a likelihood of irreparable injury," more than a mere possibility.  *Winter*, 555 U.S. at 21.  Further "[a] [party] must do more than merely allege imminent harm sufficient to establish standing; a [party] must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).  "Speculative injury cannot be the basis for a finding of irreparable harm."  *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007).  Moreover, mere financial injury "will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation."  *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 471 (9th Cir. 1984) (concluding that plaintiff's harm would be easily calculable in damages); *see Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the

Case No.: 5:21-cv-01727-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION
8

ordinary course of litigation, weighs heavily against a claim of irreparable harm."). For these reasons, preliminary injunctions are rarely issued for breach of contract claims. *See Telephia Inc. v. Cuppy*, No. C 04-03508 SI, 2005 WL 588441, at *3 (N.D. Cal. Mar. 11, 2005) ("[A] claim for breach of contract can be compensated by money damages, and does not warrant the issuance of a preliminary injunction."); *ConWest Res., Inc. v. Playtime Novelties, Inc.*, No. C 06-5304 SBA, 2006 WL 3346226, at *8 (N.D. Cal. Nov. 17, 2006) ("[A] preliminary injunction will not issue based on a breach of contract claim."). However, as the Court noted in its previous Order, "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).

RingCentral submitted declarations from its Executive Vice President and Chief Innovation Officer, Kira Makagon and its Senior Vice President of Worldwide Field Sales, Carson Hostetter.[1] Makagon indicates that Zoom's blocking of new RingCentral customer activations threatens loss of goodwill and loss of market share as customers who require features that it cannot currently provide without Zoom's Service "prevent RingCentral from winning business from new customers." Makagon Decl. ¶¶ 19-20. RingCentral also claims that if it does not prevail, RingCentral will face "great reputational harm and loss of trust" if it is unable to fulfill commitments written into customer deals and contract extensions that have been in process for months. TRO Mot. at 14; Makagon Decl. ¶ 19. Moreover, RingCentral points to third-party stock analysis and one example of Zoom contacting and attempting to "poach" its customers to demonstrate the harm it faces. Reply at 8; *see also* Declaration of the Carson Hostetter (Hostetter

---

[1] At the hearing Zoom raised specific hearsay and improper expert opinion objections to many of the statements made in Carson Hostetter's declaration. In assessing the evidence with respect to irreparable harm, the Court rejects Zoom's assertion that the Court may rely only on admissible evidence to support a finding of irreparable harm. Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the Ninth Circuit has found that the rules of evidence do not apply strictly to preliminary injunction proceedings. *See Republic of the Philippines*, 862 F.2d at 1355 ("It was within the discretion of the district court to accept . . . hearsay for purposes of deciding whether to issue the preliminary injunction."). Therefore, the Court considers the Hostetter declaration in full.

Case No.: 5:21-cv-01727-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION
9

Decl.), Dkt. No. 34 ¶ 6, Exs. 10-11.

Additionally, Hostetter described how he is aware of "several" worried customers contacting RingCentral to discuss the continuity of their Zoom Service and of certain customers who have asked RingCentral for amendments to their customer contracts to "address a contingency in which Zoom shuts off their access" to the Service. Hostetter Decl. ¶ 8. Hostetter states that in addition to the damage to trust he believes RingCentral has suffered, he is also aware of "multiple deals" that RingCentral has lost or had to change because of customer fear about RingCentral's ability to deliver Zoom's Service. *Id*. ¶ 9. He further stresses his belief that RingCentral faces the risk of losing the opportunity to generate the "unique level of goodwill and strategic partnership" that comes with customers having RingCentral as a unified communications platform provider. *Id*.

Although Makagon and Hostetter's declarations arguably indicate that RingCentral has suffered some harm, the Court finds a lack of support for irreparable harm justifying a preliminary injunction. *See Sampson*, 415 U.S. at 90 ("The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough."). Specifically, the record does not contain non-conclusory evidence sufficient to establish that it has actually lost market share as a result of Zoom not offering the Service to new customers or why monetary damages would be insufficient to compensate RingCentral if its claims were ultimately successful. *See Caribbean Marine Services Co.*, 844 F.2d at 674 (reversing preliminary injunction where district court did not require plaintiff to show the economic losses alleged were likely to occur or imminent); *Amylin Pharm., Inc. v. Eli Lilly & Co.*, 456 F. App'x 676, 678 (9th Cir. 2011) (unpublished) ("[L]ost profits due to lost sales generally constitutes the type of harm that is fully compensable through money damages and therefore does not support injunctive relief.").

