| | |
|---|---|
| Douglas E. Lumish (CA 183863)<br>doug.lumish@lw.com<br>Matthew Rawlinson (CA 231890)<br>matt.rawlinson@lw.com<br>Arman Zahoory (CA 306421)<br>arman.zahoory@lw.com<br>**LATHAM & WATKINS LLP**<br>140 Scott Drive<br>Menlo Park, California 94025<br>Telephone: 650-328-4600<br>Facsimile: 650-463-2600<br><br>Jennifer Barry (CA 228066)<br>jennifer.barry@lw.com<br>**LATHAM & WATKINS LLP**<br>12670 High Bluff Drive<br>San Diego, California 92130<br>Telephone: 858-523-5400<br>Facsimile: 858-523-5450<br><br>*Attorneys for*<br>*Zoom Video Communications, Inc.* | BRAD S. KARP (*pro hac vice*)<br>bkarp@paulweiss.com<br>**PAUL, WEISS, RIFKIND, WHARTON &**<br>**GARRISON LLP**<br>1285 Avenue of the Americas<br>New York, NY 10019-6064<br>Telephone:   +1 212 373 3000<br>Facsimile:   +1 212 757 3990<br><br>MELINDA HAAG (SBN 132612)<br>mhaag@paulweiss.com<br>WALTER F. BROWN (SBN 130248)<br>wbrown@paulweiss.com<br>R. ROSIE VAIL (SBN 317977)<br>rvail@paulweiss.com<br>**PAUL, WEISS, RIFKIND, WHARTON &**<br>**GARRISON LLP**<br>943 Steiner Street<br>San Francisco, CA 94117<br>Telephone:   +1 202 223 7300<br>Facsimile:   +1 202 223 7420<br><br>CLEMENT SETH ROBERTS (SBN 209203)<br>croberts@orrick.com<br>ROBERT L. URIARTE (SBN 258274)<br>ruriarte@orrick.com<br>**ORRICK, HERRINGTON & SUTCLIFFE LLP**<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA  94105-2669<br>Telephone:   +1 415 773 5700<br>Facsimile:   +1 415 773 5759<br><br>*Attorneys for RingCentral, Inc.* |

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ZOOM VIDEO COMMUNICATIONS, INC.,<br><br>     Plaintiff,<br><br>     vs.<br><br>RINGCENTRAL, INC.,<br><br>     Defendant. | CASE NO. 5:21-cv-1727-EJD<br><br>**JOINT CASE MANAGEMENT STATEMENT** |

RINGCENTRAL, INC.,

                Counterclaimant,

    vs.

ZOOM VIDEO COMMUNICATIONS, INC.,

                Counterdefendant.

Pursuant to Federal Rule of Civil Procedure 26(f), Civil L.R. 16-9, the Standing Order for All Judges of the Northern District of California – Contents of Joint Case Management Statement, and the Court's Case Management Scheduling Order, Plaintiff and Counterdefendant Zoom Video Communications, Inc. ("Zoom") and Defendant and Counterclaimant RingCentral, Inc. ("RingCentral"), by and through their respective counsel of record, hereby jointly submit this Joint Case Management Statement.

This Joint Case Management Statement follows the parties' Rule 26(f) conference on July 26, 2021.

## 1.   JURISDICTION AND SERVICE

Zoom contends that this Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because this matter arises out of the laws of the United States and relates to trademarks.  This Court has supplemental jurisdiction over the state statutory and common law claims pursuant to 28 U.S.C. § 1367, as those claims are part of the same case or controversy as the federal claims at issue in this case.

RingCentral was served with the summons and complaint on March 12, 2021. RingCentral does not dispute that this Court has personal jurisdiction over it, and RingCentral does not dispute that venue is proper in this Court.

Zoom was served with RingCentral's counterclaims on March 15, 2021.  Zoom does not dispute that this Court has personal jurisdiction over it, and Zoom does not dispute that venue is proper in this Court.

