Douglas E. Lumish (CA 183863)
doug.lumish@lw.com
Matthew Rawlinson (CA 231890)
matt.rawlinson@lw.com
Arman Zahoory (CA 306421)
arman.zahoory@lw.com
**LATHAM & WATKINS LLP**
140 Scott Drive
Menlo Park, California 94025
Telephone: 650-328-4600
Facsimile: 650-463-2600

Jennifer Barry (CA 228066)
jennifer.barry@lw.com
**LATHAM & WATKINS LLP**
12670 High Bluff Drive
San Diego, California 92130
Telephone: 858-523-5400
Facsimile: 858-523-5450

Attorneys for Zoom Video Communications, Inc.

BRAD S. KARP (pro hac vice)
bkarp@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:   +1 212 373 3000
Facsimile:   +1 212 757 3990

MELINDA HAAG (SBN 132612)
mhaag@paulweiss.com
WALTER F. BROWN (SBN 130248)
wbrown@paulweiss.com
R. ROSIE VAIL (SBN 317977)
rvail@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
943 Steiner Street
San Francisco, CA 94117
Telephone:   +1 202 223 7300
Facsimile:   +1 202 223 7420

Attorneys for RingCentral, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ZOOM VIDEO COMMUNICATIONS, INC.,<br><br>  Plaintiff,<br><br>vs.<br><br>RINGCENTRAL, INC.,<br><br>  Defendant.<br><hr>RINGCENTRAL, INC.,<br><br>  Counterclaimant,<br><br>vs.<br><br>ZOOM VIDEO COMMUNICATIONS, INC.,<br><br>  Counterdefendant. | CASE NO. 5:21-cv-1727-EJD<br><br>**[PROPOSED] ORDER FOR ENTRY OF STIPULATED ESI PROTOCOL**<br><br>Honorable Edward Davila |

**1.   PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. All disclosures and productions made pursuant to this Stipulated Order Governing Discovery of Electronically Stored Information ("ESI Protocol") are subject to any Protective Order or other Orders in the above-captioned matter (the "Action").

**2.   COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**3.   LIAISON**

The parties have identified, or will identify, liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**4.   PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a)   Only ESI that is relevant to the claims and defenses in this Action and which existed as of the date of the filing of the Complaint and was created or received between January 1, 2013 and the present will be preserved;

b)   The parties will discuss the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe

|   |   |   |
|---|---|---|
|   |   | ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians as reasonably necessary; |
|   | c) | The parties will agree on the custodians for whom ESI will be preserved; |
|   | d) | These data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and ESI from these sources will be preserved but not searched, reviewed, or produced: |

   1. Backup tapes, systems, Apple "Time Machine" or other personal backups, and/or other long-term storage media that were created for use as data back-up or disaster recovery medium; and

   2. Systems or devices no longer in use that cannot be reasonably identified or accessed.

    e) Among the sources of data the parties agree are not reasonably accessible, the parties agree not to preserve the following:

   1. Information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source being searched;

   2. Legacy data, i.e., information stored in an obsolete format;

   3. Temporary data stored in a computer's random access memory (RAM) or other ephemeral or computer-created data and metadata that are difficult to preserve without disabling the operating system and/or are automatically stored and purged;

   4. Residual, fragmented, or damaged data accessible only by forensics;

   5. On-line access data such as temporary Internet files, history, cache, cookies, and the like;

   6. Information stored in unallocated space in file systems on magnetic media;

   7. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement,

and disposition of computer equipment;

8. Dynamic fields of databases or log files that are not retained in the usual course of business; and

9. Data in metadata fields that are frequently updated automatically, such as last opened dates.

f) If additional data sources are identified as a result of investigation and/or discovery, the parties may identify additional data sources that may or may not be searched or preserved pursuant to the foregoing. The parties will meet and confer about preserving such ESI as any additional data sources are identified.

