Douglas E. Lumish (CA 183863)
doug.lumish@lw.com
Matthew Rawlinson (CA 231890)
matt.rawlinson@lw.com
Arman Zahoory (CA 306421)
arman.zahoory@lw.com
**LATHAM & WATKINS LLP**
140 Scott Drive
Menlo Park, California 94025
Telephone: 650-328-4600

Jennifer Barry (CA 228066)
jennifer.barry@lw.com
**LATHAM & WATKINS LLP**
12670 High Bluff Drive
San Diego, California 92130
Telephone: 858-523-5400

*Attorneys for*
*Zoom Video Communications, Inc.*

BRAD S. KARP (*pro hac vice*)
bkarp@paulweiss.com
ANIKA RAPPLEYE (*pro hac vice*)
arappleye@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON &**
**GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:    +1 212 373 3000

MELINDA HAAG (SBN 132612)
mhaag@paulweiss.com
WALTER F. BROWN (SBN 130248)
wbrown@paulweiss.com
R. ROSIE VAIL (SBN 317977)
rvail@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON &**
**GARRISON LLP**
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone:    +1 202 223 7300

CLEMENT SETH ROBERTS (SBN 209203)
croberts@orrick.com
ROBERT L. URIARTE (SBN 258274)
ruriarte@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    +1 415 773 5700

*Attorneys for RingCentral, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| ZOOM VIDEO COMMUNICATIONS, INC., | CASE NO. 5:21-cv-1727-EJD |
| Plaintiff, | **JOINT CASE MANAGEMENT STATEMENT** |
| vs. | |
| RINGCENTRAL, INC., | REDACTED |
| Defendant. | |

1    RINGCENTRAL, INC.,

2                        Counterclaimant,

3            vs.

4    ZOOM VIDEO COMMUNICATIONS, INC.,

5                        Counterdefendant.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Pursuant to Federal Rule of Civil Procedure 26(f), Civil L.R. 16-9, the Standing Order for

2  All Judges of the Northern District of California – Contents of Joint Case Management

3  Statement, and the Court's Standing Order for Civil Cases, Plaintiff and Counterdefendant Zoom

4  Video Communications, Inc. ("Zoom") and Defendant and Counterclaimant RingCentral, Inc.

5  ("RingCentral"), by and through their respective counsel of record, hereby jointly submit this

6  Joint Case Management Statement.

7  This Joint Case Management Statement follows the Initial Joint Case Management

8  Conference, held on August 19, 2021.

9  **1.   JURISDICTION AND SERVICE**

10  Zoom contends that this Court has jurisdiction over this matter pursuant to 15 U.S.C. §

11  1121 and 28 U.S.C. §§ 1331 and 1338 because this matter arises out of the laws of the United

12  States and relates to trademarks.  This Court has supplemental jurisdiction over the state

13  statutory and common law claims pursuant to 28 U.S.C. § 1367, as those claims are part of the

14  same case or controversy as the federal claims at issue in this case.

15  RingCentral was served with the summons and complaint on March 12, 2021.

16  RingCentral does not dispute that this Court has personal jurisdiction over it, and RingCentral

17  does not dispute that venue is proper in this Court.

18  Zoom was served with RingCentral's counterclaims on March 15, 2021.  Zoom does not

19  dispute that this Court has personal jurisdiction over it, and Zoom does not dispute that venue is

20  proper in this Court.

21  No parties remain to be served.

22  **2.   FACTS**

23  **Zoom's Position**

24  Zoom provides video communications services using a cloud platform for video and

25  audio conferencing, collaboration, chat, and webinars.  For the past eight-plus years, Zoom has

26  partnered with RingCentral, providing Zoom's enormously popular video communication

27  services for RingCentral to sell under its own "RingCentral Meetings" brand.  The terms of this

28

JOINT CONTINUING CASE
MANAGEMENT STATEMENT
CASE NO. 5:21-cv-1727-EJD

1    relationship are set forth in a Strategic Alliance Agreement ("SAA" or "Agreement") and its ten

2    amendments.

3            At Zoom's election, however, the Agreement was terminated and this business

4    relationship is winding down quickly in accordance with its terms.  More than a year ago, on

5    July 27, 2020, Zoom sent a letter to RingCentral ███████████████████████████████████

6    ████████████████████████████████████████.  The notice period gave RingCentral ████

7    ██████  to take any technological or business steps required to transition to its RingCentral Video

8    (RCV) product. See SAA at 83 (8th Am. § 1).  On July 29, 2020, ███████████████████████

9    ██████████████████████████████████████████████████████████████████████████

10   ████████████████████████████████.This EOL Period permits RingCentral to "defer the

11   effective date of termination ███████████████████████████████████," in order

12   "to transition Customers to an alternative" service.  SAA at 68 (4th Am. § 15(b)).  Both parties

13   agree that the EOL Period ends on ████████████████.