Furthermore, the Court with the evidence provided cannot now conclude that this is a case where harm to reputation is irreparable. Hostetter, as an interested party, does not establish a non-speculative threat of irreparable injury supported by sufficient evidence (as opposed to

Case No.: 5:21-cv-01727-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION
10

conclusions). *See Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473-74 (9th Cir. 1985) (rejecting allegations of harm based on affidavits from company's own executives as conclusory and without sufficient support in facts—"AP's president stated that it sustained large losses in 1982-83, and he forecast large losses again in 1983-84. These statements, standing alone, are insufficient evidence that AP is threatened with extinction."). Moreover, "the loss of business relationships is an economic harm that can be valued." *Telephia Inc.*, 2005 WL 588441, at *4 (concluding defendant could be compensated for the value of the "right to work exclusively in the wireless technology market, and to keep defendants from engaging in business relationships in competition with plaintiff."). Accordingly, RingCentral has not met its burden as to this factor.

### C. Balance of Hardships

Even if RingCentral had established that it would suffer irreparable harm, the Court would still deny its request for preliminary injunction because the balance of hardships does not tip sharply in RingCentral's favor. *See Alliance for the World Rockies*, 632 F.3d at 1132 ("serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the . . . test [for preliminary injunction] are also met.").

As discussed, RingCentral has not shown that it will suffer irreparable injury if a preliminary injunction is not granted, which makes it difficult to conclude that the balance of hardships tips sharply in its favor. Although it could stand to lose certain customers and have to renegotiate other customer contracts if it is not allowed to market and resell the Service during the EOL Period, RingCentral is also not the only party facing hardship. Zoom would have to continue to provide its Service to new RingCentral customers that the companies are competing over and who value the Service, which Zoom disputes as contrary to the provisions in the SAA. Moreover, Zoom faces the possibility of servicing RingCentral's new customers while RingCentral continues to add features to its own product in order to reach its goal of transitioning all of its clients away from Zoom's Service to its own or alternative product by the conclusion of the EOL Period. *See* SAA at 68 (4th Am. § 15(b)); Response at 23-24. In light of these considerations, the Court does

Case No.: 5:21-cv-01727-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION
11

1    not find that the balance of hardships tips sharply in RingCentral's favor.

2        **D.**     **Public Interest**

3    Finally, "a court finding that the public interest is involved may craft or withhold injunctive relief for the public's benefit." *Marquez Bros. Int'l v. Atletico Morelia S.A. De C.V.*, No. 5:05-CV-1889 RS, 2005 WL 1869501, at *2 (N.D. Cal. Aug. 5, 2005).

Given that both RingCentral and Zoom strongly believe that their interpretation of the SAA is correct and that the other is in breach of the Agreement, the public interest in "holding private parties to their agreements" justifies both issuing and not issuing a preliminary injunction. *See Epic Games v. Apple Inc.*, 2020 U.S. Dist. LEXIS 188668, at *62 (N.D. Cal. Oct. 9, 2020) (citing *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 853 (6th Cir. 2017)); *accord Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62–63 (2013) ("the interest of justice" is served by holding parties to their bargain). RingCentral also argues that there is a significant public interest in requiring parties to resolve business disputes through judicial proceedings, rather than by resorting to "self-help." TRO Mot. at 17. Even if true, the facts currently in the record do not establish that any public interest is at stake in this commercial dispute which would outweigh RingCentral's insufficient showing as to the other factors.

    **E.**     **Conclusion**

Having considered the parties' arguments, the current record, and the relevant legal authorities, the Court concludes that RingCentral is not entitled to a preliminary injunction ordering Zoom to no longer take technological steps designed to block or impair new RingCentral customers from accessing its Service throughout the pendency of this lawsuit. Specifically, the Court is not convinced that RingCentral would suffer an irreparable injury absent a preliminary injunction and that the balance of hardships tips sharply in its favor.

**IV.**     **ORDER**

(1) RingCentral's motion for a preliminary injunction is DENIED;

(2) The TRO issued on March 17, 2021 is DISSOLVED. Zoom is to continue to provide

Case No.: 5:21-cv-01727-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION
12

      the Service, pursuant to the SAA, to all RingCentral customers who were under contract prior to January 31, 2021. Zoom is not required to provide the Service to any new customer RingCentral contracted with after January 31, 2021; and

    (3) This matter is also REFERRED to Magistrate Judge van Keulen, the assigned Magistrate Judge in this case, to conduct an early mandatory settlement conference to take place within 90 days of the date this Order is filed (or such reasonable time thereafter to accommodate Magistrate Judge van Keulen's schedule). The parties shall contact Magistrate Judge van Keulen's chambers to arrange the settlement conference.

The Court has filed this Order under seal because it contains material subject to sealing orders. Within seven days of the filing date of this Order, the parties shall provide the Court a stipulated redacted version of this Order, redacting only those portions of the Order containing or referring to material for which the Court has granted a motion to seal and for which the parties still request the material be sealed. The Court will then issue a redacted version of the Order.

**IT IS SO ORDERED.**

Dated: March 29, 2021

EDWARD J. DAVILA
United States District Judge

Case No.: 5:21-cv-01727-EJD
ORDER DENYING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION
13