No parties remain to be served.

## 2.   FACTS

**Zoom's Position**

Zoom provides video communications  services using a cloud platform for video and audio conferencing, collaboration, chat, and webinars.  For the past seven-plus years, Zoom has partnered with RingCentral, providing Zoom's enormously popular video communication services for RingCentral to sell under its own "RingCentral Meetings" brand.  The terms of this relationship are set forth in a Strategic Alliance Agreement ("SAA" or "Agreement") and its nine

1  amendments.

2  At Zoom's election, however, the Agreement was terminated and this business relationship is winding down quickly in accordance with its terms. More than a year ago, on July 27, 2020, Zoom sent a letter to RingCentral ████████████████████████████ ████████████████████████████████████. The notice period gave RingCentral ███████ to take any technological or business steps required to transition to its RingCentral Video (RCV) product. See SAA at 83 (8th Am. § 1). On July 29, 2020, ███████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████. This EOL Period permits RingCentral to "defer the effective date of termination ████████████████████████████████," in order "to transition Customers to an alternative" service SAA at 68 (4th Am. § 15(b)). Both parties agree that the EOL Period ends on ██████████.

As discussed below, the primary issues in dispute between the parties are whether the SAA: (1) permits RingCentral to sell the Zoom service to new customers during the EOL Period; (2) requires Zoom to support RingCentral's customers who are signed up to long term contracts beyond the upcoming end of the EOL Period (██████████) or must RingCentral instead transition customers who it signed up for contracts that extend beyond the EOL to another video service; and (3) includes enforceable non-compete provisions.

This dispute began in a conflict regarding the first issue, when RingCentral refused to stop selling the Zoom service to new customers after January 31, 2021 thereby exceeding its rights under the SAA. Zoom filed its complaint in this action (the first complaint it has ever filed) on March 11, 2021, alleging claims for breach of contract, false designation of origin, and unfair competition. Zoom also contemporaneously took technological steps to block RingCentral's ability to activate the service for new customers.

In response, RingCentral filed counterclaims for breach of contract, declaratory relief, and unfair competition on March 15, 2021. On March 16, 2021 RingCentral filed a motion for a temporary restraining order to enjoin Zoom from imposing technical blocking measures that prevented RingCentral from activating Zoom's service to new customers.

1        On March 17, 2021, the Court issued an order granting RingCentral's ex parte motion for
2   a temporary restraining order, but following a hearing, on March 29, 2021, the Court dissolved
3   the temporary restraining order and denied RingCentral's motion for a preliminary injunction,
4   finding "RingCentral has not established a likelihood of success on the merits" and "RingCentral
5   has not met its burden as to [irreparable harm]."  Order at 6, 8, 11.  After the temporary
6   restraining order was dissolved, Zoom reinstated technological measures that block
7   RingCentral's ability to activate the service for new customers.
8        On April 28, 2021, RingCentral filed a notice of appeal of the Court's denial of
9   RingCentral's motion for a preliminary injunction.  That appeal is fully briefed and scheduled for
10  argument on October 7, 2021.
11       The second (and currently most urgent) point of contention between the parties is that
12  RingCentral claims that the SAA requires Zoom to provide the service to any RingCentral
13  customer for the length of that customer's agreement with RingCentral (to which Zoom is not a
14  party (or even privy)), even if that contract extends years beyond the final termination of the
15  SAA at the upcoming conclusion of the EOL Period.  In other words, RingCentral has taken the
16  position that the SAA does not actually terminate upon termination, and that the EOL Period
17  does not actually lead to the end of the SAA's life.
18       Zoom believes this argument fails to pass the straight-face test, and that RingCentral must
19  instead transition customers who it signed up for contracts that extend beyond the EOL to
20  another video service.  RingCentral's arguments - rooted in apparent concern that it has signed
21  deals to provide Zoom's services to its customers that it cannot fulfill - are doomed for several
22  reasons including: (1) the plain language of the SAA states that Zoom is required to support
23  RingCentral's customers only during the Term of the SAA, and during the EOL Period; (2) the
24  SAA expressly describes those obligations that survive post-termination, and ongoing service to
25  RingCentral customers is not among them; (3) as a matter of the plain language of the SAA and
26  basic agency law, RingCentral has no authority to bind Zoom to customer contracts that Zoom is
27  not a party to; (4) RingCentral's construction is inconsistent with the stated purpose of the EOL
28  Period; (5) RingCentral's construction generates absurd results (*e.g.,* under RingCentral's theory,