**5.   SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

**6.   PRODUCTION FORMATS**

The parties agree to produce documents in the formats described in Appendix 1 to this Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties also recognize that in some instances where specific documents have been produced in a form other than native, or in black-and-white, subsequent production of the same documents in native form or in color may be warranted. The parties agree not to degrade the searchability of documents as part of the document production process.

**7.   DE-DUPLICATION**

a) Each party may de-duplicate responsive ESI across Custodians in the manner prescribed in Appendix 1. Whenever reasonable to do so, the parties agree to populate and produce the AllCustodians metadata field, in addition to, or in lieu of, the CUSTODIAN metadata field.

b) To the extent that deduplication is used, the parties expressly agree that a document produced from one custodian's file but not produced from another custodian's file

as a result of deduplication will nonetheless be deemed as if produced from that other custodian's file for purposes of deposition, interrogatory, request to admit and/or trial.

 c) The parties agree to meet-and-confer prior to production if they intend to apply email thread suppression to remove lesser-inclusive emails that would otherwise be subject to production, and to submit their respective positions to the Court for resolution if an agreement cannot be reached.  The parties will not remove near-duplicate documents that would otherwise be subject to production absent a separate agreement.

## 8. PHASING

 a) When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties may phase the production of ESI to prioritize production of documents and records from sources most likely to contain relevant or discoverable information. For the avoidance of doubt, nothing in this paragraph alters the parties' agreement to prioritize discovery related to the issue described in the Proposed Protocol for Expedited Single-Issue Resolution, ECF No. 76-3, filed on September 9, 2021.

 b) Following the initial production, the parties may continue to prioritize the order of subsequent productions, or notify the requesting party of any changes.

## 9. INFORMATION PROTECTED FROM DISCOVERY

 a) Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

 b) Communications need not be placed on a privilege log if they are subject to the attorney-client privilege and/or work product doctrine (e.g., in light of the subject matter of the document and because no waiver occurred) and are exchanged

between a party, its consultants, or contractors on the one hand, and its in-house counsel, or outside counsel, on the other. A producing party that withholds any other documents on the grounds of attorney-client privilege and/or work product protection shall provide a categorical privilege log in Excel format with the following information:

1. The total number of unique documents;
2. The total number of documents withheld in each category;
3. The date range(s) of the documents withheld in each category;
4. A general description of the authors and/or recipients of the withheld documents in each category; and
5. A general subject-matter description of the category to which the withheld documents belong, such that the other party can evaluate or challenge the privilege claim is necessary.

The privilege log requirements set forth in this provision shall also apply to any documents withheld from production in connection with discovery pursuant to the Proposed Protocol for Expedited Single-Issue Resolution, ECF No. 76-3, filed on September 9, 2021.

  c) Activities undertaken in compliance with the duty to preserve information and at the direction of counsel are protected from discovery pursuant to Fed. R. Civ. P. 26(b)(3)(A) and (B).

  d) Nothing in this Order shall be interpreted to require disclosure of irrelevant information, or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

## 10. MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

1  **IT IS SO STIPULATED**, through Counsel of Record.

Dated: October 12, 2021                LATHAM & WATKINS LLP

                                       By   */s/ Douglas E. Lumish*
                                            Douglas E. Lumish
                                            Matthew Rawlinson
                                            Jennifer Barry
                                            Arman Zahoory
                                            of Latham & Watkins LLP

                                            *Attorneys for Plaintiff & Counterdefendant*
                                            *Zoom Video Communications, Inc.*

Dated: October 12, 2021                PAUL, WEISS, RIFKIND, WHARTON &
                                       GARRISON LLP

                                       By   */s/ Walter F. Brown*
                                            Brad Karp
                                            Melinda Haag
                                            Walter F. Brown
                                            R. Rosie Vail

                                            *Attorneys for Defendant & Counterclaimant*
                                            *RingCentral, Inc.*

**IT IS ORDERED** this _____ day of _____, 2021.

Dated:
                                       _____
                                       The Honorable Edward Davila
                                       United States District Judge

# **ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the concurrence in the filing of this document has been obtained from the other signatory.