14           As discussed below, the primary issues in dispute between the parties are whether the

15   SAA:  (1) permits RingCentral to sell the Zoom service to new customers during the EOL

16   Period; (2) requires Zoom to support RingCentral's customers who are signed up to long term

17   contracts beyond the upcoming end of the EOL Period ████████████ or must RingCentral

18   instead transition customers who it signed up for contracts that extend beyond the EOL to

19   another video service; and (3) includes enforceable non-compete provisions.

20           This dispute began in a conflict regarding the first issue, when RingCentral refused to

21   stop selling the Zoom service to new customers after January 31, 2021, thereby exceeding its

22   rights under the SAA.  Zoom filed its complaint in this action (the first complaint it has ever

23   filed) on March 11, 2021, alleging claims for breach of contract, false designation of origin, and

24   unfair competition. Zoom also contemporaneously took technological steps to block

25   RingCentral's ability to activate the service for new customers.

26           In response, RingCentral filed counterclaims for breach of contract, declaratory relief,

27   and unfair competition on March 15, 2021.  On March 16, 2021 RingCentral filed a motion for a

28

JOINT CONTINUING CASE
MANAGEMENT STATEMENT
CASE NO. 5:21-cv-1727-EJD

1  temporary restraining order to enjoin Zoom from imposing technical blocking measures that

2  prevented RingCentral from activating Zoom's service to new customers.

3      On March 17, 2021, the Court issued an order granting RingCentral's ex parte motion for

4  a temporary restraining order, but following a hearing, on March 29, 2021, the Court dissolved

5  the temporary restraining order and denied RingCentral's motion for a preliminary injunction,

6  finding "RingCentral has not established a likelihood of success on the merits" and "RingCentral

7  has not met its burden as to [irreparable harm]."  Order at 6, 8, 11.  After the temporary

8  restraining order was dissolved, Zoom reinstated technological measures that block

9  RingCentral's ability to activate the service for new customers.

10     On April 28, 2021, RingCentral filed a notice of appeal of the Court's denial of

11  RingCentral's motion for a preliminary injunction.  That appeal was denied by the Ninth Circuit

12  on October 14, 2021.

13     The second (and currently most urgent) point of contention between the parties is that

14  RingCentral claims that the SAA requires Zoom to provide the service to any RingCentral

15  customer for the length of that customer's agreement with RingCentral (to which Zoom is not a

16  party (or even privy)), even if that contract extends years beyond the final termination of the

17  SAA at the upcoming conclusion of the EOL Period.  In other words, RingCentral has taken the

18  position that the SAA does not actually terminate upon termination, and that the EOL Period

19  does not actually lead to the end of the SAA's life.

20     Zoom believes this argument fails to pass the straight-face test, and that RingCentral must

21  instead transition customers who it signed up for contracts that extend beyond the EOL to

22  another video service.  RingCentral's arguments - rooted in apparent concern that it has signed

23  deals to provide Zoom's services to its customers that it cannot fulfill - are doomed for several

24  reasons including: (1) the plain language of the SAA states that Zoom is required to support

25  RingCentral's customers only during the Term of the SAA, and during the EOL Period; (2) the

26  SAA expressly describes those obligations that survive post-termination, and ongoing service to

27  RingCentral customers is not among them; (3) as a matter of the plain language of the SAA and

28  basic agency law, RingCentral has no authority to bind Zoom to customer contracts that Zoom is

1   not a party to; (4) RingCentral's construction is inconsistent with the stated purpose of the EOL

2   Period; (5) RingCentral's construction generates absurd results (*e.g.,* under RingCentral's theory,

3   Zoom is required to continue to service a contract extending 10 years beyond the termination of

4   the SAA, even though it had no notice of the contract and was not a party to it).  In fact,

5   RingCentral's recent claim that Zoom is obligated to indefinitely continue providing the service

6   to its customers after the EOL Period contradicts its previous claim that Zoom's obligation is "to

7   'provide the Service in accordance with the [SAA] ***during [the EOL Period]***."  Feb. 26, 2021 J.