Zoom is required to continue to service a contract extending 10 years beyond the termination of the SAA, even though it had no notice of the contract and was not a party to it).  In fact, RingCentral's recent claim that Zoom is obligated to indefinitely continue providing the service to its customers after the EOL Period contradicts its previous claim that Zoom's obligation is "to 'provide the Service in accordance with the [SAA] *during [the EOL Period]*." Feb. 26, 2021 J. Marlow Ltr. (brackets in original).

For example, Section 4 of the SAA specifically addresses obligations regarding customer agreements:

> ***RingCentral may not obligate Zoom to any agreements, contracts, terms, conditions, obligations or warranties***. *The Customer Agreement must contain provisions imposing no greater obligations or liability on Zoom and no fewer restrictions or obligations on Customer than Zoom's standard terms of service in effect at the time the Customer Agreement is entered into*. SAA § 4 (emphasis added).

Likewise, Section 7 of the SAA explicitly designates the parties as "independent contracting parties" and makes clear that "[n]either Party will be deemed an agent of the other Party for any purpose whatsoever and neither Party nor any of its agents or employees will have any right or authority to assume or create any obligation of any kind, whether express or implied, on behalf of the other Party."  SAA § 7.  Neither of these provisions can be reconciled with the suggestion that RingCentral has the power to unilaterally bind Zoom, without notice or agreement from Zoom, to RingCentral customer contracts that extend beyond the termination date. In similar fashion, the plain language states that all licenses terminate when the Agreement terminates.  SAA § 16(e) ("Upon termination of this Agreement, all licenses granted hereunder will immediately terminate.").  RingCentral's claim is also inconsistent with a variety of other express language in the SAA, including regarding which terms survive termination, payment claims, the basic obligations regarding provision of service and others.

In addition, RingCentral talks about the "big-picture" but RingCentral's suggestion that – during the final year of the SAA – it could have, without notice to Zoom, signed contracts with customers that required Zoom to essentially continue to provide service for 3, 5, or 10 more

years is, once again, flatly inconsistent with both the express language of the Agreement that says RingCentral has no such right, and purports to allow RingCentral, from the very outset of the SAA, to obligate Zoom to contracts well beyond the life of the parties' Agreement.  Nothing in the Agreement supports this reading. Likewise, RingCentral says it may have customer agreements that go beyond the life of the SAA, but nothing prevents them from fulfilling those contracts with another service.  If RingCentral, without notice to Zoom, agreed to contracts that promise to provide Zoom's service beyond the terms it had the right to guarantee, that is not Zoom's fault.

This issue is important to customers and to the parties. Not only is it important that this issue is resolved well before the deadline so that RingCentral customers can make appropriate business decisions, but it is also important to Zoom and its own customers.  Zoom's business is rapidly expanding, and it must focus its limited engineering resources on its own business needs; because of this, providing extended support for RingCentral Meetings customers with contracts extending after ▌▌▌▌▌▌▌▌ would create significant operational burdens for Zoom well beyond what it agreed to.  The engineering burden for Zoom to continue providing RingCentral Meetings (which involves integrating new versions, constant bug fixes, technical requests, and time consuming coding merges) exists  whether the number of post-EOL Period RingCentral customers is few or many.  Given this, enforcement of the hard end date when the SAA terminates, as agreed to by the parties, is important to Zoom.