Dated: October 12, 2021

By  /s/ *Douglas E. Lumish*
    Douglas E. Lumish

**APPENDIX 1**

**TECHNICAL SPECIFICATIONS FOR DOCUMENT PRODUCTION**

**GENERAL INSTRUCTIONS**

1. <u>TIFF Imaging</u>: Documents that exist only in hard copy shall be scanned and produced as TIFFs. Except as specified below, documents that exist as electronically stored information ("ESI") should be converted and produced in single-page, black and white, TIFF Group IV, 300 DPI TIFF images with a .opt image cross-reference file and a text-delimited .dat load file. TIFFs should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFFs of e-mail messages should include the BCC line. PowerPoint materials shall be processed with hidden slides and all speaker notes unhidden, and shall be processed to show both the slide and the speaker's notes on the TIFF image.

2. <u>Color</u>: If produced in image format, Presentation (e.g., .ppt), webpage (e.g., .html), image (e.g., .jpg), word processing (e.g., .doc), and PDF files containing color will be produced in color. Documents produced in color shall be produced as single- page, 300 DPI JPG images with JPG compression and a high-quality setting so as to not degrade the original image. The producing party will reproduce in colordocuments originally produced in black-and-white upon reasonable request from the requesting party.

3. <u>Bates Numbering</u>: Documents must be uniquely and sequentially Bates-numbered across the entire production, with an endorsement burned into each image. Each Bates number shall be of a consistent length, include leading zeros in the number, and unique for each produced page. Bates numbers should contain no more than three segments. For example, a company identifier, a middle segment identifying the custodian, and a sequential page counter with connecting hyphens. The number of digits in the numeric portion of the format should not change in subsequent productions, nor should spaces, hyphens, or other separators be added or deleted. Under no circumstances should bates numbers contain embedded spaces, slashes (/), backslashes (\), carats (^), underscores (_), ampersands (&), hash marks (#), plus signs (+), percent signs (%), dollar signs ($), exclamation marks (!), pipes (|), any character used as a delimiter in the metadata load files, or any character not allowed in Windows file- naming convention (,\ / : * ? " < > | ~ @ ^). Bates numbers may contain hyphens (-).

4. <u>De-Duplication</u>: Parties may remove exact duplicate documents based on MD5 or SHA-1 hash values at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent e- mail and all attachments are also duplicates. An e-mail that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an e-mail that does not include identical content in those fields, even if all remaining content in the e-mail is identical. The CUSTODIAN field should list each custodian, separated by a semi-colon, who was a source of that document prior to any de-duplication, whenever such metadata is available. The parties agree to populate and provide the AllCustodians metadata field, in addition

to, or in lieu of, the CUSTODIAN field, whenever reasonable to do so. Should the CUSTODIAN or AllCustodians metadata field produced become outdated due to rolling productions, an overlay file providing all the custodians for the affected documents should be produced prior to substantial completion of the production.

5. A party using Technology Assisted Review (TAR) to exclude documents from production will inform the other party. If requested, the parties will meet-and-confer to discuss the process and validation steps.

6. <u>Encryption</u>: To maximize the security of information in transit, any media on which documents are produced may be encrypted. In such cases, You may transmit the encryption key or password to the requesting party, under separate cover, contemporaneously with sending the encrypted media.

7. <u>Confidentiality Designations</u>: Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. To the extent reasonably feasible, each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and stamped on the corresponding database placeholder image. Confidentiality shall be controlled by the designation on the face of each document image or placeholder.

8. <u>Redaction Of Information</u>: If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner as to preserve without modification, alteration or addition the content of such data including any metadata therein. The parties may redact native files using industry-standard tools as long as the redactions are easily identifiable.

**PRODUCTION FORMAT AND METADATA**

Production of electronically stored information in a manner consistent with the specifications set forth in this Order shall, absent exceptional circumstances, be sufficient to satisfy a producing party's obligation to produce its materials in reasonably useable form and as they are maintained in the ordinary course of business.