8   Marlow Ltr. (brackets in original).

9          For example, Section 4 of the SAA specifically addresses obligations regarding customer

10   agreements:

11              ***RingCentral may not obligate Zoom to any agreements,***
              ***contracts, terms, conditions, obligations or warranties***.  *The*
12              *Customer Agreement must contain provisions imposing no greater*
              *obligations or liability on Zoom and no fewer restrictions or*
13              *obligations on Customer than Zoom's standard terms of service in*
              *effect at the time the Customer Agreement is entered into*. SAA § 4
14              (emphasis added).

15          Likewise, Section 7 of the SAA explicitly designates the parties as "independent

16   contracting parties" and makes clear that "[n]either Party will be deemed an agent of the other

17   Party for any purpose whatsoever and neither Party nor any of its agents or employees will have

18   any right or authority to assume or create any obligation of any kind, whether express or implied,

19   on behalf of the other Party."  SAA § 7.  Neither of these provisions can be reconciled with the

20   suggestion that RingCentral has the power to unilaterally bind Zoom, without notice or

21   agreement from Zoom, to RingCentral customer contracts that extend beyond the termination

22   date.  In similar fashion, the plain language states that all licenses terminate when the Agreement

23   terminates.  SAA § 16(e) ("Upon termination of this Agreement, all licenses granted hereunder

24   will immediately terminate.").  RingCentral's claim is also inconsistent with a variety of other

25   express language in the SAA, including regarding which terms survive termination, payment

26   claims, the basic obligations regarding provision of service and others.

27          In addition, RingCentral talks about the "big-picture" but RingCentral's suggestion that –

28   during the final year of the SAA – it could have, without notice to Zoom, signed contracts with

1    customers that required Zoom to essentially continue to provide service for 3, 5, or 10 more

2    years is, once again, flatly inconsistent with both the express language of the Agreement that

3    says RingCentral has no such right, and purports to allow RingCentral, from the very outset of

4    the SAA, to obligate Zoom to contracts well beyond the life of the parties' Agreement.  Nothing

5    in the Agreement supports this reading. Likewise, RingCentral says it may have customer

6    agreements that go beyond the life of the SAA, but nothing prevents them from fulfilling those

7    contracts with another service.  If RingCentral, without notice to Zoom, agreed to contracts that

8    promise to provide Zoom's service beyond the terms it had the right to guarantee, that is not

9    Zoom's fault.

10        This issue is important to customers and to the parties. Not only is it important that this

11   issue is resolved well before the deadline so that RingCentral customers can make appropriate

12   business decisions, but it is also important to Zoom and its own customers.  Zoom's business is

13   rapidly expanding, and it must focus its limited engineering resources on its own business needs;

14   because of this, providing extended support for RingCentral Meetings customers with contracts

15   extending after ▮▮▮▮▮ would create significant operational burdens for Zoom well beyond

16   what it agreed to.  The engineering burden for Zoom to continue providing RingCentral

17   Meetings (which involves integrating new versions, constant bug fixes, technical requests, and

18   time consuming coding merges) exists whether the number of post-EOL Period RingCentral

19   customers is few or many.  Given this, enforcement of the hard end date when the SAA

20   terminates, as agreed to by the parties, is important to Zoom.

21        In addition to the issues above, Zoom also alleges that the anti-competitive provisions

22   contained within the SAA are void under California law and violate California Business and

23   Professions Code § 16600.  Specifically, Zoom challenges Section 3(d) of the SAA, which bars

24   any effort by Zoom "to convert Customers from RingCentral to Zoom," even when "Zoom has

25   acquired contact information for such persons independently of this Agreement," and the 2019

26   8th Amendment, which denies Zoom the right to "solicit or communicate with any…customer of

27   RingCentral for the purpose of attempting to cause such…customer to cease subscribing the

28   RingCentral Services or migrating to a platform that competes with the RingCentral Services"

1

2   Zoom maintains that such overbroad non-compete restrictions do nothing to support fair

3   competition or the alliance between Zoom and RingCentral, and RingCentral's attempt to use

4   them to prevent Zoom from selling its own product to RingCentral's customers or

5   communicating truthfully with the public and with customers about the status of the parties'

6   agreement during and after the EOL Period violates California law.

7          Zoom also asserts a variety of affirmative defenses in response to RingCentral's

8   counterclaims, including that Zoom's actions were justified and taken in good faith, that

9   RingCentral has acted in bad faith and contrary to public policy, and that RingCentral's alleged

10  damages are not due to Zoom's actions, and are both speculative and not recoverable under the

11  contract.