In addition to the issues above, Zoom also alleges that the anti-competitive provisions contained within the SAA are void under California law and violate California Business and Professions Code § 16600.  Specifically, Zoom challenges Section 3(d) of the SAA, which bars any effort by Zoom "to convert Customers from RingCentral to Zoom," even when "Zoom has acquired contact information for such persons independently of this Agreement," and the 2019 8th Amendment, which denies Zoom the right to "solicit or communicate with any…customer of RingCentral for the purpose of attempting to cause such…customer to cease subscribing the RingCentral Services or migrating to a platform that competes with the RingCentral Services"

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

Zoom maintains that such overbroad non-compete restrictions do nothing to support fair competition or the alliance between Zoom and RingCentral, and RingCentral's attempt to use them to prevent Zoom from selling its own product to RingCentral's customers or communicating truthfully with the public and with customers about the status of the parties' agreement during and after the EOL Period violates California law.

Zoom also asserts a variety of affirmative defenses in response to RingCentral's counterclaims, including that Zoom's actions were justified and taken in good faith, that RingCentral has acted in bad faith and contrary to public policy, and that RingCentral's alleged damages are not due to Zoom's actions, and are both speculative and not recoverable under the contract.

**RingCentral's Position**

Under the SAA, RingCentral is and has been a reseller of Zoom's video conference service (aka RingCentral Meetings or "RCM") since 2013. This dispute began in early 2021, when RingCentral learned that Zoom salespersons were misleading RingCentral customers about termination of the SAA. Although the SAA's terms are confidential, multiple customers informed RingCentral that, just days into the EOL Period, Zoom salespersons were telling customers that they would no longer have access to the RCM product that they had contracted for. Zoom told some RingCentral customers that RingCentral's access to the video component of the RCM service would be cut off in as little as thirty days, which is completely untrue under the terms of the SAA. Statements like these were made to mislead and scare customers into switching from RingCentral to Zoom, and in at least some instances, they worked.

Shortly after RingCentral complained to Zoom about the conduct of its sales organization, Zoom started coming up with contractual arguments about why RingCentral could no longer sell the RCM service to new customers during the EOL Period. Zoom then engaged in self-help designed to bolster its competitive position against RingCentral: Zoom breached the SAA and imposed technical blocking measures to prevent RingCentral from activating new RCM customers. The Court initially enjoined Zoom's blocking measures, reasoning that "Zoom's 'technological steps' to disrupt RingCentral's efforts to activate new customers appear

1    to breach [SAA § 16(d) and 2(a)]," and that if "customers would not be provided services which
2    RingCentral markets and is contractually allowed to include in customers packages,"
3    RingCentral would face irreparable harm in the form of "'loss of prospective customers or
4    goodwill.'"  Dkt. 24 at 7-8 ("TRO").  The Court subsequently dissolved the restraining order
5    against Zoom's blocking measures on the grounds that "neither RingCentral nor Zoom has
6    shown a likelihood of success on the merits at this juncture," and that "the record does not
7    contain non-conclusory evidence sufficient to establish that it has actually lost market share as a
8    result of Zoom not offering the Service to new customers." *Id*. at 6, 10.
9      In addition to the parties' disagreement about RingCentral's right to sell the RCM service
10   to new customers during the EOL period, a dispute has arisen, discussed in section 15 below,
11   over a time-sensitive issue regarding Zoom's obligation to fully support RingCentral customers
12   beyond the EOL Period.  Specifically, RingCentral has sold the RCM service to numerous
13   customers under commercial contracts with a contract term that extends beyond the end of the
14   EOL period in reliance on the clear, plain language of SAA §16(e), which unequivocally states
15   that "termination of this Agreement will not terminate or affect any Customer Agreements
16   entered into prior to termination of this Agreement for the term of each such Customer
17   Agreement."  If Zoom can block access to the RCM service, those agreements will obviously be
18   "affected."
19     Notwithstanding Zoom's clear obligation under §16(e) to provide full support for the
20   length of RingCentral's contracts with its customers, Zoom argues that its obligation to provide
21   such service ends at the conclusion of the EOL Period.  Zoom seeks to avoid the plain language
22   of §16(e) by distorting other, more general provisions of the SAA, and by arguing that the
23   section only concerns RingCentral's contracts with its customers, to which Zoom is not privy,
24   and cannot operate to bind Zoom.  But this ignores the fact that Zoom entered into a reseller
25   agreement with RingCentral, committing itself to provide services to RingCentral's customers,
26   and that Zoom owes contractual duties to RingCentral to do so.  The reason to include this
27   language in §16(e) of the SAA (as opposed to in RingCentral customer agreements) is to bind
28   *Zoom* and to prevent it from nullifying the customer agreements by refusing to provide the RCM