1. Email, Attachments, and Other Electronic Messages

   Email should be produced as image files with related searchable text and metadata. The parties agree to meet and confer regarding the production format and required metadata for any instant messages (IMs) or other messaging systems. Depending on how the company's systems represent names in email messages or IMs, a table of names or contact lists from custodians may be required.

   Email repositories, also known as email databases (e.g., Outlook .PST, Lotus .NSF), can contain a variety of items, including messages, calendars, contacts, tasks, etc.). For purposes of production, responsive items should includethe "Email" metadata/database fields outlined in the Metadata Table (if possible), including but not limited to all parent items (mail, calendar, contacts, tasks, notes, etc.) and child files (attachments of files to email or other items), with the parent/child relationship preserved. Similar items found and collected outside an email repository (e.g., .MSG, .EML, .HTM, .MHT) should be produced in the same manner.

2. Electronic Documents

   Electronic documents include word-processing documents, spreadsheets, presentations, and all other electronic documents not specifically discussed elsewhere. Production of these items should include image files with related searchable text, metadata, and bibliographic information. To the extent reasonably feasible, all passwords and encryption must be removed from electronic documents prior to production. In addition:

   a) Native Production: Spreadsheets, media files, and other documents that cannot be accurately rendered in image format should be produced in native format, with extracted text and metadata. A TIFF placeholder indicating that the document was provided in native format should accompany the database record.

   b) Hidden Text: All hidden text (*e.g.,* track changes, hidden columns, hidden slides, mark- ups, notes) shall be expanded and rendered in the extracted text file and on document images.

   c) Embedded Files: All embedded objects (*e.g*., graphical files, Word documents, Excel spreadsheets, .wav files) that are found within a file shall be produced so as to maintain the integrity of the source document as a single document. For purposes of production, the embedded files shall remain embedded as part of the original source document, with the option that the parties may extract non-image files embedded within documents as separate documents to be treated as attachments to the document in which they were embedded. Graphic objects

        embedded within documents or emails, such as logos, signature blocks, backgrounds, or the like, need not be extracted.

    d)    <u>Image-Only Files</u>: All image-only files (including non-searchable .PDFs, multi-page TIFFs, Snipping Tool screenshots, etc., as well as all other images that contain text) shall be produced with associated OCR text and metadata.

    e)    <u>Proprietary File Types and Non-PC or Non-Windows Based Systems</u>: Proprietary file types, such as those generated by financial or graphic design software, should be discussed by the parties in advance of production to determine the optimal format of production.

        File types from non-PC or non-Windows based systems (e.g., Apple, UNIX, LINUX, Google systems), should be discussed by the parties in advance of production to determine the optimal format of production.

    f)    <u>Archive File Types</u>: Archive file types (*e.g*., .zip, .rar) will be uncompressed for processing and their contents extracted as separate documents. The parties will review and produce the individual documents within an archive that meet their search criteria, if responsive.

    g)    <u>Redactions</u>: The Producing Party may redact produced documents, materials and other things, as provided in the Protective Order entered in this action.

3.    <u>Database Productions</u>

Database reports should be produced in a mutually agreeable data exchange format after meeting and conferring with the requesting party concerning such production.

4.    <u>Audio/Video Data</u>

These specifications do not address the production of audio/video data. Care must be taken to ensure that relevant and reasonably accessible responsive audio/video data and their metadata are preserved. These data types may be stored in audio or video recordings, voicemail text messaging, and related/similar technologies. However, data, logs, metadata, or other files related thereto, should be produced only after the parties meet and confer regarding the format for the production of such data.