12         **RingCentral's Position**

13         Under the SAA, RingCentral is and has been a reseller of Zoom's video conference

14  service (aka RingCentral Meetings or "RCM") since 2013.  This dispute began in early 2021,

15  when RingCentral learned that Zoom salespersons were misleading RingCentral customers about

16  termination of the SAA.  Although the SAA's terms are confidential, multiple customers

17  informed RingCentral that, just days into the EOL Period, Zoom salespersons were telling

18  customers that they would no longer have access to the RCM product that they had contracted

19  for.  Zoom told some RingCentral customers that RingCentral's access to the video component

20  of the RCM service would be cut off in as little as thirty days, which is completely untrue under

21  the terms of the SAA.  Statements like these were made to mislead and scare customers into

22  switching from RingCentral to Zoom, and in at least some instances, they worked.

23         Shortly after RingCentral complained to Zoom about the conduct of its sales

24  organization, Zoom started coming up with contractual arguments about why RingCentral could

25  no longer sell the RCM service to new customers during the EOL Period.  Zoom then engaged in

26  self-help designed to bolster its competitive position against RingCentral: Zoom breached the

27  SAA and imposed technical blocking measures to prevent RingCentral from activating new

28  RCM customers.  The Court initially enjoined Zoom's blocking measures, reasoning that

JOINT CONTINUING CASE
MANAGEMENT STATEMENT
CASE NO. 5:21-cv-1727-EJD

"Zoom's 'technological steps' to disrupt RingCentral's efforts to activate new customers appear to breach [SAA § 16(d) and 2(a)]," and that if "customers would not be provided services which RingCentral markets and is contractually allowed to include in customers packages," RingCentral would face irreparable harm in the form of "'loss of prospective customers or goodwill.'"  Dkt. 24 at 7-8 ("TRO").  The Court subsequently dissolved the restraining order against Zoom's blocking measures on the grounds that "neither RingCentral nor Zoom has shown a likelihood of success on the merits at this juncture," and that "the record does not contain non-conclusory evidence sufficient to establish that it has actually lost market share as a result of Zoom not offering the Service to new customers."  *Id*. at 6, 10.

In addition to the parties' disagreement about RingCentral's right to sell the RCM service to new customers during the EOL period, a dispute has arisen, discussed in section 15 below, over a time-sensitive issue regarding Zoom's obligation to fully support RingCentral customers beyond the EOL Period.  Specifically, RingCentral has sold the RCM service to numerous customers under commercial contracts with a contract term that extends beyond the end of the EOL period in reliance on the clear, plain language of SAA §16(e), which unequivocally states that "termination of this Agreement will not terminate or affect any Customer Agreements entered into prior to termination of this Agreement for the term of each such Customer Agreement."  If Zoom can block access to the RCM service, those agreements will obviously be "affected."

Notwithstanding Zoom's clear obligation under §16(e) to provide full support for the length of RingCentral's contracts with its customers, Zoom argues that its obligation to provide such service ends at the conclusion of the EOL Period.  Zoom seeks to avoid the plain language of §16(e) by distorting other, more general provisions of the SAA, and by arguing that the section only concerns RingCentral's contracts with its customers, to which Zoom is not privy, and cannot operate to bind Zoom.  But this ignores the fact that Zoom entered into a reseller agreement with RingCentral, committing itself to provide services to RingCentral's customers, and that Zoom owes contractual duties to RingCentral to do so.  The reason to include this language in §16(e) of the SAA (as opposed to in RingCentral customer agreements) is to bind

1    *Zoom* and to prevent it from nullifying the customer agreements by refusing to provide the RCM

2    service.  Since this dispute began, Zoom has complained that providing post-EOL Period support

3    for RCM would cause significant burden to Zoom.  Setting aside Zoom's enormous wealth and

4    army of engineers, a purported lack of resources is no excuse for failing to provide services that

5    Zoom is contractually bound to provide.

6         Consider the big-picture implications of Zoom's position.  Take a three-year contract

7    RingCentral signs with a customer the day before it learns Zoom will not renew the SAA.

8    According to Zoom, that *existing* customer contract is retroactively amended to last less than its

9    stated term by Zoom's unilateral decision not to renew the SAA.  In other words, Zoom's

10   reading allows it to force RingCentral to breach even those customer agreements that

11   RingCentral entered in good faith *before* Zoom gave notice of non-renewal, because RingCentral

12   cannot hold up its end of the bargain if Zoom cuts off access to the RCM service.  This is a

13   nonsensical position, would lead to an "absurd result," and is certainly not what the SAA

14   requires or contemplated.