service.  Since this dispute began, Zoom has complained that providing post-EOL Period support for RCM would cause significant burden to Zoom.  Setting aside Zoom's enormous wealth and army of engineers, a purported lack of resources is no excuse for failing to provide services that Zoom is contractually bound to provide.

Consider the big-picture implications of Zoom's position.  Take a three-year contract RingCentral signs with a customer the day before it learns Zoom will not renew the SAA.  According to Zoom, that *existing* customer contract is retroactively amended to last less than its stated term by Zoom's unilateral decision not to renew the SAA.  In other words, Zoom's reading allows it to force RingCentral to breach even those customer agreements that RingCentral entered in good faith *before* Zoom gave notice of non-renewal, because RingCentral cannot hold up its end of the bargain if Zoom cuts off access to the RCM service.  This is a nonsensical position, would lead to an "absurd result," and is certainly not what the SAA requires or contemplated.

With respect to RingCentral's right to sell the RCM service to new customers during the EOL period, Zoom has been consistent in its attempt to read limitations into the SAA that simply aren't there.  For example, "Zoom contends that RingCentral's license to sell the [RCM service] runs only for the Term of the Agreement, which concluded on January 31, 2021")—but that is not what the SAA's license-to-sell provision actually says.  The relevant SAA provision, § 2(a), provides that the license runs "for the term of this Agreement," which in plain English means the duration of the SAA.  RingCentral can sell the RCM service while the SAA remains in effect, and because the SAA "remain[s] in effect" throughout the EOL Period, RingCentral can sell the RCM service until the EOL Period expires.  SAA § 2(a).  In any event, notwithstanding RingCentral's contractual rights, because of Zoom's misconduct sales to new customers are no longer part of RingCentral's transition efforts.

Similarly, Zoom argues that a limitation on sales to new customers during the EOL Period is implied by the fact that the EOL Period gives RingCentral the ability "to transition Customers to an alternative to the Service."  SAA § 16(d).  This argument is incorrect, both as a matter of contract interpretation and as a matter of common sense.  Given the practical realities

of the industry, because among other reasons the UCaaS sales cycle for enterprise customers can take time, Zoom's interpretation would again lead to "absurd results." For example, in Zoom's view, RingCentral would have had to stop selling the RCM service to enterprise customers before Zoom notified RingCentral that it would not renew the SAA, because the enterprise sales cycle is much longer than the six-month notice of non-renewal that Zoom provided. RingCentral, in Zoom's interpretation, would have to anticipate that Zoom might not renew the SAA and stop negotiating agreements with enterprise customers, or inform those customers at the last minute that the length of the agreement would have to be shortened dramatically. This makes no sense in the industry and is not what the SAA provides.