## IMAGE and TEXT FILE SPECIFICATIONS, & LOAD FILE CONFIGURATION

1. <u>Image/Native File Specifications</u>

    a) Black-and-white Group IV Single-Page TIFFs (300 DPI). Color images should be provided in .JPG format when color is necessary.

    b) Image file names should match the page identifier for that specific image and end with the .tif (or .jpg if needed) extension. Example: ACME-ABC-0003072.TIF.

    c) File names cannot have embedded spaces, commas, underscores, ampersands, slashes, back slashes, hash marks, plus signs, percent signs, exclamation marks, any character used as a delimiter in the metadata loadfiles, or any character not allowed in Windows file-naming convention. (,_ & \ / # + % ! : * ? " < > | ~ @ ^).

    d) The maximum number of image files should be limited to 5,000 per folder.

    e) Native file names should match the BEGDOC#/DOCID entry for that specific record and end with the appropriate file extension.

    f) The maximum number of native files in a subfolder should be limited to 5,000 per folder.

    g) Any encryption or password protection must be removed from all native format files produced, if possible.

2. <u>Searchable Text File Specifications and Control List Configuration</u>

    a) Extracted text should be provided with all records, except for documents that originated as hard copy, redacted documents or documents that do not contain electronically extractable text.

    b) For hard copy documents, provide OCR text.

    c) For redacted documents, provide OCR text for the redacted version.

    d) There should be a single extracted/OCR text file per document.

3. <u>Load Files</u>

    a) Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format.

    b) Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.

c)     Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator. Carriage-return should be used to indicate the start of thenext record.

d)     Any delimited text file containing fielded data should contain in the first line alist of the fields provided in the order in which they are organized in the file.

e)     Load files should not span across media (i.e., a separate volume should becreated for each piece of media delivered).

f)     There should be one row in the load file for every TIFF image in the production.

g)     Every image in the delivery volume should be cross-referenced in the image load file.

## METADATA TABLE OF REQUESTED FIELDS

Each of the metadata and coding fields set forth below that can be accurately and reasonably extracted shall be produced for each document.  The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and either CUSTODIAN or AllCustodians.

| Field Name | Field Description |
| --- | --- |
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Includes the individual Custodian from whom the documents originated. |
| AllCustodians | All Custodians from whom a document was collected, if applicable based on the collection source. |
| CONFIDENTIALITY[1] | The confidentiality designation associated with the document |
| REDACTION | "HasRedaction" if Yes; blank if no redactions |
| SUBJECT | Subject line of email |
| TITLE | Title from properties of document |
| DATESENT | Date the email or other message was sent (format: MM/DD/YYYY) |
| TIMESENT | Time the email or other message was sent (format: HH:MM AM or PM) |
| DATERECEIVED | Date the email or other message was received (format: MM/DD/YYYY) |
| TIMERECEIVED | Time the email or other message was received (format: HH:MM AM or PM) |

---

[1] The parties agree that this field is provided for convenience purposes only.  Unless otherwise agreed in writing, the designation on the face of each document image will control its treatment under the Protective Order and this field may not be used as an excuse for improper disclosure of discovery material.

| Field Name | Field Description |
|---|---|
| TO | All recipients that were included on the "To" line of the email or other message |
| FROM | The name and email address of the sender of the email or other message |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| IMPORTANCE | The value populated in any importance field of the document properties |
| OWNER | Any value populated in the Owner field of the document properties |
| DriveAuthor | The author of a document from entered metadata or Google Drive document "Owner" |
| DriveViewers | Users with access to view a Google Drive document |
| DriveCollaborators | Users with access to edit a Google Drive document |
| FILE EXTENSION | File extension of the document |
| FILENAME | Filename of an electronic document (Edoc or attachment) |
| FILE TYPE | Mail, attachment, Edoc |
| FILE PATH | The complete file path of the document, if reasonably available as maintained in the ordinary course |
| DATEMOD | Date an electronic document was last modified (format: MM/DD/YYYY) |
| TIMEMOD | Time an electronic document was last modified (format: HH:MM AM or PM) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) |
| TIMECREATED | Time the document was created (format: HH:MM AM or PM) |
| NATIVELINK | Native file link (Native Files only) |
| PAGE COUNT | For documents produced in image form, number of pages in the document. For documents |

| Field Name | Field Description |
|---|---|
|  | produced in native, page count will be 1 (for placeholder) |
| TextPath | Link to extracted text on the delivery media |
| HASH VALUE | MD5 or SHA-1 Hash Value, unique document identifier |