15        With respect to RingCentral's right to sell the RCM service to new customers during the

16   EOL period, Zoom has been consistent in its attempt to read limitations into the SAA that simply

17   aren't there.  For example, "Zoom contends that RingCentral's license to sell the [RCM service]

18   runs only for the Term of the Agreement, which concluded on January 31, 2021")—but that is

19   not what the SAA's license-to-sell provision actually says.  The relevant SAA provision, § 2(a),

20   provides that the license runs "for the term of this Agreement," which in plain English means the

21   duration of the SAA.  RingCentral can sell the RCM service while the SAA remains in effect,

22   and because the SAA "remain[s] in effect" throughout the EOL Period, RingCentral can sell the

23   RCM service until the EOL Period expires.  SAA § 2(a).  In any event, notwithstanding

24   RingCentral's contractual rights, because of Zoom's misconduct sales to new customers are no

25   longer part of RingCentral's transition efforts.

26        Similarly, Zoom argues that a limitation on sales to new customers during the EOL

27   Period is implied by the fact that the EOL Period gives RingCentral the ability "to transition

28   Customers to an alternative to the Service."  SAA § 16(d).  This argument is incorrect, both as a

JOINT CONTINUING CASE
MANAGEMENT STATEMENT
CASE NO. 5:21-cv-1727-EJD

1   matter of contract interpretation and as a matter of common sense.  Given the practical realities

2   of the industry, because among other reasons the UCaaS sales cycle for enterprise customers can

3   take time, Zoom's interpretation would again lead to "absurd results."  For example, in Zoom's

4   view, RingCentral would have had to stop selling the RCM service to enterprise customers

5   before Zoom notified RingCentral that it would not renew the SAA, because the enterprise sales

6   cycle is much longer than the six-month notice of non-renewal that Zoom provided.

7   RingCentral, in Zoom's interpretation, would have to anticipate that Zoom might not renew the

8   SAA and stop negotiating agreements with enterprise customers, or inform those customers at

9   the last minute that the length of the agreement would have to be shortened dramatically.  This

10  makes no sense in the industry and is not what the SAA provides.

11  **3.      LEGAL ISSUES**

12          **Zoom's Position**

13          Zoom states that the key legal issues are as follows:

14          a.   Whether the SAA requires  Zoom to support RingCentral's customers who are

15               signed up to long-term contracts beyond the upcoming end of the EOL Period

16               ██████████████ or whether RingCentral must instead transition customers who it

17               signed up for contracts that extend beyond the EOL to another video service;

18          b.   Whether RingCentral has breached the Agreement by continuing to sell and

19               market Zoom products to customers, including entering into multi-year contracts,

20               after RingCentral's license to sell Zoom's products expired at the end of the term

21               on January 31, 2021, and by using Zoom's marks to aid that effort.

22          c.   Whether RingCentral has used Zoom's mark improperly and in excess of its

23               authorization in violation of 15 U.S.C. § 1125(a), and, in doing so, misled

24               consumers into believing, and created the false impression, that Zoom authorized,

25               approved, and licensed RingCentral's continued use of the mark after termination

26               of the Agreement to solicit new customers.

27

28

JOINT CONTINUING CASE
MANAGEMENT STATEMENT
CASE NO. 5:21-cv-1727-EJD

d.   Whether RingCentral has breached the Agreement by making false public statements that the transition is due to quality or feature-based reasons as opposed to Zoom's election to terminate the Agreement.

e.   Whether RingCentral violated Cal. Bus. Prof. Code § 16600 by imposing the non-compete provisions under the Agreement.

**RingCentral's Position**

RingCentral states that the key legal issues are as follows:

a.   Whether Zoom is required to support customers who contracted for use of RingCentral Meetings ("RCM") through the life of those customer contracts, even if those customer contracts extend beyond the EOL Period;

b.   Whether the SAA permits RingCentral to sell and market RCM (and, therefore, Zoom's video product) to new customers during the EOL Period;

c.   Whether Zoom has breached the SAA by making improper and/or false statements to customers about RingCentral's products or the termination of the SAA;

d.   Whether Zoom has engaged in unfair competition in violation of Cal. Civ. Code § 17200 *et seq.* including through the dissemination of deceptive, untrue, and misleading advertising in violation of Cal. Bus. & Prof. Code § 17500 while communicating with RingCentral Customers and prospective customers.