3. **LEGAL ISSUES**

   **Zoom's Position**

   Zoom states that the key legal issues are as follows:

   a. Whether the SAA requires Zoom to support RingCentral's customers who are signed up to long-term contracts beyond the upcoming end of the EOL Period (▓▓▓▓▓▓▓) or whether RingCentral must instead transition customers who it signed up for contracts that extend beyond the EOL to another video service;

   b. Whether RingCentral has breached the Agreement by continuing to sell and market Zoom products to customers, including entering into multi-year contracts, after RingCentral's license to sell Zoom's products expired at the end of the term on January 31, 2021, and by using Zoom's marks to aid that effort.

   c. Whether RingCentral has used Zoom's mark improperly and in excess of its authorization in violation of 15 U.S.C. § 1125(a), and, in doing so, misled consumers into believing, and created the false impression, that Zoom authorized, approved, and licensed RingCentral's continued use of the mark after termination of the Agreement to solicit new customers.

   d. Whether RingCentral has breached the Agreement by making false public statements that the transition is due to quality or feature-based reasons as opposed to Zoom's election to terminate the Agreement.

     e.    Whether RingCentral violated Cal. Bus. Prof. Code § 16600 by imposing the non-compete provisions under the Agreement.

**RingCentral's Position**

RingCentral states that the key legal issues are as follows:

     a.    Whether Zoom is required to support customers who contracted for use of RingCentral Meetings ("RCM") through the life of those customer contracts, even if those customer contracts extend beyond the EOL Period;

     b.    Whether the SAA permits RingCentral to sell and market RCM (and, therefore, Zoom's video product) to new customers during the EOL Period;

     c.    Whether Zoom has breached the SAA by making improper and/or false statements to customers about RingCentral's products or the termination of the SAA;

     d.    Whether Zoom has engaged in unfair competition in violation of Cal. Civ. Code § 17200 *et seq.* including through the dissemination of deceptive, untrue, and misleading advertising in violation of Cal. Bus. & Prof. Code § 17500 while communicating with RingCentral Customers and prospective customers.

## 4. MOTIONS

**Prior Motions**

Zoom filed an Administrative Motion to Seal Portions of the Complaint and Exhibit A on March 11, 2021. Dkt. 5.

On March 16, 2021, RingCentral filed an Ex Parte Motion for (1) Temporary Restraining Order; and (2) Order to Show Cause Re Preliminary Injunction. Dkt. 14. RingCentral concurrently filed an Administrative Motion to Seal its Counterclaims and Portions of its Motion for a Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction. Dkt. 13. Zoom filed its opposition to this motion on March 23, 2021 with its Administrative Motion to File Under Seal. Dkts. 28, 30.

Zoom filed a Motion to Seal Zoom's Answer to Counterclaims on April 5, 2021 along with its Answer filed the same day. Dkts. 45, 46.

**Pending Motions**

None presently.

RingCentral's appeal of the Court's denial of RingCentral's Motion for a Preliminary Injunction is pending in the United States Court of Appeals for the Ninth Circuit. It is fully briefed and set for oral argument on October 7, 2021.

5. **AMENDMENTS OF PLEADINGS**

The parties agree that any amendment to the pleadings shall be brought by December 1, 2021.

6. **EVIDENCE PRESERVATION**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have taken reasonable and proportionate steps to preserve evidence relevant to the issues in these actions. The parties are meeting and conferring for the purposes of developing a joint protocol for the production of Electronically Stored Information ("ESI"). The parties anticipate stipulating to a protocol governing ESI discovery in this matter.

Currently, both parties are taking appropriate steps to preserve information, documents, and data they reasonably believe may be relevant in this litigation.

7. **INITIAL DISCLOSURES**

The parties met and conferred pursuant to Rule 26(f) on July 26, 2021. The parties intend to serve their initial disclosures by no later than August 25, 2021.

8. **DISCOVERY**

**Discovery taken to date**

None.

**Scope of Anticipated Discovery**

As discussed below in Section 15, the parties are working to jointly propose an expedited proceeding on the single issue of Zoom's obligations to service RingCentral customers beyond the EOL Period (issue No. 2 discussed in Zoom's position above). For the purpose of that proposed expedited proceeding, the parties anticipate proposing limited and expedited discovery targeted to that issue.

1    If the parties proceed to a full trial of all the issues in the case, the parties believe that the
2    default limits set forth in the Federal Rules of Civil Procedure should be sufficient.