4.   **MOTIONS**

**Prior Motions**

Zoom filed an Administrative Motion to Seal Portions of the Complaint and Exhibit A on March 11, 2021.  Dkt. 5.

On March 16, 2021, RingCentral filed an Ex Parte Motion for (1) Temporary Restraining Order; and (2) Order to Show Cause Re Preliminary Injunction.  Dkt. 14.  RingCentral concurrently filed an Administrative Motion to Seal its Counterclaims and Portions of its Motion for a Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction.

1    Dkt. 13.  Zoom filed its opposition to this motion on March 23, 2021 with its Administrative

2    Motion to File Under Seal.  Dkts. 28, 30.

3         Zoom filed a Motion to Seal Zoom's Answer to Counterclaims on April 5, 2021 along

4    with its Answer filed the same day.  Dkts. 45, 46.

5         The parties filed their Joint Case Management Statement on August 9, 2021, Dkt. 69 and

6    Zoom filed an accompanying Administrative Motion to Seal Portions of the Joint Case

7    Management Statement on the same day.  Dkt. 68.  On September 9, 2021, the parties filed a

8    Proposed Protocol for Expedited Single-Issue Resolution Dkt. 75, and Zoom concurrently filed

9    its Administrative Motion to Seal a Portion of the Proposed Protocol for Expedited Single-Issue

10   Resolution.  Dkt. 76.

11        **Pending Motions**

12        None presently.

13   **5.    AMENDMENTS OF PLEADINGS**

14        The parties agree that any amendment to the pleadings shall be brought by December 1,

15   2021.

16   **6.    EVIDENCE PRESERVATION**

17        The parties have reviewed the Guidelines Relating to the Discovery of Electronically

18   Stored Information and have taken reasonable and proportionate steps to preserve evidence

19   relevant to the issues in these actions.

20        The Parties filed a joint protocol for the production of Electronically Stored Information

21   ("ESI") on October 12, 2021, which was entered as an order of the Court on October 14, 2021.

22   Dkt. 80.  The Parties filed a proposed Protective Order on November 3, 2021, which was entered

23   as an order of the Court with modifications on November 4, 2021.  Dkt. 89.

24   **7.    DISCLOSURES**

25        The parties met and conferred pursuant to Rule 26(f) on July 26, 2021 and served their

26   Initial Disclosures on August 25, 2021.

27

28

JOINT CONTINUING CASE
MANAGEMENT STATEMENT
CASE NO. 5:21-cv-1727-EJD

**8.     DISCOVERY**

   **Discovery taken to date**

On September 9, 2021, and pursuant to the discussions with the Court at the August 19, 2021 Case Management Conference (Dkt. 74), the parties filed a Proposed Protocol for Expedited Single-Issue Resolution (Dkt. 75) (the "Proposed Protocol"), which is intended to facilitate the expedited exchange of discovery necessary to resolve the issue of whether Zoom has any obligation to support RingCentral customers beyond ███████ (the "Issue").  As described in Sections 16-17 below, the parties have commenced narrowly targeted discovery pursuant to the Proposed Protocol, including by serving and responding to document requests and serving interrogatories.  The parties plan to notice depositions after the substantial completion of document discovery under the Proposed Protocol.

   **Scope of Anticipated Discovery**

The parties have proceeded with discovery targeting the Issue pursuant to the Proposed Protocol.

If the parties proceed to a full trial of all the issues in the case, the parties believe that the default limits set forth in the Federal Rules of Civil Procedure should be sufficient.

   **Zoom's Position Re: Specific Topics of Discovery**

Zoom anticipates targeted discovery addressing, among other things, the terms of the SAA, the parties' negotiations related to the SAA and its amendments, RingCentral's internal conversations regarding the Agreement and the termination thereof, RingCentral's beliefs regarding the terms of the Agreement, RingCentral's agreements and conversations with customers and third parties regarding Zoom's services, the terms and durations of RingCentral's agreements with its customers generally, the development of RingCentral's product or service referred to as RingCentral Video, RingCentral's efforts to secure other alternative video communications services from third parties and/or to replace Zoom's, and the marketing or sales of RingCentral Meetings.