**Zoom's Position Re: Specific Topics of Discovery**

Zoom anticipates targeted discovery addressing, among other things, the terms of the SAA, the parties' negotiations related to the SAA and its amendments, RingCentral's internal conversations regarding the Agreement and the termination thereof, RingCentral's beliefs regarding the terms of the Agreement, RingCentral's agreements and conversations with customers and third parties regarding Zoom's services, the terms and durations of RingCentral's agreements with its customers generally, the development of RingCentral's product or service referred to as RingCentral Video, RingCentral's efforts to secure other alternative video communications services from third parties and/or to replace Zoom's, and the marketing or sales of RingCentral Meetings.

**RingCentral's Position Re: Specific Topics of Discovery**

RingCentral anticipates discovery addressing, among other things, the June 13, 2013 Strategic Alliance Agreement (SAA) and its amendments; the drafting, negotiation, interpretation and performance under the SAA, its terms, and its amendments; Zoom's obligations under the SAA, including Zoom's failure to meet those obligations; Zoom's relationships with third-party resellers and its release of new code, bug fixes and the like to such third-parties; Zoom's knowledge of RingCentral's customers and customer agreements; any competitive knowledge and information learned from or disclosed by any and all former RingCentral employees employed by Zoom and or contractors engaged by Zoom; Zoom's hiring practices, particularly with respect to RingCentral and its employees; Zoom's unlawful competition; any communications plans, public relations campaigns, marketing campaigns or sales activities targeting directly or indirectly RingCentral's customers; any statements made to industry analysts regarding the SAA and any Zoom marketing and sales activities related or targeted towards RingCentral's customers, including buying out RingCentral contracts or offering very steep discounts to RingCentral customers; any use of RingCentral confidential information; and the damages RingCentral has suffered as a result of Zoom's breach of contract

and unfair and anticompetitive business practices.

**Privilege and Confidentiality Issues**

The parties anticipate jointly proposing a stipulated protective order, which will address privilege and confidentiality issues, as well as other issues related to discovery.

**9.  CLASS ACTIONS**

Not applicable.

**10.  RELATED CASES**

None.

**11.  RELIEF**

**Zoom's Position**

The relief sought by Zoom includes, but is not limited to:

    a.  Monetary damages to be determined at trial;

    b.  Injunctive relief;

    c.  Declaratory relief;

    d.  Zoom's costs in connection with these actions, including attorneys' fees, consultant and expert fees, and other expenses; and

    e.  Any other relief the Court deems just and proper.

**RingCentral's Position**

The relief sought by RingCentral includes, but is not limited to:

    a.  Entry of judgment in favor of RingCentral against Zoom;

    b.  A preliminary and permanent injunction;

    c.  A declaration of RingCentral's rights;

    d.  An order awarding RingCentral damages according to proof;

    e.  Prejudgment and post-judgment interest;

    f.  An order awarding RingCentral its costs and attorneys' fees;

    g.  All such further and additional relief, in law or equity, to which Defendant-Counterclaimant may be entitled or which the Court deems just and proper.

**12.   SETTLEMENT AND ADR**

Zoom and RingCentral filed their respective ADR Certifications on May 26, 2021.

The parties attended a settlement conference and mediation on June 23, 2021.

The parties do not believe that additional formal settlement efforts will be productive prior to a decision about Zoom's service obligations post-termination, if any.

**13.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

Zoom declined to proceed before a Magistrate Judge.  Dkt. 16.  RingCentral does not consent to proceed before a Magistrate Judge for all purposes.

**14.   OTHER REFERENCES**

The case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.   NARROWING OF ISSUES**

As discussed below, the parties are working to jointly propose a procedure to expedite the treatment of the single issue of Zoom's obligation to service RingCentral's customers following the end of the EOL Period.  It is the parties' hope that expediting this narrow issue will increase the chances of a global resolution of all issues, though this may change depending on what discovery on the parties' unfair competition claims reveal.