1   **RingCentral's Position Re: Specific Topics of Discovery**

2        RingCentral anticipates discovery addressing, among other things, the June 13, 2013

3   Strategic Alliance Agreement (SAA) and its amendments; the drafting, negotiation,

4   interpretation and performance under the SAA, its terms, and its amendments; Zoom's

5   obligations under the SAA, including Zoom's failure to meet those obligations; Zoom's

6   relationships with third-party resellers and its release of new code, bug fixes and the like to such

7   third-parties; Zoom's knowledge of RingCentral's customers and customer agreements; any

8   competitive knowledge and information learned from or disclosed by any and all former

9   RingCentral employees employed by Zoom and or contractors engaged by Zoom; Zoom's hiring

10  practices, particularly with respect to RingCentral and its employees; Zoom's unlawful

11  competition; any communications plans, public relations campaigns, marketing campaigns or

12  sales activities targeting directly or indirectly RingCentral's customers; any statements made to

13  industry analysts regarding the SAA and any Zoom marketing and sales activities related or

14  targeted towards RingCentral's customers, including buying out RingCentral contracts or

15  offering very steep discounts to RingCentral customers; any use of RingCentral confidential

16  information; and the damages RingCentral has suffered as a result of Zoom's breach of contract

17  and unfair and anticompetitive business practices.

18       **Privilege and Confidentiality Issues**

19       The parties filed a proposed stipulated protective order on November 3, 2021, that

20  addresses privilege and confidentiality issues, as well as other issues related to discovery.  The

21  Protective Order was modified and entered as an order of the Court by Magistrate Judge van

22  Kuelen on November 4, 2021.  Dkt. 89.  The Parties filed a joint protocol for the production of

23  ESI on October 12, 2021, which addresses privilege issues, and was entered as an order of the

24  Court on October 14, 2021.  Dkt. 80.

25  **9.      CLASS ACTIONS**

26       Not applicable.

27  **10.     RELATED CASES**

28       None.

**11.   RELIEF**

**Zoom's Position**

The relief sought by Zoom includes, but is not limited to:

     a.   Monetary damages to be determined at trial;

     b.   Injunctive relief;

     c.   Declaratory relief;

     d.   Zoom's costs in connection with these actions, including attorneys' fees, consultant and expert fees, and other expenses; and

     e.   Any other relief the Court deems just and proper.

**RingCentral's Position**

The relief sought by RingCentral includes, but is not limited to:

     a.   Entry of judgment in favor of RingCentral against Zoom;

     b.   A preliminary and permanent injunction;

     c.   A declaration of RingCentral's rights;

     d.   An order awarding RingCentral damages according to proof;

     e.   Prejudgment and post-judgment interest;

     f.   An order awarding RingCentral its costs and attorneys' fees;

     g.   All such further and additional relief, in law or equity, to which Defendant-Counterclaimant may be entitled or which the Court deems just and proper.

**12.   SETTLEMENT AND ADR**

Zoom and RingCentral filed their respective ADR Certifications on May 26, 2021.

The parties attended a settlement conference and mediation on June 23, 2021.

The parties do not believe that additional formal settlement efforts will be productive prior to a decision about Zoom's service obligations post-termination, if any.

**13.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

Zoom declined to proceed before a Magistrate Judge.  Dkt. 16.  RingCentral does not consent to proceed before a Magistrate Judge for all purposes.

**14.   OTHER REFERENCES**

The case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.   NARROWING OF ISSUES**

As discussed below, the parties have jointly proposed a procedure to expedite the treatment of the single issue of Zoom's obligation to service RingCentral's customers following the end of the EOL Period.  Dkt. 75.  Resolution of this single issue on an expedited basis remains critical to the parties, with the EOL Period ending on ███████████.  It is the parties' hope that expediting this narrow issue also will increase the chances of a global resolution of all issues.

**16.   EXPEDITED HEARING PROCEDURE**

The parties mutually agree that there is a uniquely important and time sensitive issue presented in this case.  Under the SAA, RingCentral resells "RingCentral Meetings," or "RCM," RingCentral's implementation of Zoom's video conference service.  It has sold that RCM service to numerous customers under commercial contracts with a contract term that extends beyond the end of the EOL Period.  The parties disagree regarding Zoom's obligation to provide service beyond this date.  Zoom argues, per the express language of the SAA, that its obligation to provide service ends with the final termination of the SAA at the end of the EOL Period. RingCentral argues that, per the express language of the SAA, Zoom is required to provide service for the length of RingCentral's contracts with its customers, even when the length of those agreements extends past the end of the EOL Period.  Expedited treatment is necessary and appropriate to bring clarity to the parties, as well as the third-party RingCentral customers who are parties to contracts that extend beyond the date on which Zoom believes that it is entitled to stop servicing RingCentral customers.  The parties have devoted significant efforts to resolving this disagreement informally, but believe that a negotiated resolution is unlikely and that judicial decision on the issue is likely to be needed.