**16.   EXPEDITED HEARING PROCEDURE**

The parties mutually agree that there is a uniquely important and time sensitive issue presented in this case.  Under the SAA, RingCentral resells "RingCentral Meetings," or "RCM," RingCentral's implementation of Zoom's video conference service.  It has sold that RCM service to numerous customers under commercial contracts with a contract term that extends beyond the end of the EOL Period.  The parties disagree regarding Zoom's obligation to provide service beyond this date.  Zoom argues, per the express language of the SAA, that its obligation to provide service ends with the final termination of the SAA at the end of the EOL Period.  RingCentral argues that, per the express language of the SAA, Zoom is required to provide service for the length of RingCentral's contracts with its customers-, even when the length of those agreements extends past the end of the EOL Period.  The parties have discussed ways to

1  resolve-the question of Zoom's obligations to RingCentral customers who contracted with
2  RingCentral to use RCM beyond the EOL Period, and intend to ask the Court at the Case
3  Management Conference to consider conducting an expedited 2-3 day hearing in early 2022 on
4  this single issue.

5  Expedited treatment is necessary and appropriate to bring clarity to the parties, as well as
6  the third-party RingCentral customers who are parties to contracts that extend beyond the date on
7  which Zoom believes that it is entitled to stop servicing RingCentral customers. The parties have
8  devoted significant efforts to resolving this disagreement informally, but believe that a
9  negotiated resolution is unlikely and that judicial decision on the issue is likely to be needed.

10  The parties are trying to reach agreement on the details of such a proposal, which would
11  include targeted discovery and a phased motions practice, among other things.  If the parties are
12  able to reach agreement on the terms of a joint proposal in advance of the CMC, they will
13  respectfully submit it in writing to the Court at that time.

14  If the Court is unable to accommodate this request, given the urgency of resolving the
15  post-termination service issue, the parties may jointly request that the Court set a full trial for
16  resolution of all issues no later than May 2022, again, given the importance of resolving the post-
17  termination service question for the parties and customers.

18  **17. <u>SCHEDULING</u>**

19  As noted above, the parties are working to agree to the terms of an expedited procedure
20  to address with respect to the most time sensitive question at issue between the parties, or a
21  schedule to resolve all issues prior to the end of the EOL Period.

22  **18. <u>DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS</u>**

23  Zoom filed its Certification of Interested Parties pursuant to the Local Rules on March
24  11, 2021.  Dkt. 4.  RingCentral filed its Certification of Interested Parties pursuant to the Local
25  Rules on March 16, 2021.  Dkt. 12.

26  **19. <u>TRIAL</u>**

27  In light of the parties' efforts to agree on terms for an expedited procedure, and the early
28  stage of this case, the parties cannot presently estimate the length of trial, which will depend, in

part, on whether the case proceeds on an expedited schedule, or as a full trial.

**20.** **PROFESSIONAL CONDUCT**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.** **OTHER MATTERS**

None.

Dated: August 9, 2021                              LATHAM & WATKINS LLP

                                          By      */s/ Matthew Rawlinson*
                                                           Douglas E. Lumish
                                                           Matthew Rawlinson
                                                           Jennifer Barry
                                                           Arman Zahoory
                                                           of Latham & Watkins LLP

*Attorneys for Plaintiff & Counterdefendant Zoom Video Communications, Inc.*

Dated**:** August 9, 2021                              PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

                                          By      */s/ Melinda Haag*
                                                           Brad Karp
                                                           Melinda Haag
                                                           Walter F. Brown
                                                           R. Rosie Vail

*Attorneys for Defendant & Counterclaimant RingCentral, Inc.*

**ATTESTATION OF CONCURRENCE**

I, Matthew Rawlinson, hereby attest, pursuant to N.D. Cal. Local Rule 5-1(i)(3), that each of the signatories identified above has concurred in the filing of this document. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: August 9, 2021  /s/ *Matthew Rawlinson*
Matthew Rawlinson