On September 9, 2021, the Parties filed the Proposed Protocol, which includes deadlines and parameters for discovery narrowly targeting the issue of whether Zoom has any obligation to

1  support RingCentral customers beyond ███████, including with regard to custodians,

2  document requests, interrogatories, requests for admission, depositions, procedures for resolving

3  discovery disputes, privilege logs, expert witnesses and reports, *Daubert* Motions, Motions in

4  *Limine*, and pre-hearing filings.  If the Court is unable to accommodate the request for an

5  expedited single-issue hearing, given the urgency of resolving the post-termination service issue,

6  the parties may jointly request that the Court set a full trial for resolution of all issues no later

7  than May 2022.

8  **17.    SCHEDULING**

9          The parties have worked diligently to proceed pursuant to the schedule described in the

10  Proposed Protocol and have agreed to extensions where necessary, including by:

11          •   extending the November 1, 2021 deadline for the substantial completion of

12              document discovery;

13          •   extending the November 22, 2021 deadline to submit disputes regarding

14              document discovery to the Court;

15          •   extending by one week the October 15, 2021 deadline to serve interrogatories and

16              the November 15, 2021 deadline to substantially answer interrogatories; and

17          •   extending the November 15, 2021 deadline to notice depositions until after the

18              parties have substantially completed document discovery.

19  The breadth of document discovery related to the Proposed Protocol, including the need to notify

20  business partners regarding the production of third-party confidential information, has delayed

21  the parties' proposed November 1, 2021 deadline to substantially complete document discovery.

22  This, in turn, has delayed other deadlines, including the deadline to notice and take depositions

23  and will likely affect additional deadlines in the Proposed Protocol.  Although the parties remain

24  available to participate in a hearing regarding the Issue in February 2022 to the extent the Court's

25  schedule so permits, the parties are amenable to extending the deadlines contained in the

26  Proposed Protocol by 45 days to provide sufficient time to complete discovery.

27

28

1    **18.     DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

2         Zoom filed its Certification of Interested Parties pursuant to the Local Rules on

3    March 11, 2021.  Dkt. 4.  RingCentral filed its Certification of Interested Parties pursuant to the

4    Local Rules on March 16, 2021.  Dkt. 12.

5    **19.     TRIAL**

6         In light of the parties' efforts to agree on terms for an expedited procedure, and the early

7    stage of this case, the parties cannot presently estimate the length of trial, which will depend, in

8    part, on whether the case proceeds on an expedited schedule, or as a full trial.

9    **20.     PROFESSIONAL CONDUCT**

10        All attorneys of record for the parties have reviewed the Guidelines for Professional

11   Conduct for the Northern District of California.

12   **21.     OTHER MATTERS**

13        None.

14        Dated: November 22, 2021          LATHAM & WATKINS LLP

15

16                                          By    */s/ Matthew Rawlinson*
                                                  Douglas E. Lumish
17                                                Matthew Rawlinson
                                                  Jennifer Barry
18                                                Arman Zahoory
                                                  of Latham & Watkins LLP
19
                                                  *Attorneys for Plaintiff & Counterdefendant*
20                                                *Zoom Video Communications, Inc.*

21

22        Dated**:** November 22, 2021         PAUL, WEISS, RIFKIND, WHARTON &
                                          GARRISON LLP
23

24                                          By    */s/ Melinda Haag*
                                                  Brad Karp
25                                                Melinda Haag
                                                  Walter F. Brown
26                                                R. Rosie Vail

27                                                *Attorneys for Defendant & Counterclaimant*
                                                  *RingCentral, Inc.*
28

                                          JOINT CONTINUING CASE
                                          MANAGEMENT STATEMENT
                                          CASE NO. 5:21-cv-1727-EJD

1

**ATTESTATION OF CONCURRENCE**

2

I, Matthew Rawlinson, hereby attest, pursuant to N.D. Cal. Local Rule 5-1(i)(3), that each

3

of the signatories identified above has concurred in the filing of this document.  I declare under

4

penalty of perjury under the laws of the United States of America that the foregoing is true and

5

correct.

6

7

Dated:  November 22, 2021                            */s/ Matthew Rawlinson*
                                                     Matthew Rawlinson

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT CONTINUING CASE
MANAGEMENT STATEMENT
CASE NO. 5:21-cv-1727-EJD